# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| **CJ GRISHAM,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO.** |
| | § | **4:25-cv-716** |
| | § | |
| **TIM O'HARE** | § | |
| *In his personal and official* | § | |
| *Capacities,* | § | |
| **CHIEF DEPUTY CRAIG** | § | |
| **DRISKELL,** | § | Hon. |
| *In his supervisory, official, and* | § | |
| *personal capacities,* | § | |
| **SERGEANT ORVILLE GEORGE** | § | |
| *In his personal and official* | § | |
| *Capacities,* | § | |
| **SERGEANT MICHAEL JAUSS** | § | |
| *In his personal and official* | § | |
| *Capacities,* | § | |
| **CHIEF DEPUTY GABBERT** | § | |
| *In her personal and official* | § | |
| *Capacities,* **and** | § | |
| **TARRANT COUNTY,** | § | |
| | § | |
| *Defendants* | § | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff CJ Grisham (hereinafter "Mr. Grisham") brings this Complaint against Defendants Tim O'Hare (herein referred to as "Defendant O'Hare") in his personal and official capacities, Chief Deputy Craig Driskell (herein referred to as "Defendant Driskell") in his personal, supervisory, and official capacities, Sergeant Orville George (herein referred to as "Defendant George") in his personal and official capacities, Michael Jauss (herein referred to as "Defendant Jauss") in his personal and official capacities, Chief Deputy Jennifer Gabbert (herein referred to as "Defendant Gabbert") in her personal, supervisory, and official capacities, and Tarrant County, Texas (herein referred to as "the County"), and in support thereof alleges the following upon information and belief::

## I.    JURISDICTION AND VENUE

1.    This is a civil rights action in which Plaintiff seeks relief for the violation of his rights secured by Tex. Const., Art. I, §§ 3, 8, 9, 19, 23, and 27; 42 U.S.C. § 1983, 42 U.S.C. § 1985(3); and the First, Second, Fourth, and Ninth Amendments of the United States Constitution.

2.    Jurisdiction of this Court is found upon 28 U.S.C. § 1331 since this action arises under the Constitution and the laws of the United States.

3.      Venue is proper in the United States District Court for the Northern District of Texas because the majority of events complained of occurred in Tarrant County, Texas.

4.      Pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), and other applicable laws, the Court may award nominal, compensatory, and punitive damages, as well as equitable relief against all of the Defendants in their individual capacity, for the violations of Plaintiffs Constitutional rights and harm caused by their actions/inactions.

## II.    PARTIES

5.      Plaintiff CJ GRISHAM (hereinafter "Grisham") is a law-abiding citizen of the United States, a Civil Rights Attorney licensed in the State of Texas, and a resident of the State of Texas who handles cases in Tarrant County.

6.      Defendant TIM O'HARE (hereinafter "Defendant O'Hare") was at all pertinent times the elected County Judge serving as the presiding officer of the Tarrant County Commissioners Court.  Defendant O'Hare is being sued in his official and personal capacities.

7.      Defendant, CHIEF DEPUTY CRAIG DRISKELL, (herein after "Defendant Driskell"), was a Texas resident at all times relevant to this complaint and acted as the Chief Deputy for Judicial Services for the TCSO.  He is being sued in his individual, supervisory, and official capacity.

8.    Defendant, CHIEF DEPUTY JENNIFER GABBERT, (herein after "Defendant Gabbert") was a Texas resident at all times relevant to this complaint and acted as the Chief of Staff for the TCSO. She is being sued in her official and individual capacities.

9.    Defendant, SERGEANT ORVILLE GEORGE, (herein after Defendant George) was a Texas resident at all times relevant to this complaint and acted as a Sergeant for the TCSO. He is being sued in his official and individual capacities.

10.    Defendant, SERGEANT MICHAEL JAUSS, (herein after Defendant Jauss) was a Texas resident at all times relevant to this complaint and acted as a Sergeant for the TCSO. He is being sued in his official and individual capacities.

11.    Defendant, TARRANT COUNTY, is a political county in the State of Texas.

12.    Each and all of the acts of Defendants alleged herein were committed by said Defendants while acting within the scope of his or her employment with the Fort Worth Police Department.

