IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CJ GRISHAM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:25-CV-716-Y |
| | § | |
| TIM O'HARE, ET AL, | § | |
| | § | |
| Defendants. | § | |

---

**DEFENDANT DEPUTIES MOTION TO DISMISS FIRST AMENDED
COMPLAINT AND BRIEF IN SUPPORT**

---

**KATHERINE OWENS**
State Bar No. 2408168
**CRAIG M. PRICE**
State Bar No. 16284170
**Assistant Criminal District Attorneys**

PHIL SORRELLS
CRIMINAL DISTRICT ATTORNEY
TARRANT COUNTY, TEXAS
Tarrant County Criminal District Attorney's Office
Tim Curry Criminal Justice Center
401 W. Belknap, 9th Floor
Fort Worth, Texas 76196
817-884-1409 – Telephone
817-884-1675 – Facsimile
keowens@tarrantcountytx.gov
cmprice@tarrantcountytx.gov

**ATTORNEYS FOR DEFENDANT
DEPUTIES**

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES ........................................................................................................ iii

I.   INTRODUCTION ...........................................................................................................1

II.  PLAINTIFF'S ALLEGATIONS ......................................................................................2

III. LEGAL STANDARDS ....................................................................................................4
     A. Motion to Dismiss............................................................................................4
     B. Qualified Immunity...........................................................................................5

IV.  ANALYSIS........................................................................................................................7

     A. Plaintiff failed to Allege a Plausible Fourth Amendment Claim...................7

          1. Plaintiff failed to state a claim for unlawful arrest on January 14, 2025 .................9
             a. Texas law required Plaintiff to present his LTC.................................9
             b. Plaintiff's actions reasonably constituted disorderly conduct .........12
          2. Plaintiff failed to allege a Fourth Amendment claim for the encounter on
             January 28, 2025 ....................................................................................15
          3. Plaintiff failed to allege an excessive force claim pursuant to the Fourth
             Amendment...............................................................................................16

     B. Plaintiff Failed to Plausibly Allege a First Amendment Claim Against the
        Defendant Deputies...........................................................................................17

          1. Plaintiff did not sufficiently allege a constitutional challenge to the rules
             of decorum ...............................................................................................18
          2. Plaintiff failed to adequately plead a First Amendment claim against the
             Deputies ....................................................................................................19
          3. Plaintiff's First Amendment right to record was not sufficiently alleged .............20

     C. Plaintiff Failed to Adequately Plead a Second Amendment Violation.......................21

     D. Plaintiff did not Adequately Plead Failure to Supervise Against Driskell ..................23

     E. Section 1985(3) Conspiracy Claims are Barred by the Intracorporate Conspiracy
        Doctrine...............................................................................................................24

     F. Plaintiff Failed to Adequately Allege that Punitive Damages are Warranted .............25

V.   PRAYER............................................................................................................................25
     Signature..............................................................................................................26

     Certificate of Service..........................................................................................26

# TABLE OF AUTHORITIES

Page(s)

Cases

*Alexander v. S. Health Partners, Inc.*,
No. 3:22-CV-0395-X, 2023 WL 3961704 (N.D. Tex. June 12, 2023) ............................ 4, 7, 16

*Anderson v. Creighton*,
483 U.S. 635 (1987) ................................................................................................. 5, 6

*Anderson v. U.S. Dep't of Hous. & Urban Dev.*,
554 F.3d 525 (5th Cir. 2008) ........................................................................................ 4

*Ark. Educ. Tv Comm'n v. Forbes*,
523 U.S. 666 (1998) ................................................................................................... 18

*Arnold v. Williams*,
979 F.3d 262 (5th Cir. 2020) ........................................................................................ 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................. passim

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................................... 4

*Benningfield v. City of Houston*,
157 F.3d 369 (5th Cir. 1998) ...................................................................................... 24

*Black v. N. Panola Sch. Dist.*,
461 F.3d 584 (5th Cir. 2006) ...................................................................................... 16

*Blackburn v. City of Marshall*,
42 F.3d 925 (5th Cir. 1995) .......................................................................................... 4

*Calhoun v. Villa*,
761 F. App'x 297 (5th Cir. 2019) ............................................................................... 14

*Carswell v. Camp*,
54 F.4th 307 (5th Cir. 2022) ......................................................................................... 5

*Cass v. City of Abilene*,
814 F.3d 721 (5th Cir. 2016) .......................................................................... 7, 15, 20

*Chaplinsky v. New Hampshire*,
315 U.S. 568 (1942) ................................................................................................... 19

iii

*Chiu v. Plano Independ. Sch. Dist.*,
  260 F.3d 330, 347 (5th Cir. 2001)..................................................................................18

*Cinel v. Connick*,
  15 F.3d 1338 (5th Cir. 1994)......................................................................................... 24

*City of Madison, Joint Sch. Dist. No. 8 v. Wisc. Emp't Relations,*
  *Coram'n*, 429 U.S. 167 (1976)...................................................................................... 18

*Collier v. Montgomery*,
  569 F.3d 214 (5th Cir. 2009)........................................................................................... 6

*Collins v. Bauer*,
  No. 3:11-CV-00887-B, 2012 WL 443010 (N.D. Tex. Jan. 23, 2012) ...................................... 24

*Devenpeck v. Alford*,
  543 U.S. 146 (2004) ....................................................................................................... 14

*Florida v. Royer*,
  460 U.S. 491 (1983) ........................................................................................................ 8

*Foster v. City of Lake Jackson*,
  28 F.3d 425 (5th Cir. 1994)............................................................................................. 6

*Gjemre* v. *Leffingwell*,
  No. A-13-CA-729-SS, 2015 WL 433506 (W.D. Tex. Feb. 2, 2015)........................................ 20

*Gonzalez v. Kay*,
  577 F.3d 600 (5th Cir. 2009)............................................................................................ 4

*Good News Club v. Milford Cent. Sch.*,
  533 U.S. 98 (2001) ................................................................................................... 18, 19

*Haines v. Kerner*,
  404 U.S. 519 (1972) ........................................................................................................ 4

*Hare v. City of Corinth, Miss.*,
  135 F.3d 320 (5th Cir. 1998)...................................................................................... 9, 15

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) .................................................................................................. 5, 22

*Heaney v. Roberts,*
  846 F.3d 795 (5th Cir. 2017)..................................................................................... 18, 19

*Hershey v. City of Bossier City*,
  No. 21-30754, 2025 WL 2836908 (5th Cir. Oct. 8, 2025)..................................................... 20

*Hilliard v. Ferguson*,
  30 F.3d 649 (5th Cir. 1994) ................................................................................... 24, 25

*Hinojosa v. Livingston*,
  807 F.3d 657 (5th Cir. 2015) .................................................................................. 17, 25

*Hunter v. Bryant*,
  502 U.S. 224 (1991) ...................................................................................................... 6

*Jimerson v. Lewis*,
  94 F.4th 423 (5th Cir. 2024) ............................................................................... passim

*Johnson v. City of Yoakum, Texas*,
  No. 6:19-CV-00011, 2025 WL 2411605 (S.D. Tex. Aug. 19, 2025) ................................. 19, 20

*Kentucky v. Graham*,
  473 U.S. 159 (1985) ...................................................................................................... 7

*King v. U.S. Dep't of Veterans Affs.*,
  728 F.3d 410 (5th Cir. 2013) ....................................................................................... 16

*Malley v. Briggs*,
  475 U.S. 335 (1986) ...................................................................................................... 6

*Matter of Dallas Roadster, Ltd.*,
  846 F.3d 112 (5th Cir. 2017) ....................................................................................... 16

*Meadours v. Ermel*,
  483 F.3d 417 (5th Cir. 2007) ................................................................................. 7, 15, 20