13.    Each and all of the acts of Defendant was committed by this Defendant despite his knowledge that he was engaging in unlawful and unconstitutional acts, and yet he did them anyway, knowingly, recklessly, intentionally, wantonly, callously, purposely, purposefully, sadistically, cruelly,

deliberately, and/or with deliberate indifference, gross negligence, and/or reckless disregard.

## III.    PREAMBLE

*"If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."*

Justice William Brennan, *Texas v. Johnson*, 491 U.S. 397, 414 (1989)


*"[W]e consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials."*

Justice William Brennan, *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)

## IV.    FACTUAL ALLEGATIONS

### JANUARY 14, 2025 TARRANT COUNTY COMMISSIONERS MEETING

14.    On January 14, 2025, the Tarrant County Commissioners Court held an open meeting in accordance with Tex. Gov. Code Chapter 551.  There were no signs posted that prohibited licensed gun owners from carrying into the open meeting under Tex. Pen. Codes §§ 30.06 and 30.07 giving gun owners notice that carry was prohibited as required by law.



15.     Plaintiff is a retired United States Army Senior Counterintelligence Special Agent, one of three Army military occupational specialties that qualify as law enforcement officers.[1]  Plaintiff was issued a retired Law Enforcement Officer Safety Act ("the Act") card identifying him as retired law enforcement and maintains an annual weapons qualification as required under the Act.  Plaintiff was in possession of these documents at all times relevant to this cause identifying him as retired federal law enforcement.

---

[1] Without getting into the classified nature of CI work, the United States Army Counterintelligence Command publicly advertises the CI mission thus: "As a counterintelligence special agent, you'll conduct investigations, collect and process forensic and physical evidence to identify and detect foreign intelligence and international terrorist threats, and plan the appropriate countermeasures to neutralize them... Department of Defense Counterintelligence is designed to defend against national security crimes such as sabotage, espionage, subversion, sedition, treason, and terrorism."  Accessed from https://api.army.mil/e2/c/downloads/2024/07/16/d37fe891/acic-recruiting-v7.pdf on January 29, 2025.

COMPLAINT AND DEMAND FOR JURY TRIAL – CJ GRISHAM

16.     Plaintiff has been a Texas License to Carry ("LTC") a handgun holder for several years and possessed an LTC at all times relevant to this cause.

17.     Plaintiff also a two-tour combat veteran who was injured in combat.  As a result of that combat and his military service, Plaintiff is prone to outbursts of profanity when confronted, assaulted, disrespected, or placed in a stressful situation as a natural reaction to said stimuli.

18.     Plaintiff assisted in writing and getting passed the Texas open carry, campus carry, and constitutional carry bills as a gun rights activist and founder of Open Carry Texas (OCT).  Plaintiff is intimately aware of the gun laws in the State of Texas and frequently holds training sessions to educate members of the public and law enforcement on federal and state gun laws.

19.     Plaintiff is also a licensed attorney in the State of Texas whose practice focuses on civil rights, specifically the First and Second Amendments.  Plaintiff also practices Innocent Defense litigation for Defendants who are falsely arrested and represents many clients in Tarrant County whose rights have been violated.

20.     On December 27, 2024, Mason Yancy died while in the custody of the Tarrant County Sheriff's Office.  Yancy was a good friend and fellow gun rights activist to Plaintiff.  Yancy was a founding member of OCT.

21.     Plaintiff and other activists attended the meeting to exercise their First Amendment right to seek redress of their government officials over the deaths of Yancy and others while in police custody.  Plaintiff signed up to speak on the agenda item related to jail deaths.

22.    Plaintiff arrived at the meeting at 10:00 a.m. on January 14, 2025, and quietly took his seat.  As he frequently does when engaging in activism, Plaintiff live streamed the proceedings for the benefit of his followers to help them understand the process.

23.    Approximately one hour and 27 minutes into the meeting, Plaintiff handed off his camera to a friend so that he could leave and use the restroom.

24.    On his way back to the meeting, Plaintiff recognized Defendant Driskell in the hallway.  Plaintiff approached Defendant Driskell, shook his hands, and engaged in brief pleasantries.  Plaintiff and Defendant Driskell met each other while Plaintiff was engaged in a misdemeanor trial at the Tarrant County Courthouse, and was having issues with bringing his firearm into the courthouse.  As a retired law enforcement officer, Plaintiff is exempt from Tex. Pen. Code § 46.03 by way of Tex. Pen. Code § 46.15, which lists non-applicability of prohibited places.