*Mendenhall v. Riser*,
  213 F.3d 226 (5th Cir. 2000) ............................................................................. 9, 12, 14, 15

*Monell v. Dep't of Soc. Servs. of City of New York*,
  436 U.S. 658 (1978) ...................................................................................................... 7

*Morgan v. Gandalf, Ltd.*,
  165 F.App'x 425 (6th Cir. 2006) .................................................................................... 1

*Mullenix v. Luna*,
  577 U.S. 7 (2015) .......................................................................................................... 6

*Navarette v. California*,
  572 U.S. 393 (2014) ..................................................................................................... 12

*Nelson Radio & Supply Co. v. Motorola, Inc.*,
  200 F.2d 911 (5th Cir. 1953) ....................................................................................... 24

*NetChoice, LLC,*
  603 U.S. 707 (2024) ................................................................................................ 18, 19

*New York v. Ferber,*
  458 U.S. 747 (1982) ...................................................................................................... 18

*Pearson v. Callahan,*
  555 U.S. 223 (2009) ........................................................................................................ 5

*Pfannstiel v. City of Marion,*
  918 F.2d 1178 (5th Cir. 1990) ...................................................................................... 24

*Ristow v. Hansen,*
  719 F. App'x 359 (5th Cir. 2018) ................................................................................. 16

*Roberts v. City of Shreveport,*
  397 F.3d 287 (5th Cir. 2005) ................................................................................... 23, 24

*Shemwell v. Cannon,*
  352 F. Supp. 3d 690 (N.D. Tex. 2019) ..................................................................... 13, 14

*Smith v. Brenoettsy,*
  158 F.3d 908 (5th Cir. 1998) ........................................................................................ 23

*Smith v. Wade,*
  461 U.S. 30 (1983) ........................................................................................................ 25

*Sonnier v. State Farm Mut. Auto. Ins. Co.,*
  509 F.3d 673 (5th Cir. 2007) ........................................................................................ 11

*Stein v. Dallas County,*
  No. 3:22-CV-1255-D, 2023 WL 2700720 (N.D. Tex. March 29, 2023) ................................. 20

*Story v. Azaiez,*
  No. 1:22-CV-448-DAE, 2023 WL 11969350 (W.D. Tex. July 26, 2023) ............................... 19

*Surratt v. McClarin,*
  851 F.3d 389 (5th Cir. 2017) .......................................................................................... 7

*Swilley v. City of Houston,*
  457 F. App'x 400 (5th Cir. 2012) ................................................................................. 24

*Terry v. Ohio,*
  392 U.S. 1 (1968) ............................................................................................................ 8

*Texas v. Yellen,*
  105 F.4th 755 (5th Cir. 2024) ....................................................................................... 16

*Thompson v. City of Galveston*,
  979 F. Supp. 504 (S.D. Tex. 1997) ........................................................................ 24

*Turner v. Driver,*
  848 F.3d 678 (5th Cir. 2017).................................................................... 8, 15, 20

*Tuttle v. Sepolio*,
  68 F.4th 969 (5th Cir. 2023)........................................................................... 23

*United States v. Abdo*,
  733 F.3d 562 (5th Cir. 2013)............................................................................ 8

*United States v. Arvizu*,
  534 U.S. 266 (2002) .................................................................................... 8, 12

*United States v. Corral-Franco*,
  848 F.2d 536 (5th Cir. 1988)............................................................................ 8

*United States v. Cortez*,
  449 U.S. 411 (1981) ....................................................................................... 8

*United States v. Hensley,*
  469 U.S. 221 (1985) ..................................................................................... 8, 22

*United States v. Sanders*,
  994 F.2d 200 (5th Cir. 1993)......................................................................... 9, 14

*United States v. Sokolow*,
  490 U.S. 1 (1989) ............................................................................................ 8

*Vincent v. City of Sulphur*,
  805 F.3d 543 (5th Cir. 2015)............................................................................ 6

*Walters v. McMahen*,
  795 F. Supp. 2d 350 (D. Md. 2011) ................................................................ 24

*Wenthold v. City of Farmers Branch, Texas*,
  No. 3:11–CV–0748–B, 2012 WL 467325 (N.D. Tex. Feb.14, 2012)...................... 18

*White v. Pauly*,
  580 U.S. 73 (2017) ........................................................................................ 6, 7

*Wright v. McCain,*
  703 F. App'x 281 (5th Cir. 2017) ..................................................................... 5

*Young v. City of Irving,*
  No. 3:23-CV-1423-D, 2025 WL 888430 (N.D. Tex. Mar. 21, 2025)................... 24, 25

*Young v. City of Killeen*,
  775 F.2d 1349 (5th Cir. 1985).................................................................... 6

Statutes

42 U.S.C. § 1983..................................................................................... 2

42 U.S.C. § 1985(3) .............................................................................. 25

Texas Gov't Code § 411.205 .............................................................. 9, 10

Tex. Gov't Code § 411.205(1)............................................................ 10, 21

Tex. Gov't Code § 411.207(a) ............................................................... 10

Tex. Gov't Code § 411.209(a) ............................................................... 22

Tex. Occ. Code § 1701.051 ..................................................................... 9

Tex. Penal Code § 30.06(e)................................................................... 22

Tex. Penal Code § 30.07(e)................................................................... 22

Tex. Penal Code § 42.01(a)................................................................... 13

Tex. Penal Code § 46.15 .................................................................. 22, 23

Rules

Fed. R. Civ. P. 8(a)(2).............................................................................. 4

Fed. R. Civ. P. 12(a)(4)............................................................................ 1

Fed. R. Civ. P. 12(b) ....................................................................... *passim*

Attorney General Opinions

Tex. Att'y Gen. Op. KP-0049 (2015) ..................................................... 23

Tex. Att'y Gen. Op., KP-0501 (2025) ............................................... 22, 23

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CJ GRISHAM,                          §
                                     §
        Plaintiff,                   §
                                     §
v.                                   §          Civil Action No. 4:25-CV-716-Y
                                     §
TIM O'HARE, ET AL,                   §
                                     §
        Defendants.                  §

**DEFENDANT DEPUTIES MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT AND BRIEF IN SUPPORT**

COME NOW, individual Defendants Chief Deputy Craig Driskell, Sergeant Orville George, Sergeant Michael Jauss, and Chief Deputy Jennifer Gabbert (collectively "Defendants"), by and through the undersigned counsel, and jointly file this Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) and Brief in Support, they assert qualified immunity in response to the Plaintiff's First Amended Complaint ("ECF No. 17"), and they respectfully show this Court the following:

## I.    INTRODUCTION

The Court should dismiss all of Plaintiff's claims against the individual Defendant Sheriff's Deputies for failure to state a claim for relief. Additionally, each of the Defendant deputies is entitled to qualified immunity for actions that were objectively reasonable and did not violate clearly established law.[1] Fed. R. Civ. P. 12(b)(6); *see also* Fed. R. Civ. P. 12(a)(4); *Morgan v.*

---

[1] The Court must accept as true only *well-pleaded* facts, but the Defendants, by identifying Plaintiff's alleged facts herein for purposes of this motion, do not admit Plaintiff's alleged facts.

1

*Gandalf, Ltd.*, 165 F.App'x 425, 428 (6th Cir. 2006)(Defendants not required to file an answer until 14 days after the Court rules on Rule 12 motion).

## II.    PLAINTIFF'S ALLEGATIONS

C. J. Grisham ("Plaintiff") has sued individual Defendants and Tarrant County, a political subdivision of the State of Texas, under 42 U.S.C. § 1983 for an alleged civil rights conspiracy and denial of his First, Second, Fourth, Ninth, and Fourteenth Amendment rights under the United States Constitution. ECF No. 17, ¶¶ 1, 126-211.