25.    During the brief conversation, Defendant Driskell asked Plaintiff if he "was packing."  Plaintiff responded that, "I'm always packing.  You know that, Chief."

26.    Defendant Driskell then matter of factly stated, "well, you're not going in there with a gun."

27.    Plaintiff responded that he most certainly was going in the meeting because he's exempt from 46.03 as both a retired law enforcement officer and an LTC holder and there was no legal basis for Defendant Driskell to keep him out.

28.    Defendant Driskell told Plaintiff that TCOLE told him that Plaintiff was not a qualified law enforcement officer, despite the fact that Plaintiff showed Defendant Driskell his retired credentials.  Defendant Driskell said that "I don't care.  You can general

your own little badge and that's fine."  8 U.S.C § 1324c makes federal document fraud a felony punishable by up to 15 years in prison.  Plaintiff's retired law enforcement credentials were issued by the Department of Defense.  Plaintiff's annual weapons qualification that is required under 18 U.S.C. 926c is valid through July 2025.

29.    As Plaintiff was showing Defendant Driskell his LEOSA credentials, Defendant Driskell falsely told Defendant that Defendant was "an analyst.  You weren't [Criminal Investigation Division]; you weren't an [Military Policeman]."  CID and MP are the other two of three military occupational specialties in the Army that qualify for law enforcement status, along with Counterintelligence Special Agent.  Defendant Driskell refused to look at Plaintiff's credentials and told Plaintiff, "You aren't going in there with a gun."

30.    When Plaintiff asked, "under what law" Defendant Driskell refused to recite the law that he was enforcing because no such law existed as applied to Plaintiff.

31.    Plaintiff also explained that Defendant Driskell couldn't prohibit him from entering because Plaintiff is an LTC holder.  Texas Penal Code § 46.15(a)(6) exempts LTC holders from the Tex. Pen. Code § 46.03(a)(14) ban on the carry of a handgun into an open meeting.

32.    During the heated exchange, Plaintiff implored Defendant Driskell, in the presence of Defendant Jauss and another deputy, to "read the fucking law, chief."  Defendant Driskell then threatened to take Plaintiff to jail for "disorderly conduct" for saying "read the fucking law, chief."

33.    Plaintiff asked if Defendant Driskell was "seriously going to take a First Amendment attorney to jail for saying 'fuck'?"  Defendant Driskell responded, "yes, in a public place."  Profanity is protected speech.

34.    Out of fear for being arrested, Plaintiff censored his speech under duress.

35.    While Plaintiff and Defendant Driskell were arguing over whether Plaintiff was who he was, Defendant George forcefully grabbed Plaintiff's left arm.  Plaintiff immediately raised his arms in the air and instructed Defendant George not "to fucking touch me."



36.    Defendant George then used his incredibly large stomach to physically assault Plaintiff and push him backwards.  Defendant Driskell then ordered the arrest of

another individual for Disorderly Conduct who Sheriff's deputies assaulted when he told them "don't fucking touch me."

37.    The fact that so many deputies were not only assaulting so many people, but threatening to arrest them for using profanity, is evidence that Tarrant County has a policy, practice, or procedure to arrest or threaten to arrest citizens engaged in protected speech based on its content.

38.    As Defendant Driskell ordered his deputies to place Plaintiff in handcuffs for "UCW", or unlawful carry of a weapon, Plaintiff noticed Defendant Waybourne come through a side door.  Plaintiff implored Defendant Waybourne, "Sheriff, I've got my law enforcement credentials in my pocket, Sheriff.  Don't do this!"

39.    Defendants took Plaintiff's wallet and were able to view Plaintiff's LTC and retired law enforcement credentials.

40.    Defendant Gabbert then ordered the deputies to take me into a back room where there were no cameras, and no deputies had body cameras.  An unknown deputy also turned off Plaintiff's phone which turned off his live feed so that there was no recording in the back hallway.

41.    While in the hallway, Defendants Driskell, Gabbert, and Waybourne did nothing to stop the unlawful restraint for 40 minutes.

42.    In the back hallway, Defendant Gabbert told Plaintiff that "no one can carry into the meeting because the law changed."  Plaintiff explained that anyone can carry into an open meeting if they have a license if no 30.06/07 signage is posted.  Defendant Gabbert

said that there was signage posted, and Plaintiff asked where since he didn't see any. Defendant Gabbert then left, came back, and informed Plaintiff that there was a small sign.