On January 14, 2025, Plaintiff was in the audience of a Tarrant County Commissioners Court meeting when he left the courtroom for a restroom break. ECF No. 17, ¶¶ 23-24. Plaintiff attempted to return to the meeting while carrying a handgun. ECF No. 17, ¶¶ 23-27. Defendant Chief Deputy Craig Driskell ("Driskell"), relying on guidance from the Texas Commission on Law Enforcement (TCOLE) that Grisham was *not* a qualified law enforcement officer, denied him entry with a weapon. *Id*. at ¶¶ 28-31. During a subsequent heated verbal exchange while surrounded by an agitated crowd, Plaintiff used profanity and failed to provide verifiable credentials allowing him to openly carry a handgun into the Commissioners Court. *Id*. at ¶¶ 36-37 *(see* photo at p. 13 – Plaintiff with arms raised and wearing light-colored baseball cap). Plaintiff alleged he and Driskell, but no other Defendants, "were arguing over whether Plaintiff was who he claimed to be." ECF No. 17, ¶ 45. Plaintiff alleged that Driskell told Plaintiff TCOLE did not consider him to be a licensed peace officer. ECF No. 17, ¶¶ 30-31. Plaintiff also alleged that Defendant Driskell doubted his credentials, saying "I don't care. You can [generate] your own little badge and that's fine." ECF No. 17, ¶ 31; *see also* ECF No. 17, ¶ 30 (Driskell also expressed doubt about Plaintiff's retired law enforcement status).

2

After Plaintiff was handcuffed, Defendant Chief Deputy Jennifer Gabbert ("Gabbert") ordered deputies to escort Plaintiff away from the crowd and into a room, where the Defendants were able to view his state license to carry a handgun ("LTC"). *Id*., at ¶¶ 54-58. However, Plaintiff does not allege that he showed his credentials to the Defendants at that time or that they actually saw his credentials; he only alleges that Defendants "were *able to view* his LTC and retired law enforcement credentials since they are kept together in his wallet." ECF No. 17, ¶¶ 56-57 (emphasis added). After forty minutes, Plaintiff was released without any charges being filed against him. *Id*. at ¶¶ 59, 65. Plaintiff did not return to the Commissioners Court meeting that day. *Id*. at ¶¶ at 65-67.

On January 28, 2025, Plaintiff, again while carrying a handgun, visited the Commissioners Court for another public meeting. ECF No. 17, ¶¶ 72-73. After ignoring Defendant Sergeant Orville George ("George") outside of the courtroom, Plaintiff alleges he was physically blocked and restrained by George until he produced his LTC, after which he was allowed entry into the public meeting. *Id*. at ¶¶ 78-84, 97.

Later, while speaking to Commissioners Court during public comments before a vote on the adoption of proposed rules of decorum, Plaintiff addressed another matter and used profanity. *Id*. at ¶¶ 98, 106-10. Defendant County Judge Tim O'Hare ("O'Hare") ordered Plaintiff to be removed immediately for using vulgar profanity in a limited public forum. *Id*. at ¶¶ 109, 117 ("Plaintiff was escorted out of the chambers under threat of arrest for repeating what he told the Sheriff in an expressive way.").

3

### III.    LEGAL STANDARDS

#### A.    Motion to Dismiss

Federal Rule of Civil Procedure 8's notice pleading standard requires a plaintiff "to give defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Alexander v. S. Health Partners, Inc.*, No. 3:22-CV-0395-X, 2023 WL 3961704, at *8-9 (N.D. Tex. June 12, 2023); Fed. R. Civ. P. 8(a)(2). Plaintiff has failed to adequately allege any claims against the individual Defendants according to the well-established pleading standard.

To avoid a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This demands more than alleging that "the-defendant-unlawfully-harmed-me ...." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than name laws that may have been violated by the defendant; it must also allege facts regarding what conduct violated those laws." *Anderson v. U.S. Dep't of Hous. & Urban Dev.*, 554 F.3d 525, 528 (5th Cir. 2008). Claims must include enough factual allegations "to raise a right to relief above the speculative level ...." *Twombly*, 550 U.S. at 555.

"Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

*Pro se* plaintiff complaints are liberally construed in the plaintiff's favor. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, as a licensed attorney who represents himself in this

4

matter, Plaintiff is held to a higher standard than an unlicensed or uneducated *pro se* litigant. *Wright v. McCain,* 703 F. App'x 281, 284 (5th Cir. 2017).

### B.    Qualified Immunity

Each of the individual Defendant deputies - Driskell, Gabbert, George and Jauss - is now and was, at all relevant times alleged in the First Amended Complaint, a Sheriff's Deputy employed by Tarrant County. ECF No. 17, ¶¶ 7-10. As such, each Defendant deputy asserts his or her entitlement to qualified immunity in this case.[2]

Analysis of a qualified immunity claim involves the determination of: (1) whether the Plaintiff alleged a violation of a clearly established constitutional right, and (2) whether, at the time of the alleged violation, the right was so clearly established a reasonable official in the defendant's situation would have understood that his conduct violated the right. *Pearson v. Callahan*, 555 U.S. 223, 244 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Anderson v. Creighton*, 483 U.S. 635, 637-41 (1987). Which of the two prongs of the qualified immunity analysis should be addressed first is left to the discretion of the court in light of the circumstances in the case. *Pearson,* 555 U.S. at 236.

In *Harlow*, the Supreme Court explained that a key question is "whether that law was clearly established at the time an action occurred," because if the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to know that the law forbade conduct not previously identified as unlawful. 457 U.S. at 818. *See also Anderson*, 483 U.S. at 640. Individual liability turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly

---

[2] This Court properly entered an order staying all discovery in this case until the individual Defendants' assertions of qualified immunity are fully adjudicated. *See* ECF No. 16, ¶ 3. *Carswell v. Camp*, 54 F.4th 307, 312 (5th Cir. 2022).

established law at the time. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *Anderson*, 483 U.S. at 639-40. If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015); *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Qualified immunity is designed to shield from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341; *Hunter*, 502 U.S. at 229. "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Malley*, 475 U.S. at 341. Furthermore, even if the official could have handled the situation better, it will not affect his entitlement to qualified immunity. *Young v. City of Killeen*, 775 F.2d 1349, 1352-53 (5th Cir. 1985).

Qualified immunity is the rule, not the exception. *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994). Although nominally an affirmative defense, the plaintiff has the burden to negate the assertion of qualified immunity once properly raised. *Collier v. Montgomery*, 569 F.3d 214, 217-18 (5th Cir. 2009). A plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity. *Arnold v. Williams*, 979 F.3d 262, 266-67 (5th Cir. 2020).

The standard is demanding. *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). Although Supreme Court precedent does not require a case directly on point, existing precedent must place the statutory or constitutional question beyond debate. *White v. Pauly*, 580 U.S. 73, 79 (2017). That is, the clearly established law upon which the plaintiff relies should not be defined at a high level of generality but must be particularized to the facts of the case. *Id*. at 79. As a result, failure to identify a case where an officer acting under similar circumstances was held to have

violated a plaintiff's rights will most likely defeat the plaintiff's ability to overcome a qualified immunity defense. *Id*. at 79; *Surratt v. McClarin*, 851 F.3d 389, 392 (5th Cir. 2017).

When plaintiffs make only collective allegations against a group of police officers, without justification for the lack of individualization, they fail to overcome assertions of qualified immunity at the 12(b)(6) stage. *Cass v. City of Abilene*, 814 F.3d 721, 730-31 (5th Cir. 2016); *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007); *Alexander,* 2023 WL 3961704, at *8-9.