43.    The sign in question was not a valid sign because it not only falsely stated the law, but failed to follow the requirements for proper notice under Tex. Pen. Code §§ 30.05, 30.06, and 30.07.  Texas law only bans guns in open meetings for citizens who are not licensed to carry under Gov. Code Chapter 411.

COMPLAINT AND DEMAND FOR JURY TRIAL – CJ GRISHAM

44.     Defendants Gabbert and Driskell, as senior law enforcement officers (Defendant Driskell is also supposedly a former attorney), knew or should have known the law prior to assaulting, unlawfully restraining, and falsely arresting Plaintiff.

45.     Plaintiff continued to plead with Defendant Waybourne to put a stop to the unlawful actions of his underlings because he was both licensed and a retired law enforcement officer, both plain exemptions to § 46.03(a)(14). Defendant Waybourne approved of and sanctioned the actions of Defendants Driskell, George, and Gabbert.

46.     After 40 minutes of being in handcuffs, Defendant Waybourne told Plaintiff that if Plaintiff will "be reasonable and take your handgun to your car, we'll let you go."

47.     Plaintiff instead said that he'll be even more reasonable and leave the entire building so that he can draft his complaint for the violations of his right to carry, his right to redress grievances, his right to be free of illegal search and seizure, the conspiracy to violate his rights, the assault, the abuse of authority under color of law, and the official oppression.

48.     Plaintiff did just that and sent his complaint via email and certified mail to Defendant O'Hare.

## JANUARY 28, 2025 TARRANT COUNTY COMMISSIONERS MEETING

49.     On January 28, 2025, the Tarrant County Commissioners Court held another open meeting in accordance with Tex. Gov. Code Chapter 551. There were no signs posted that prohibited licensed gun owners from carrying into the open meeting under Tex. Pen. Codes §§ 30.05, 30.06, and 30.07 giving gun owners notice that carry was prohibited as required by law.

50.    Plaintiff registered to speak during public comments on January 27, 2025, about the death of his friend since he was prevented from speaking at the meeting on the 14th.

51.    This time, however, there were newly printed signs on 8.5"x11" sheets of paper in the hallway leading to the commissioner chambers that informed citizens that guns were banned in the chambers except for licensed gun owners.  This was likely due to Plaintiff's complaint pointing out the law.

52.    Due to a scheduled plea hearing for a client in the courthouse that went longer than anticipated, Plaintiff arrived a little later to the meeting at approximately 10:30 a.m.

53.    As soon as the Plaintiff exited the elevator, he noticed approximately a half dozen TCSO deputies appearing to wait for Plaintiff to arrive.

54.    Defendant George attempted to get Plaintiff's attention, but Plaintiff ignored him and continued walking.

55.    As Plaintiff approached the door to the commissioners' chambers, Defendant George blocked the door and Defendant Driskell demanded to see Plaintiff's LTC. Plaintiff explained that Defendant Driskell had already seen Plaintiff's LTC and that he didn't consent to a search unless Defendant Driskell suspected him of committing a crime.

56.    Plaintiff asked Defendant George for his first name and badge number for his lawsuit, but Defendant George refused to give either.

57.    Defendant George then assaulted Plaintiff by forcing him to move to another area in the hallway.  Defendant Jauss then assaulted Plaintiff by forcefully grabbing Plaintiff's arm without reasonable suspicion or probable cause of a crime being committed.

58.    Defendant Jauss then forced Plaintiff's arm behind his back and raised up towards Plaintiff's head, causing pain.  Defendant used so much force in grabbing Plaintiff that he caused bruising of Plaintiff's left arm (below is a picture taken in a mirror on January 29, 2025).



59.    Defendant Jauss assaulted Plaintiff in plain view of Defendant's Driskell and George, who did not stop the assault or excessive force.

60.    As Defendant Jauss held Plaintiff's arm behind his back painfully, Defendant Driskell informed Plaintiff that "all we need see is your license," similar to the way Chicago mafias used to strongarm citizens into giving up what the mafia wanted using pain compliance.

61.    Defendant Driskell said this in a way that indicated the pain would end if Plaintiff would simply surrender his 4th Amendment right and produce his papers.

62.    Plaintiff then requested that Defendant Jauss identify himself, which Defendant Jauss refused to do.

63.    Plaintiff had to conduct an internet search for the purposes of this litigation because Defendant Driskell also refused to identify his co-conspirators.