## IV.   <u>ANALYSIS</u>

The four Defendant deputies and County Judge Tim O'Hare have each been sued in their individual and official capacities.[3] ECF No. 17*, ¶¶* 6-10, 12. Driskell also has been sued in his supervisory capacity. ECF No. 17, ¶ 7. Additionally, Plaintiff has sued Tarrant County pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). *See* ECF No. 17, ¶¶ 11, 176-90 (Count IV – deliberate indifference against Tarrant County only), 199-211 (Count VI – alleging *Monell* liability against Tarrant County and Judge O'Hare only for First and Second Amendment violations).

### A.   **Plaintiff Fails to Allege a Plausible Fourth Amendment Claim**

Plaintiff alleges the Defendants unlawfully seized him on January 14, 2025, after he attempted to return to the Commissioners Court meeting following a restroom break. ECF No. 17, ¶¶ 23-25, 128, 131-33. However, reasonable suspicion existed to detain Plaintiff due to his actions in response to Driskell's permissible inquiry about his possession of a handgun and Plaintiff's virulent response thereto. ECF No. 17, ¶¶ 25, 27-31, 45.

---

[3] Official capacity claims against individual government employees are redundant claims against the employing government agency. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Therefore, this Court should dismiss the *official* capacity claims against the individual Defendants without any further analysis. *Kentucky*, 473 U.S. at 167 n.14; Fed. R. Civ. P. 12(b)(6).

It is well settled that the police may stop and briefly detain a person for investigative purposes if the officer has reasonable suspicion supported by articulable facts that a crime "may be afoot." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). The court must look to the totality of circumstances to determine whether the detaining officer has a "particularized and objective basis" to suspect legal wrongdoing, while considering only the information available to the officers at the time of detention. *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)) (citations omitted).

An investigative detention must be temporary and last no longer than necessary to effectuate the stop's purpose. *Turner v. Driver,* 848 F.3d 678, 693 (5th Cir. 2017) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). "The police may take reasonable actions under the circumstances to ensure their own safety, as well as the safety of the public, during an encounter with a suspect." *United States v. Abdo*, 733 F.3d 562, 565 (5th Cir. 2013) (quoting *Terry*, 392 U.S. at 30) (police may take "swift measures to discover the true facts and neutralize the threat of harm."); *see also United States v. Hensley,* 469 U.S. 221, 235 (1985) (officers are "authorized to take such steps as were reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop.").

An investigatory detention does not automatically become an arrest requiring probable cause when law enforcement uses force or places a suspect in handcuffs. *Turner*, 848 F.3d at 693. A seizure becomes an arrest only if "a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *United States v. Corral-Franco*, 848 F.2d 536, 540 (5th Cir. 1988). Whether an investigative stop amounts to an arrest is determined on a case-by-case basis,

8

and it is "always one of reasonableness under the circumstances." *United States v. Sanders*, 994

F.2d 200, 206 (5th Cir. 1993).

### 1.      Plaintiff failed to state a claim for unlawful arrest on January 14, 2025.

The Defendant deputies had valid reasons to detain Plaintiff, first as he attempted to return

to Commissioners Court with a handgun, and then as he engaged in conduct that arguably

constituted disturbing the peace. *Sanders*, 994 F.2d at 206.

### a.      *Texas law required Plaintiff to present his LTC.*

Plaintiff alleged the Defendants had no legal authority to detain him regarding his

possession of a handgun in a public meeting. ECF No. 17, ¶¶ 46, 50-51, 87, 90. However, Driskell

knew Plaintiff from a previous encounter in a Tarrant County courthouse. ECF No. 17, ¶ 25. After

the previous encounter mentioned by Plaintiff in ECF No. 17, ¶ 25, but before January 14, 2025,

Driskell consulted with TCOLE[4] and was informed that Plaintiff did not meet the criteria of a

"qualified law enforcement officer." *Id.* at ¶¶ 30-32. Driskell informed Plaintiff of this on January

14, 2025, and he also advised Plaintiff that he would not be allowed to open carry a handgun into

Commissioners Court. *Id.* at ¶¶ 30-32. Plaintiff failed to plausibly allege that Driskell's reliance

on TCOLE was unreasonable or mistaken. *See Mendenhall v. Riser,* 213 F.3d 226, 230 (5th Cir.

2000); *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 325 (5th Cir. 1998).

Plaintiff's own allegations confirm that he was lawfully detained on January 14, 2025,

under Texas law. ECF No. 17*, ¶¶* 25, 27-28 (Plaintiff had just boasted to Driskell that he was

"always packing."—*see especially* ¶ 27). Texas Gov't Code § 411.205 imposes an affirmative

obligation on individuals carrying a handgun under an LTC to display both their license and

identification upon request by law enforcement, regardless of whether there is reasonable suspicion

---

[4] Texas Commission on Law Enforcement ("TCOLE") -- https://www.tcole.texas.gov/ -- State agency that licenses peace officers. S*ee also* Tex. Occ. Code § 1701.051.

or probable cause. *See* Tex. Gov't Code § 411.205(1). Here, Plaintiff was armed and initially refused to comply with that statutory duty on January 14, 2025, before agreeing to simply leave the building. ECF No. 17, ¶¶ 27-28, 65-67.

Although Plaintiff claimed he *informed* Driskell that he had an LTC, he did not specifically allege that he *physically* presented his license to Driskell at that time, as required by Tex. Gov't Code § 411.205(1). *See* ECF No. 17, ¶¶ 32-33, 35, 56 ("Defendants took [Plaintiff's] wallet and were able to view his LTC and retired law enforcement credentials since they were kept together in his wallet."). Plaintiff also alleged that "he voluntarily provided his identification," but he does not identify the Defendant deputies to whom he specifically presented either his LTC or his law enforcement officer credentials, or whether he did so during the January 14, 2025, encounter. ECF No. 17, ¶ 48; *see Jimerson v. Lewis*, 94 F.4th 423, 428 (5th Cir. 2024) (plaintiff seeking to overcome qualified immunity must specifically identify each defendant's personal involvement in the alleged wrongdoing). Additionally, Plaintiff alleged that "Defendant Driskell refused to look at Plaintiff's credentials," which controverts any suggestion that the Defendants actually read his LTC or law enforcement credentials. ECF No. 17, ¶ 33.

However, Section 411.205 imposes no requirement that a peace officer must have reasonable suspicion of any offense before asking an LTC holder to show his license. *See* Tex. Gov't Code § 411.205(1). Furthermore, Section 411.207 provides that "[a] peace officer who is acting in the lawful discharge of the officer's official duties may disarm a license holder at any time the officer reasonably believes it is necessary for the protection of the license holder, officer, or another individual." *See* Tex. Gov't Code § 411.207(a). "The peace officer shall return the handgun to the license holder before discharging the license holder from the scene if the officer determines that the license holder is not a threat . . . ." *Id.,* at § 411.207(a).

10

Here, Plaintiff never alleged that any of the Defendant deputies knew for certain that he was currently exempt, nor can he speculate about what they knew, especially when he actually alleged that Driskell said the Plaintiff was not recognized as a peace officer by TCOLE. ECF No. 17, ¶¶ 29-31 (Driskell told Plaintiff he could have falsified a "badge," so Driskell impliedly chose to trust TCOLE's statement that Plaintiff was not currently a law enforcement officer).

Plaintiff alleged that Defendants "never demanded or even requested that Mr. Grisham display identification," but this assertion defies logic. ECF No. 17, ¶ 48. The entire confrontation on January 14, 2025, began because Plaintiff admitted to carrying a handgun, and Driskell did not believe he met any exceptions that allowed him to carry a handgun into a public meeting. ECF No. 17, ¶¶ 30-31, 33. This is not a well-pleaded fact that must be viewed in the light most favorable to the plaintiff. *See Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).