64.    Defendant Driskell already knew that Plaintiff was licensed to carry, but even if he didn't, the law would require Defendants to suspect that Plaintiff was illegally carrying or breaking a law to justify a search.

65.    Plaintiff was not in a prohibited area and Defendant George prevented Plaintiff from entering the chambers even if Plaintiff wanted to enter.  A license is not required to carry in the hallway.

66.    There is no law in Texas that requires an LTC holder to provide his LTC without probable cause of criminal activity that requires a person to identify to law enforcement.

67.    Texas is not a stop and ID state.

68.     Due to the coercion and pain inflicted by Defendants Jauss, Driskell, and George, Plaintiff provided his LTC at which time Defendant Jauss released his painful grip on Plaintiff and allowed Plaintiff to enter the chambers.

69.     During the meeting, Defendant O'Hare and other members of the Tarrant County Commissioners Court discussed a new "decorum policy" that Defendant O'Hare wanted to institute despite not a single citizen testifying in favor of it.

70.     The new policy banned "personal attacks, impertinent, profane, obscene, or slanderous remarks."

71.     While obscenities and slander are not protected speech, the rest are.

72.     Defendant O'Hare knew or should have known that his "rules of decorum" were facially unconstitutional.

73.     Texas Government Code § 551.007(e) specifically prohibits Defendant O'Hare from "prohibiting public criticism of the government body, including criticism of any act, omission, policy, procedure, program, or service."  This specifically means that the "personal attacks" prohibits violates not only state law, but the First Amendment.

74.     Profanity is specifically protected as expressive speech.  "The constitutional guarantees of freedom of speech forbid the States to punish the use of words or language not within narrowly limited classes of speech." *Gooding v. Wilson*, 405 U.S. 518, 521-522, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972).  Those limited classes are fighting words[2], obscenity

---

[2] *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942).

(speech that satisfies the prurient interests of the speaker or recipient)[3], child pornography[4], and the incitement to imminent lawless activity[5].

75.    Additionally, the First Amendment prohibits the criminalizing or censoring of speech that is merely insulting.[6] "Speech is often provocative and challenging … [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest."[7]

76.    After approximately two hours and fifteen minutes of waiting for citizen comments, Plaintiff approached the podium when recognized by Defendant O'Hare.

77.    Plaintiff began with a recitation about what happened during the January 14th meeting when he wasn't able to talk about his friend's death in custody because of the false arrest.

78.    Plaintiff began his comments thus: "I came here last time because my good friend, Mason Yancy, was murdered in the jail…That's why I meant to come here.  But you didn't hear from me.  The reason you didn't hear from me is because the thugs that you have outside the door there assaulted me, threw me in handcuffs for no reason whatsoever, and tried to arrest me.  Thankfully, Sheriff Waybourne thought the better of valor and listened to me when I told him to read the fucking law."

---

[3] *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).
[4] *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982).
[5] *Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 73 L.Ed.2d 430 (1969).
[6] *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); See also *Houston v. Hill*, 482 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987).
[7] *Terminello v. Chicago*, 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed.2d 1131 (1949).

COMPLAINT AND DEMAND FOR JURY TRIAL – CJ GRISHAM

79.    Defendant O'Hare immediately cut Plaintiff off and ordered deputies to "remove him immediately for that comment."

80.    Plaintiff responded, "excuse me.  That's protected speech."

81.    Plaintiff's words were not fighting words.

82.    Plaintiff's words were no obscenity.

83.    Plaintiff's words were not designed to incite violence.

84.    Despite being protected speech, Defendant O'Hare responded, "it's not gonna be protected in this courtroom."

85.    A commissioners court in Texas has the unique combined legislative, judicial, and executive powers, depending on their actions.  A county commissioners court is not an Article V court in Texas.  However, commissioners courts in Texas have very little judicial authority and when the commissioners meet in open meeting for the purpose of legislating county business, they are acting in a legislative role and not a judicial one.  The commissioners courts main judicial duties are ensure that funding is provided to the county courts, justices of the peace, jails, and other judicial efforts.  It does not oversee cases or controversies.  In other words, a county commissioners meeting is not much different than a city council meeting.[8]

86.    The Constitution is not a foreign concept to a commissioners court nor is the commissioners court exempt from its civil rights responsibilities.