Plaintiff told Driskell that he "most certainly was going in the meeting [with his handgun] because he's exempt from [Tex. Penal Code] §46.03 as both a retired law enforcement officer and an LTC holder." ECF No. 17, ¶ 29. Plaintiff alleged "he was showing Defendant Driskell his LEOSA credentials," but *not* his LTC. ECF No. 17, ¶ 32. Plaintiff further alleged that he "explained that Defendant Driskell couldn't prohibit him from entering [a public meeting with a gun] because Plaintiff was an LTC holder." ECF No. 17, ¶ 35. Plaintiff made no similar allegations regarding any other Defendant deputy.

There are no *non-conclusory* allegations that any of the Defendants actually read his LTC credentials until the January 28, 2025, meeting, when Plaintiff was allowed to enter the Commissioners Court meeting after he showed his LTC license. ECF No. 17, ¶¶ 84-85, 97. Rather, he was released on January 14, 2025, only after he agreed with the sheriff to take his handgun to

11

his car, and he left the building of his own accord. ECF No. 17, ¶¶ 65-67. Plaintiff never unequivocally produced his LTC upon request until the January 28 meeting. ECF No. 17, ¶ 97.

Based on the totality of the circumstances surrounding their encounter with Plaintiff outside of the Commissioners Courtroom on January 14, 2025, the Defendant deputies were justified in detaining Plaintiff and disarming him, temporarily, to determine if he was violating Chapter 411 or any criminal laws. *See Navarette v. California*, 572 U.S. 393, 397 (2014) (courts must consider the totality of circumstances to determine whether an officer could infer that a particular suspect acted or was about to act unlawfully); *United States v. Arvizu*, 534 U.S. 266, 273 (2002). When Plaintiff decided to leave the premises after appealing to Sheriff Waybourn, the interaction between Plaintiff and the Defendant deputies concluded, and he departed without further incident, with his handgun. ECF No. 17, ¶¶ 64-66. This scenario does not plausibly allege a false arrest under the Fourth Amendment or a Second Amendment violation. *See Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 12(b)(6).

Therefore, Plaintiff's open carrying of a handgun constituted a lawful basis for an investigatory stop, and his reluctance to produce his LTC during the January 14, 2025, encounter was sufficient, at a minimum, to support Plaintiff's temporary detention the Defendants' investigation. ECF No. 17, ¶¶ 25, 27-31, 54 (Plaintiff alleged that Driskell ordered him to be handcuffed for UCW), 60 (Gabbert stated that the law had changed, which prohibited Plaintiff from carrying a weapon into the meeting), 64-65 (detention lasted no longer than reasonably necessary). *See Mendenhall*, 213 F.3d at 230.

### b.    *Plaintiff's actions reasonably constituted disorderly conduct.*

Plaintiff's vulgar comments in the hall outside of Commissioners Court also justified the Defendants' continued detention of Plaintiff and prolonged their investigation of his possible criminal conduct. ECF No. 17, ¶¶ 36-37, 52, 54-62, 64-66. Plaintiff's profane outbursts on January

12

14, 2025 — "Read the fucking law, chief" and "don't fucking touch me"—occurred in a public setting where tensions were escalated by Plaintiff's own words and actions while surrounded by an agitated crowd, in which at least one other person among the crowd was arrested for disorderly conduct. ECF No. 17, ¶¶ 36-37, 52 (*see* photo at p. 13).

Texas law authorizes its peace officers to make a warrantless arrest for any offense that is committed against the public peace in the peace officer's presence. *See* Tex. Crim. Proc. Code § 14.01(a). A person commits disorderly conduct if he intentionally or knowingly:

> '(1) uses abusive, indecent, **profane**, or **vulgar** language in a public place, and the language by its very utterance tends to incite an immediate breach of the peace; . . . or '(8) **displays a firearm** or other deadly weapon in a public place in a manner calculated to alarm[.]'

Tex. Penal Code § 42.01(a) (emphasis added). While investigating Plaintiff's possession of a handgun in a public meeting, Driskell attempted to de-escalate tensions by informing Plaintiff that he could be arrested for disorderly conduct for yelling profanities in a public place. ECF No. 17, ¶¶ 36-37. Moreover, Plaintiff's failure to provide his LTC credentials to the Defendants when requested may have violated subsection (8) of the disorderly conduct statute after Driskell informed Plaintiff that his retired federal credentials were not recognized by TCOLE, the State's licensing authority for peace officers. ECF No. 17, ¶¶ 30-31.

In *Shemwell v. Cannon*, 352 F. Supp. 3d 690, 701 (N.D. Tex. 2019), the district court granted the defendant's 12(b)(6) motion for failure to state a Fourth Amendment false arrest claim. The plaintiff, Shemwell, while participating in a protest rally, openly carried an AK-15 semi-automatic assault rifle at the rally's outdoor concert, approached the stage, and spoke to the performers. *Id.* at 695. After refusing police requests to reposition or sling his weapon, an officer confiscated his rifle and handcuffed him. *Id.* at 695. The plaintiff was arrested and charged with disorderly conduct and resisting arrest. *Id.* at 695. The first trial ended in a mistrial, and he was

acquitted in the second trial. *Id.* at 695. Shemwell alleged that he did not commit a crime because a jury acquitted him. *Id.* at 701.

The court emphasized that an acquittal is not the proper standard to determine if a Fourth Amendment false arrest occurred. *Id.* at 701. The standard is whether a reasonable officer, based on the totality of the circumstances, could have believed there was a probability that the plaintiff had committed or was committing a crime. *Id.* at 701. Reasonable suspicion is enough. *Id.* at 701. The existence of probable cause for any offense, including one not charged, is sufficient to defeat a § 1983 false arrest claim. *Id.* at 701 (citing *Devenpeck v. Alford*, 543 U.S. 146, 153-54 (2004)).

In dismissing the false arrest claim, the district court held that the "plaintiff does not allege facts sufficient to negate the existence of probable cause" and that "he has not shown that no reasonable officer would have believed, based on the totality of the facts and circumstances, that plaintiff had committed or was committing a crime." *Shemwell*, 352 F. Supp. 3d at 701

It is irrelevant that Plaintiff was not charged with a crime. *Id*. at 701. Under the totality of circumstances, Plaintiff's actions committed in a public place that disturbs the peace constituted probable cause to arrest him for disorderly conduct. *Sanders*, 994 F.2d at 206. Because a state statute authorized a warrantless arrest of Plaintiff, the Defendant deputies' actions were not clearly unconstitutional, and dismissal is appropriate under Rule 12(b)(6). *Calhoun v. Villa*, 761 F. App'x 297, 300 (5th Cir. 2019).

Plaintiff's profanity-laced outbursts in a public place while surrounded by an agitated crowd, Driskell's prior communications with TCOLE concerning Plaintiff's federal credentials, and Plaintiff's failure to present his LTC on January 14, 2025, collectively gave rise to reasonable suspicion and probable cause for a brief investigatory detention. ECF No. 17, ¶¶ 25, 27-33, 35-36, 65-67 (including photo on p. 13); *see Sanders*, 994 F.2d at 206; *Mendenhall*, 213 F.3d at 230. The

14

Defendants possessed specific, articulable facts giving rise to reasonable suspicion and probable cause that Plaintiff was attempting to unlawfully carry a handgun into the Commissioners Court, which led to an additional investigation into Plaintiff's possible disturbing the peace.[5] ECF No. 17, ¶¶ 25, 27-33, 35-37, 54-55. *See also Turner*, 848 F.3d at 693-94. Plaintiff's detention was no longer than reasonably necessary, and the Defendants' actions were objectively reasonable and did not violate clearly established law. *Id.* at 693-94; *see also Mendenhall,* 213 F.3d at 230*.*

Plaintiff has failed to identify any authorities to establish that the Defendants' actions would violate Plaintiff's constitutional rights. *Cass*, 814 F.3d at 730-31; *Meadours*, 483 F.3d at 421-22. Therefore, even if the Defendants were mistaken, they were reasonable in believing their actions were justified. *Mendenhall*, 213 F.3d at 230; *Hare,* 135 F.3d at 325. Accordingly, Plaintiff failed to defeat qualified immunity for the detention on January 14, 2025, and this claim should be dismissed. *Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 12(b)(6).