---

[8] Texas Association of Counties, *2021 Guide to Texas Laws for County Officials,* pp 54-55. November 2021. Accessed January 30, 2025. https://www.county.org/getmedia/48ae53ae-b6b1-428d-ae50-384ec747ac7c/2021-Guide-to-Laws-for-County-Officials.pdf

COMPLAINT AND DEMAND FOR JURY TRIAL – CJ GRISHAM

87.     On Defendant O'Hare's command, Plaintiff was escorted out of the chambers under threat of arrest for repeating what he told the Sheriff in an expressive way.

88.     Plaintiff was given no warning before being immediately silenced.

89.     Ironically, Plaintiff prepared a document explaining why the new "rules of decorum" being voted on were unconstitutional.

90.     Defendant O'Hare also violated the commissioner court's own policy about "personal attacks" by telling a fellow commissioner that she was "the most classless person to ever sit in that chair."

91.     Defendant O'Hare was not removed for violations of the rules of decorum.

92.     No other person in attendance was subjected to a search of whether they were armed and/or possessed a license to carry except Plaintiff who was specifically targeted by Defendants.

## V.    CLAIMS AGAINST DEFENDANT

### COUNT I
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Fourth Amendment – False Imprisonment/Unlawful Arrest)

93.     Plaintiff restates and incorporates by reference each and every allegation set forth in all prior allegations.

94.     At all times relevant herein, Defendants were acting under color of State law.

95.     Defendants Driskell, George, Gabbert, and Jauss willfully detained Mr. Grisham on January 14, 2025, by placing Plaintiff in handcuffs using physical

force, threats of arrest, and other means to restrain him from moving from one place to another for over 40 minutes.   Defendants Driskell, George, Gabbert, and Jauss threatened to arrest Mr. Grisham on January 28, 2025, if he did not leave the building after Defendant O'Hare unconstitutionally suppressed and censored his speech based on its content and ordered removed from the building.  Mr. Grisham was justly in fear of injury if he did not comply with the order to leave having witnessed others being physically and violently removed by Defendants in the past.

96.    Defendants Driskell, George, Gabbert, and Jauss willfully detained Plaintiff without Mr. Grisham's consent, probable cause, or reasonable suspicion of a crime.  Plaintiff clearly stated he did not consent to a search or seizure to all Defendants.

97.    Defendant detained Mr. Grisham without legal justification or authority of law because Defendants knew or should have known that it was legal to carry a handgun into an open meeting by a person in Mr. Grisham's position.

98.    Plaintiff did not consent to being handcuffed and made clear on several occasions that he did not like being touched or grabbed.

99.    Plaintiff was engaged in meaningful discussion about the law when Defendants Driskell, George, Gabbert, and Jauss unreasonably cuffed and shoved Plaintiff without probable cause or reasonable suspicion of a crime.  Plaintiff never exhibited any signs of violence, nor did Defendants suspect Plaintiff of being a

violent criminal.  Defendants knew that Plaintiff was an officer of the court as a licensed attorney and a retired Peace Officer under Texas and Federal laws. Defendants Driskell, George, Gabbert, and Jauss also knew that Mr. Grisham was a License to Carry holder.

100.    Defendants acted unreasonably when they shoved, grabbed, and handcuffed Plaintiff for backing away from an officer who was unlawfully attempting to detain or otherwise seize Plaintiff.  Mr. Grisham exhibited no signs of violence, and he was not suspected of being a violent criminal.

101.    Defendants were not in a high-pressure situation that would require split second decisions.

102.    Because there was no reasonable suspicion or probable cause of criminal activity, Defendants acted without authority of law.

103.    Defendants used so much force on Plaintiffs so as to cause Plaintiff to sustain bruises on his arm.

104.    At all times relevant, Defendants were required to obey the laws of the United States.

105.    At all times relevant, Plaintiff had a clearly established right to be free from excessive force of this nature.

106.   At all times relevant, Defendants intentionally, knowingly, maliciously, recklessly, unreasonably, and/or grossly negligently used excessive force on Plaintiff.

107.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for his physical, mental, and emotional injury, and for pain, mental anguish, humiliation and embarrassment.

### COUNT II
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (First Amendment – Unlawfully Preventing Protected Conduct)

108.   Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

109.   At all times relevant herein, Defendants were acting under color of state law.

110.   Plaintiff has a First Amendment right to express himself on matters of public concern in a limited public forum set aside for citizens to seek redress for their grievances, such as a County Commissioners Court Meeting.