## 2. Plaintiff failed to allege a Fourth Amendment claim for the encounter on January 28, 2025.

Plaintiff also alleged a Fourth Amendment violation from his interaction with the Defendant deputies before entering a meeting of the Commissioners' Court on January 28, 2025. ECF No. 17, ¶¶ 72-125. According to Plaintiff, Driskell, George, Gabbert, and Jauss "threatened to arrest [Mr. Grisham] on January 28, 2025, if he did not leave the building after Defendant O'Hare . . . ordered him removed from the building."[6] *Id.* at ¶¶ 109, 117 129, 157. Plaintiff's conclusory allegations about the Defendant deputies' actions on January 28, 2025, constitute an

---

[5] Plaintiff failed to allege any facts that Defendant Jauss was present or a participant during the encounter of January 14, 2025. ECF No. 17, ¶¶ 19-71. *See Jimerson*, 94 F.4th at 428 (plaintiff must specify each defendant's role in alleged misconduct).

[6] Plaintiff failed to allege any facts that Defendant Gabbert was present or a participant during the encounter of January 28, 2025. ECF No. 17, ¶¶ 72-125. *See Jimerson*, 94 F.4th at 428 (plaintiff must specify each defendant's role in alleged misconduct).

impermissible "shotgun pleading" that must be disregarded. *Alexander*, 2023 WL 3961704, at *8-9; *Jimerson*, 94 F.4th at 428.

Additionally, Plaintiff lacks standing to assert any Fourth Amendment claims against the Defendant deputies arising out of January 28, 2025, because he did not suffer any injury; the *threat* of arrest is not sufficient to support a claim for false arrest. *See Ristow v. Hansen*, 719 F. App'x 359, 363 n.17 (5th Cir. 2018). This Court may determine that subject matter jurisdiction is lacking based on the complaint alone. *King v. U.S. Dep't of Veterans Affs.*, 728 F.3d 410, 413 (5th Cir. 2013). To establish standing, an injury must be "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Texas v. Yellen*, 105 F.4th 755, 763 (5th Cir. 2024) (citations omitted); *see also* Fed. R. Civ. P. 12(b)(1).

Accordingly, no Fourth Amendment claim arising from the January 28 interaction with the Defendant deputies has been properly pleaded, and the Court should dismiss this claim. *Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 12(b)(1).

### 3. Plaintiff failed to allege an excessive force claim pursuant to the Fourth Amendment.

Although Plaintiff's First Amended Complaint contains remnants of his earlier allegations of excessive force, it is clear from the caption to Count I that Plaintiff has waived any claim of excessive force against the individual Defendant deputies; he only asserts a Fourth Amendment claim for "False Imprisonment/Unlawful Arrest." ECF No. 17, ¶¶ 126-47. Furthermore, in response to a previous motion to dismiss, Plaintiff stated that he "hereby abandons his excessive force [claim] as to all Defendants."). ECF No. 11, p. 27, ¶ 4. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[Plaintiff] further failed to defend her retaliatory abandonment claim in both responses to the defendant's motion to dismiss."); *Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017).

16

As a result, the Plaintiff has failed to adequately plead a Fourth Amendment claim against the Defendants for the January 28 incident. ECF No. 17, ¶¶ 126-47.

**B.      Plaintiff Failed to Plausibly Allege a First Amendment Claim Against the Defendant Deputies.**

The gravamen of Plaintiff's First Amendment claim against the Defendant deputies appears to arise from his removal from Commissioners Court following his vulgar statement during public comment. Plaintiff wanted to speak at the January 28, 2025, meeting about his opinions on the "new rules of decorum," which were a matter of public interest. ECF No. 17, ¶ 106-09, 152. During the course of his public comment, Plaintiff made the following statement:

> "I came here last time [January 14, 2025] because my good friend, Mason Yancy, was murdered in the jail… But . . . the thugs that you have outside the door there assaulted me, . . . Thankfully, Sheriff Waybourne [sic] thought the better of valor and listened to me when I told him to read the *fucking* law."

ECF No. 17, ¶ 108 (emphasis added). As soon as Plaintiff uttered the vulgar profanity, Judge O'Hare interrupted Plaintiff and requested that deputies "remove him immediately for that comment." *Id.* at ¶ 109. The Sheriff's deputies then escorted Plaintiff from the courtroom. *Id.* at ¶¶ 109, 117. Plaintiff did not allege he was handcuffed on January 28, 2025, and he had been allowed to carry his handgun into the meeting after he showed his LTC. ECF No. 17, ¶¶ 84-85, 97.

As a result, Plaintiff failed to allege specifically how the Defendant deputies violated his First Amendment rights on January 28, 2025. ECF No. 17, ¶¶ 149-65. *See Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015) ("shotgun pleading" is impermissible).

**1.     Plaintiff did not sufficiently allege a constitutional challenge to the rules of decorum.**

A party seeking to challenge the constitutionality of a statute generally must show that the statute violates the party's own rights. *New York v. Ferber*, 458 U.S. 747, 767 (1982). Plaintiff alleged that "Defendant O'Hare knew or should have known that his 'rules of decorum' were *facially unconstitutional*." ECF No. 17, ¶ 101 (emphasis added). *See also* ECF No. 17, ¶¶ 102, 104, 119, 152, 161-65 (alluding to constitutional violation of free speech). Facial challenges to a statute or, in this case, a purported policy, are "disfavored" by the courts. *Moody. v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). Even in a facial challenge under the First Amendment, challengers face a heavy burden. *Id*. at 723. A proper First Amendment facial challenge proceeds in two steps. The first step is to determine every hypothetical application of the challenged law. *Id*. at 724-25. The second step is "to decide which of the laws' applications violate the First Amendment, and to measure them against the rest." *Id*. at 725. If the law's unconstitutional applications substantially outweigh its constitutional ones, then, and only then, is the law facially unconstitutional. *Id*. at 725-26.

Plaintiff made no attempt to undertake this two-step analysis or to explain how the rules of decorum are facially unconstitutional, nor did he allege how the Defendant deputies can even be liable for this claim. *See generally* ECF No. 17, ¶¶ 149-65. To the contrary, Tarrant County's rules of decorum are consistent with permissible restrictions on speech in a limited public forum. Tarrant County may impose reasonable, viewpoint-neutral restrictions on speech in a limited public forum to preserve the civility and decorum necessary to further the purpose of the meeting. *Good News Club v. Milford Cent. Sch*., 533 U.S. 98, 106 (2001); *Ark. Educ. Tv Comm'n v. Forbes*, 523 U.S. 666, 677-78 (1998); *City of Madison, Joint Sch. Dist. No. 8 v. Wisc. Emp't Relations Coram'n*, 429 U.S. 167, 176 n.8 (1976). *See also Chiu v. Plano Independ. Sch. Dist.*, 260 F.3d 330, 347 (5th Cir. 2001); *Heaney v. Roberts,* 846 F.3d 795, 801-02 (5th Cir. 2017); *Wenthold v. City of Farmers Branch, Texas*, No. 3:11–

CV–0748–B, 2012 WL 467325 (N.D. Tex. Feb.14, 2012), *aff'd*, *Wenthold v. City of Farmers Branch, Texas*, 532 F. App'x 474 (5th Cir. 2013).