111.   Plaintiff has a constitutional and statutory right to be present at public hearings in Texas while peaceably carrying a firearm.

112.   Plaintiff was engaged in constitutionally and statutorily protected conduct when discussing his opinions on the new "rules of decorum," which is a matter of public interest.

113.   Defendant O'Hare enforced unconstitutional "rules of decorum" that prohibit criticism of public officials and the use of expressive speech like profanity.

114.   Tex. Gov't Code § 551.007(e) states that a "governmental body may not prohibit public criticism of the governmental body, including criticism of any act, omission, policy, procedure, program, or service."

115.   Defendant O'Hare clearly violated state law as he criticized the actions of Defendants on January 28, 2025.

116.   Defendant O'Hare, without warning, silenced Mr. Grisham within 30 seconds of his speech, and prohibited him from exercising his right to free speech, record public officials in the conduct of their official business, and seek redress from government.

117.   Defendants Driskell, George, Gabbert, and Jauss threatened to arrest Mr. Grisham while he was attempting to exercise his First Amendment right to attend an open meeting to express his grievances on a matter of public concern.

118.   All Defendants intentionally, knowingly, maliciously, recklessly, and/or unreasonably prevented Plaintiff from recording public officials conducting their duties.

119. All Defendants intentionally, knowingly, maliciously, recklessly, and/or unreasonably prevented Plaintiff from addressing elected officials during an open meeting on a matter of public interest.

120. Plaintiff had a clearly established constitutional right to record the police.

121. Plaintiff had a clearly established constitutional and statutory right to express himself and criticize public officials without censorship or content-based discrimination based on speech.

122. Defendants violated the same unconstitutional rules of decorum without consequence that the Plaintiff was punished for allegedly violating.

123. The Defendants' acts deprived Plaintiff of the rights, privileges, and immunities guaranteed to citizens of the United States by the First and Fourteenth Amendments to the Constitution of the United States, and in violation of 42 U.S.C. § 1983 and conspired to commit same in violation of 42 U.S.C. § 1985.

124. As a proximate cause of the illegal and unconstitutional acts of the Defendants, Plaintiff was harmed and suffered damages as a result.

## <u>COUNT III</u>
### <u>VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983</u>
### <u>(Second Amendment – Right to Keep an Bear Arms Peaceably)</u>

125. Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

126.   At all times relevant herein, Defendants were acting under color of state law.

127.   Plaintiff has a Second Amendment and Texas constitutional right under Article I, Section 23, to be peaceably armed in defense of self and others.

128.   Plaintiff has a statutory right to be present at public meetings in Texas while carrying a firearm since he is licensed under Chapter 411 of the Tex. Gov't. Code.

129.   Defendants had and enforced a policy which violated the constitutional and statutory rights of citizens attending open meetings of the Tarrant County Commissioners Court to peaceably carry firearms if licensed by the State of Texas.

130.   In retaliation for engaging in protected conduct, Defendants arrested Plaintiff for carrying a firearm during an open meeting.

131.   Officers had no knowledge or information that would lead a reasonable officer in their situation to believe that there was probable cause to threaten Plaintiff with arrest or force him to leave based on the lawful carry of a holstered handgun.

132.   At all times relevant, Defendants were required to obey the laws of the United States.

133.   As a direct and proximate result of Defendant's unlawful actions, Plaintiff suffered damages.

## COUNT IV
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1985
## (Conspiracy to Deprive Plaintiff of Rights or Privileges)

134.   Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

135.   At all times relevant herein, Defendants were acting under color of state law.

136.   Defendants conspired by using force, intimidation, or threat to directly prevent Plaintiff from exercising his First and Second Amendment protected rights, which deprived him of the equal protection of the laws, or of equal privileges and immunities under the laws.

137.   Defendants prepared for and planned their actions against Plaintiff and other citizens should Defendant O'Hare give the word or signal to arrest or threaten to arrest anyone for engaging in protected speech to which Defendant O'Hare disagreed.

138.   All Defendants willfully engaged and participated in the conspiracy to deprive Plaintiff of his rights by enforcing the unconstitutional "rules of decorum."