The U.S. Supreme Court rejected a blanket protection for profanity in *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942): "There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the *profane*, the libelous, and the insulting or "fighting" words – those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Id*. at 571-72 (emphasis added).

More recently, in *Johnson v. City of Yoakum, Texas*, No. 6:19-CV-00011, 2025 WL 2411605, at *12-13 (S.D. Tex. Aug. 19, 2025), the district court held that prohibiting "impertinent, *profane*, or slanderous remarks" during public comments in a limited public forum is a reasonable, viewpoint-neutral restriction that does not violate the First Amendment. *Id.,* at *12-13 (emphasis added).

Despite asserting that the rules of decorum are *facially* unconstitutional, Plaintiff did not provide the actual language from the precise rules of decorum that he now challenges as unconstitutional on their face. *See* ECF No. 17 at ¶ 101. Logically, this omission of the rules of decorum is fatal to his facially unconstitutional First Amendment claim. *Moody*, 603 U.S. at 725-26. *See Iqbal*, 556 U.S. at 678.

**2.      Plaintiff failed to adequately plead a First Amendment claim against the Deputies.**

The Defendants Driskell, George, and Jauss merely escorted Plaintiff from the premises after Judge O'Hare ejected him for violating decorum on January 28, 2025. ECF No. 17, ¶¶ 109, 117. *See Heaney*, 846 F.3d at 805 (officers properly removed person from city council meeting at mayor's request). *See Story v. Azaiez,* No. 1:22-CV-448-DAE, 2023 WL 11969350 at *5 (W.D. Tex. July 26, 2023); *see also Good News Club*, 533 U.S. at 106. Judge O'Hare acted only after Plaintiff uttered profanity, at which point O'Hare exercised his discretion to preserve order and civility

by directing Plaintiff's removal. ECF No. 17, ¶¶ 98, 106-10. *See Stein v. Dallas County*, No. 3:22-CV-1255-D, 2023 WL 2700720 at *5 (N.D. Tex. March 29, 2023); *Gjemre* v. *Leffingwell*, No. A-13-CA-729-SS, 2015 WL 433506, at *6 (W.D. Tex. Feb. 2, 2015); *Johnson*, 2025 WL 2411605, at *12–*13.

Plaintiff also invokes Section 551.007(e) of the Texas Open Meetings Act ("TOMA"), presumably as some sort of alleged violation of his First Amendment right to criticize government officials. ECF No. 17, ¶ 100 n.4, 103. This reference is simply a red herring because TOMA only provides injunctive or mandamus relief for an alleged violation. Tex. Gov't Code § 551.142(a). Because Plaintiff does not specifically seek any injunctive relief in his First Amended Complaint, his reference to Section 551.007(e) is superfluous and fails to state a claim upon which relief can be granted. *See* ECF No. 17, p. 41 (Prayer). *See Iqbal*, 556 U.S. at 678.

It is not clearly established that removing a speaker from a public meeting for uttering profanity will constitute a violation of the speaker's First Amendment rights, and this claim should be dismissed because the individual Defendants are entitled to qualified immunity. *Hershey v. City of Bossier City*, No. 21-30754, 2025 WL 2836908, *4 (5th Cir. Oct. 8, 2025) (per curiam) (Ho, J., concurring); *Cass*, 814 F.3d at 730-31; *Meadours*, 483 F.3d at 421-22. *See Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 12(b)(6).

### 3. Plaintiff's First Amendment right to record was not sufficiently alleged.

Plaintiff made passing references to an alleged right to record *public officials*.[7] ECF No. 17, ¶¶ 58, 158, 160. However, Plaintiff did not adequately plead this claim as a separate First Amendment cause of action. ECF No. 17, ¶¶ 58, 158, 160. *See Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 12(b)(6).

---

[7] In *Turner v. Driver*, the Fifth Circuit recognized that citizens have a First Amendment right to record *police* but not necessarily *public officials*. 848 F.3d at 689-90.

Plaintiff did not allege: (1) that any of the individual Defendants purposefully deactivated his cell phone on January 14, 2025, to prevent him from recording his encounter with the deputies; (2) that Plaintiff was actually recording police officers instead of merely livestreaming his own appearance at Commissioners Court; (3) that the back hallway was a public place rather than a restricted area; or (4) that he was detained to prohibit his recording of the police in their duties as peace officers. ECF No. 17, ¶¶ 58, 158, 160 (only references to a recording). As a result, Plaintiff failed to allege facts with the specificity necessary to defeat Defendants' qualified immunity, and the Court should dismiss this claim against the Defendant deputies. *Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 12(b)(6); *Jimerson*, 94 F.4th at 428.

Additionally, Plaintiff did not plausibly allege that his removal from Commissioners Court for uttering a vulgar term on January 28, 2025, violated his First Amendment right to record. ECF No. 17, ¶¶ 58, 158, 160. Therefore, he did not allege that Judge O'Hare violated his right to record, nor did he allege that any of the four individual defendant Deputies - Driskell, Gabbert, George, or Jauss - violated his right to record. *Id*. at 58 (Plaintiff alleged that an "unknown deputy" turned off his phone on January 14, 2025). *See Jimerson*, 94 F.4th at 428 (plaintiff seeking to overcome qualified immunity must specifically identify each defendant's personal involvement in the alleged wrongdoing).

## C.    Plaintiff Failed to Adequately Plead a Second Amendment Violation.

Plaintiff also alleges a Second Amendment right to openly carry in a public meeting without a legal obligation to present his LTC, unless there is reasonable suspicion or probable cause of a crime. ECF No. 17, ¶¶ 167-75.

Plaintiff had to present his LTC credentials upon law enforcement's request, but the statute does not have a reasonable suspicion or probable cause requirement. *See* Tex. Gov't Code § 411.205(1). On both dates, Plaintiff initially failed to produce his LTC to the Defendants. ECF

21

No., 17, ¶¶ 27-31, 33-35, 78, 84-85, 97. However, Plaintiff failed to assert any Second Amendment injury at the meeting on January 28, 2025, because Plaintiff eventually produced his LTC at that meeting, as requested by the Defendants. ECF No. 17, ¶¶ 78, 84-85, 97. Then, he was allowed into the meeting with his handgun. *Id.* at ¶ 97; *see also Iqbal*, 556 U.S. at 678.

Under the totality of circumstances, the Defendants' actions on both dates were objectively reasonable and did not violate clearly established law. *See Defendant Deputies' Motion to Dismiss, supra, at* pp. 7-15. *Hensley*, 469 U.S. at 235 (officers may take steps necessary to protect their safety and to maintain the status quo during a stop). Furthermore, in response to a previous motion to dismiss, Plaintiff stated that he "hereby abandons his excessive force [claim] as to all Defendants."). ECF No. 11, p. 27, ¶ 4. Moreover, Plaintiff does not plausibly allege that his right to carry a handgun into a government building without producing his LTC was so clearly established that Defendants are not entitled to qualified immunity. ECF No. 17, ¶¶ 166-75; *see also Harlow*, 457 U.S. at 818.

Plaintiff claims to be a Texas gun laws expert, but his past insistence that Tarrant County must post 30.06 and 30.07 signs reveals the complexity surrounding Texas' right-to-carry laws over the past several years. ECF No. 17, ¶¶ 17-18, 20, 60 n.2, 62. Plaintiff acknowledges that 30.06/30.07 signs in government buildings simply are not effective as to LTC holders. ECF No. 17, ¶¶ 60 n.2, 62. *See* Tex. Gov't Code § 411.209(a); Tex. Penal Code §§ 30.06(e) & 30.07(e).