139.   At all times relevant, Defendants were required to obey the laws of the United States.

140.   As a direct and proximate result of Defendant's unlawful actions, Plaintiff suffered damages.

## QUALIFIED IMMUNITY

141.   Defendants are not entitled to a qualified immunity defense.

142.   Government officials performing discretionary functions are protected from civil liability under the doctrine of qualified immunity if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982).

143.   To review claims of qualified immunity, a court first asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the officers' conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001).  If so, the court must then consider whether the right was clearly established, that is, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id*. at 202, 121 S. Ct. at 2156.

144.   Plaintiff has alleged several violations of his constitutional rights, meeting the first prong to overcome qualified immunity.

145.   A plethora of case law exists that Officers may not detain or arrest a person without probable cause or reasonable suspicion.

146.   *Terry v. Ohio* clearly established that for a *Terry* frisk to be valid, an officer must have 1) "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" a frisk, and 2)  the suspect must be "armed and dangerous."  *Terry v. Ohio*, 391 U.S. 1, 21-22 (1968).

147.   *Cohen v. California*, 403 U.S. 15 (1971); *Chaplinsky v. N.H.,* 315 U.S. 568 (1942); *Houston v. Hill*, 482 U.S. 451 (1987); *R.A.V. v St. Paul*, 505 U.S. 377 (1991); and many other cases put Defendants on notice that Plaintiff's actions were protected and have already clarified that profanity is protected speech unless it falls within narrowly defined categories like fighting words, obscenity, or incitement to violence.

148.   Qualified immunity attaches to a civil complaint against a government official when the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. This doctrine shields government officials performing discretionary functions from liability under Section 1983 for civil damages.  Here, it is clear that Defendants violated clearly established law and they are not entitled to qualified immunity.

### *MONELL LIABILITY*

149.   Defendants' actions, and the actions of Tarrant County demonstrate a policy, practice, or custom to deprive Plaintiff and other government accountability activists of their First and Second amendment rights.  On multiple occasions,

COMPLAINT AND DEMAND FOR JURY TRIAL – CJ GRISHAM

individual Defendants have detained, arrested, or otherwise charged First and Second Amendment activists for speaking.

150.   Time and time again, Defendants have cited activists with meritless charges, only to have these charges dropped prior to trial.

151.   Despite the fact that these charges are frequently dropped, Defendants continue to cite activists in hopes to curtail the activists from exercising their First and Second Amendment Rights.

152.   Defendants have an unconstitutional policy called the Rules of Decorum that are enforced with an iron fist against critics.

153.   Defendants' actions and inactions constitute an impermissible policy, practice, or custom that deprive Plaintiff of his right to be free from state-sponsored violence and retaliation for protected conduct.

154.   At all times relevant, Plaintiff had a clearly established right to be free from unlawful policies, practices, and customs.

155.   The Rules of Decorum are unlawful as they conflict with Texas law permitting criticism of government officials. Thus, it is an unlawful policy or custom which was the moving force behind Plaintiff's injuries.

156.   The Rules of Decorum are unconstitutional as they conflict with First Amendment of the United States Constitution prohibiting content-based discrimination of speech.

157.    Defendant O'Hare is a final policy maker for Defendant County.

158.    Even if the Rules of Decorum were not unlawful, they were an officially adopted policy that had plainly obvious consequences resulting in constitutional violations.

159.    Further, the County had notice of such recurring constitutional violations stemming from the Rules of Decorum.

160.    As a direct and proximate result of Defendant County's unlawful actions, Plaintiff suffered injuries and damages for his physical, mental, and emotional injury, and for pain, mental anguish, humiliation and embarrassment.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff CJ Grisham demands judgment and prays for the following relief, jointly and severally, against all Defendants.

a. Full and fair compensatory damages in an amount to be determined by a jury;

b. Punitive damages $250,000;

c. Reasonable attorney's fees and costs of this action; and

d. Any such other relief as appears just and proper.

## JURY DEMAND

Mr. Grisham hereby demands a trial by jury of all issues so triable, pursuant to Fed. R. Civ. P. 38(b).

Respectfully Submitted,

LAW OFFICES OF CJ GRISHAM PLLC

**CJ GRISHAM**
Texas State Bar No. 24124533
cj@cjgrisham.com
3809 S. General Bruce Dr.
Ste 103-101
Temple, Texas 76502
Telephone: 254-405-1726

***PRO SE COUNSEL FOR PLAINTIFF***