As recently as October 29, 2025, the Texas Attorney General found it necessary to clarify for a Texas county attorney's office that the individuals listed in Tex. Penal Code § 46.15 - which would include law enforcement officers and LTC holders - need not seek leave from a prohibition that does not apply in the first instance. *See* Tex. Att'y Gen. Op., KP-0501 (2025) at 5 n.3 (noting

22

that the Attorney General's Office withdrew a previous opinion that, although correct, had led to confusion regarding the premises where LTC holders could carry handguns).

In other words, the question of whether persons who are excepted under Tex. Penal Code § 46.15, like Plaintiff, may be prohibited from carrying handguns into public buildings continues to befuddle even prosecutors and sophisticated organizations like the State Fair of Texas.[8] Therefore, Plaintiff failed to state a claim under the Second Amendment that will defeat qualified immunity. *Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 12(b)(6).

### D.    Plaintiff Did Not Adequately Plead Failure to Supervise Against Driskell.

Plaintiff failed to plausibly allege a claim for supervisory liability against Defendant Driskell. ECF No. 17, ¶¶ 59, 63, 176-90 (failure to supervise claim only against Tarrant County). A supervisory official may be held liable under section 1983 for the wrongful acts of a subordinate when the official breaches a duty imposed by state or local law and this breach causes plaintiff's constitutional injury. *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). This inquiry contains three elements: (1) that the supervisor failed to train or supervise the subordinate; (2) a causal link between the failure to train or supervise and the constitutional violation; and (3) that the failure to train or supervise amounts to deliberate indifference. *Tuttle v. Sepolio*, 68 F.4th 969, 975 (5th Cir. 2023); *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005). However, Plaintiff asserted no specific facts alleging that Driskell failed to supervise any subordinate deputy, nor did he allege that Driskell was deliberately indifferent to Plaintiff's rights. ECF No. 17, ¶¶ 176-90. Any claim

---

[8] Tex. Att'y Gen. Op. KP-0049 (2015) at 2 ("Opinion KP-0047 concluded that **although the full scope of subsection 46.03(a)(3) is unclear**, it is at least clear that the Legislature intended to prohibit concealed handguns from government courtrooms and the offices essential to the operation of the courts.") (emphasis added); *see also* Tex. Att'y Gen. Op., KP-0501, at 5 n.3 (Attorney General noted the continuing misinterpretation of right-to-carry gun laws in Texas).

against Driskell in his supervisory capacity should be dismissed. *Iqbal*, 556 U.S. at 678; *Roberts*, 397 F.3d at 292; Fed. R. Civ. P. 12(b)(6).

**E.      Section 1985(3) Conspiracy Claims are Barred by the Intracorporate Conspiracy Doctrine.**

To state a civil conspiracy claim under § 1983, Plaintiff must allege both an agreement among the Defendants to commit an illegal act and an actual deprivation of constitutional rights. *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994); *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990). A conspiracy requires two or more persons or entities. *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1953). Under the intracorporate conspiracy doctrine, a "corporation cannot conspire with itself any more than a private individual can," and "the acts of the agents are the acts of the corporation." *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994) (citing *Nelson Radio*, 200 F.2d at 914). "[B]ecause the acts of corporate agents are attributable to the corporation itself, a corporation lacks the multiplicity of actors required to form a conspiracy." *Young v. City of Irving*, No. 3:23-CV-1423-D, 2025 WL 888430, at *10 (N.D. Tex. Mar. 21, 2025) (quoting *Walters v. McMahen*, 795 F. Supp. 2d 350, 358 (D. Md. 2011).

The Fifth Circuit and its district courts permit the doctrine's application to public entities and to civil rights conspiracies under §1983. *Collins v. Bauer*, No. 3:11-CV-00887-B, 2012 WL 443010, at *7 (N.D. Tex. Jan. 23, 2012), *rec. adopted*, 2012 WL 444014 (N.D. Tex. Feb. 10, 2012); *see also Swilley v. City of Houston*, 457 F. App'x 400, 404 (5th Cir. 2012) (per curiam); *Thompson v. City of Galveston*, 979 F. Supp. 504, 512 (S.D. Tex. 1997).

The doctrine would not apply if the corporate employees acted "for their own personal purposes" or "personal motives." *Benningfield v. City of Houston*, 157 F.3d 369, 379 (5th Cir. 1998), *cert. denied sub nom.*, *Benningfield v. Nuchia*, 526 U.S. 1065 (1999). However, each

24

individual Defendant was acting under color of law, as alleged by Plaintiff. ECF No. 17, ¶¶ 12, 192. All the individual Defendants' actions are attributable to the county, and Tarrant County cannot conspire with itself. *See Young*, 2025 WL 888430, at *10. Therefore, Plaintiff's conspiracy claim under 42 U.S.C. § 1985(3) is barred by the intracorporate conspiracy doctrine and should be dismissed. *Hilliard*, 30 F.3d at 653; *Iqbal*, 556 U.S. at 678; Fed R. Civ. P. 12(b)(6).

**F.    Plaintiff Failed to Adequately Allege That Punitive Damages Are Warranted.**

Under Section 1983, punitive damages may be awarded only if the official conduct is "motivated by evil intent" or demonstrates "reckless or callous indifference" to a person's constitutional rights. *Smith v. Wade*, 461 U.S. 30, 37 (1983). However, Plaintiff did not allege with sufficient specificity that the individual Defendants were motivated by evil intent or that they demonstrated reckless or callous indifference to Plaintiff's constitutional rights. ECF No. 17, ¶¶ 146, 159. *See Hinojosa*, 807 F.3d at 684; *Jimerson*, 94 F.4th at 428. Therefore, this claim for punitive damages should be dismissed. *Smith*, 461 U.S. at 37; Fed. R. Civ. P. 12(b)(6).

## V.    **PRAYER**

Plaintiff failed to allege with specificity any facts that will defeat the four Defendant deputies' assertion of qualified immunity. Their actions were reasonable in all respects, and Plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1).[9]

---

[9] Plaintiff is not entitled to recover on his other claims as a matter of law.  ECF No. 17, ¶ 1 (Ninth Amendment confers no substantive rights for a civil rights claim). *Johnson v. Tex. Bd. Of Crim. Justice*, 281 F. App'x 319, 320 (5th Cir. 2008); ECF No. 17, ¶¶ 1, 164 (Fourteenth Amendment claim not viable unless alleged misconduct is not susceptible to proper analysis under another right). *Petta v. Rivera*, 143 F.3d 895, 901 (5th Cir. 1998); ECF No. 17, p. 41(b) (*pro se* attorney plaintiff cannot recover attorney's fees even if he prevails). *Kay v. Ehrler*, 499 U.S. 432, 438 (1991); *De Mino v. Achenbaum*, 136 F. App'x 695, 696 (5th Cir. 2005); Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

*/s/ Katherine E. Owens*
**Katherine E. Owens**
State Bar No. 24081683
keowens@tarrantcountytx.gov
**Craig M. Price**
State Bar No. 16284170
cmprice@tarrantcountytx.gov
Assistant Criminal District Attorneys

**PHIL SORRELLS**
CRIMINAL DISTRICT ATTORNEY
TARRANT COUNTY, TEXAS
Tarrant County Criminal District Attorney's Office
Tim Curry Criminal Justice Center
401 W. Belknap, 9th Floor
Fort Worth, Texas 76196
817-884-1409 – Telephone
817-884-1675 – Facsimile
**ATTORNEYS FOR DEFENDANT**
**DEPUTIES**

## CERTIFICATE OF SERVICE

On November 6, 2025, I served a copy of the above document on all counsel of record via ECF.

/s/ *Katherine E. Owens*

26