# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| **CJ GRISHAM,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO.** |
| | § | **4:25-cv-716-Y** |
| | § | |
| **TIM O'HARE** | § | |
| ***In his personal and official*** | § | |
| ***Capacities,*** | § | |
| **CHIEF DEPUTY CRAIG** | § | |
| **DRISKELL,** | § | **Hon.** |
| ***In his supervisory, official, and*** | § | |
| ***personal capacities,*** | § | |
| **SERGEANT ORVILLE GEORGE** | § | |
| ***In his personal and official*** | § | |
| ***Capacities,*** | § | |
| **SERGEANT MICHAEL JAUSS** | § | |
| ***In his personal and official*** | § | |
| ***Capacities,*** | § | |
| **CHIEF DEPUTY GABBERT** | § | |
| ***In her personal and official*** | § | |
| ***Capacities,*** **and** | § | |
| **TARRANT COUNTY,** | § | |
| | § | |
| ***Defendants*** | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT TARRANT COUNTY'S MOTION TO DISMISS

PLAINTIFF'S RESPONSE TO DEFENDANT TARRANT COUNTY'S MOTION TO DISMISS – CJ GRISHAM

NOW COMES CJ Grisham and files this Response to Defendant Tarrant County's Motion to Dismiss under FRCP 12(b)(1) and (6) and would show the following:

## I.    DEFENDANT IS NOT ENTITLED TO DISMISSAL

### a.  *Quick and to the Point*

Plaintiff desires to save the Court valuable time by providing a quick and to the point response to Defendant Tarrant County's arguments that it is entitled to dismissal.  Texas law is very clear on Defendant Tarrant County's authority to regulate firearms of any kind.

Tex. Loc. Gov't Code § 236.002 plainly states that "a county may not adopt or enforce regulations that…relate to…the transfer, possession, wearing, carrying, ownership, storage, transportation, licensing, or registration of firearms, air guns, archery equipment, knives, ammunition, or firearm or air gun supplies or accessories" and that any such "ordinance, rule, resolution, or policy adopted or enforced by a county, or an official action, including in any legislative, police power, or proprietary capacity, taken by an employee or agent of a county in violation of this section is void."  See subsection (b).  Not voidable; void. Subsection (c) allows Tarrant County to "regulate the carrying of a firearm by a person licensed to carry a handgun under Subchapter H, Chapter 411, Government Code, in accordance with Section 411.209, Government Code," which states that

Tarrant County may not take any action, "including an action consisting of the provision of notice by a communication described by Section 30.06 or 30.07, Penal Code" unless the license holder is "prohibited from carrying a handgun on the premises or other place by Section 46.03, Penal Code, or other law."

Tex. Pen. Code § 46.03 prohibits carry "in the room or rooms where a meeting of a governmental entity is held, if the meeting is an open meeting subject to Chapter 551, Government Code, and if the entity provided notice as required by [Section 30.06 or 30.07]." However, Tex. Pen. Code § 46.15(b)(6) specifically states that 46.03(a)(14) "do[es] not apply to a person who…is carrying a [license to carry]." Additionally, § 46.15(a)(5) states that **none** of the prohibitions listed under § 46.03 apply to "an honorably retired peace officer or other qualified retired law enforcement officer, as defined by 18 U.S.C. Section 926C, who holds a certificate of proficiency issued under Section 1701.357, Occupations Code, and is carrying a photo identification that is issued by a federal, state, or local law enforcement agency, as applicable, and that verifies that the officer is an honorably retired peace officer or other qualified retired law enforcement officer." Therefore, Plaintiff had no duty to provide his LTC because he provided his retired law

enforcement photo identification and certificate of proficiency (and showed a replica of his retired badge).[1]

Defendant Driskell knew that Plaintiff was a retired law enforcement officer because Plaintiff and Defendant Driskell had a discussion in the Tarrant County Courthouse where he frequently carries his handgun into the building. Defendant Driskell was informed that Plaintiff was lawfully carrying his handgun in the courthouse during a trial in which he was lead counsel. Defendant Driskell and Plaintiff agreed to meet in the middle of what Defendant Driskell wanted and what Plaintiff was legally allowed to do by making a lockbox available for Plaintiff's handgun while he had business in the courthouse so that he did not have to store a firearm in his vehicle. If Plaintiff were not legally permitted to enter the courthouse with a firearm, Defendant Driskell or any other officer would have surely arrested and charged Mr. Grisham with felony possession of a firearm in a prohibited place any time he arrived for a court hearing and placed his handgun in the lockbox.[2] Plaintiff carries his firearm into every courthouse (except federal courthouses) where he does business, just as other exempt officials do.[3]

---

[1] Plaintiff's official retired badge is mounted on a plaque in his law office, but the badge is not used as identification and is only a replica that conveys no authority nor serves as a qualifying document under 18 U.S.C. § 926C.

[2] Tex. Pen. Code 46.03(a)(3) makes it a 3rd degree felony to intentionally possess a firearm "on the premises of any government court or offices utilized by the court, unless pursuant to written regulations or written authorization of the court."

[3] Texas law, Tex. Pen. Code 46.15(a), exempts the following individuals from the provisions of Tex. Pen. Code 46.03 to carry on the premises of a court: active and retired peace officers; active and retired judges, attorneys general,

4

PLAINTIFF'S RESPONSE TO DEFENDANT TARRANT COUNTY'S MOTION TO DISMISS – CJ GRISHAM

As shown in Plaintiff's complaint, Defendant Tarrant County had a policy that banned ALL firearms in County Commissioner Court Open Meetings, even as to people who are specifically exempted under law.  Defendant Tarrant County was on notice by the law itself that its policies violated state laws and, therefore, the privileges and immunities granted to exempt officials.  Defendant Tarrant County had no prima facia authority to harass and detain Plaintiff and their motion should fail on this premise alone.  However, if the Court is still interested in reading further, Plaintiff will add even more legal basis for denying Defendant's motion.

### b.  Factual and Procedural Background

Plaintiff reinstates and incorporates the facts contained in his complaint. However, contrary to Defendant Tarrant County's statement that Plaintiff is suing Defendant "denial of his First, Second, Fourth, Ninth, and Fourteenth Amendment rights," Grisham's amended complaint contains no mention of 9th or 14th amendment violations.

Tarrant County has a history of undermining First Amendment rights, as evidenced by groundbreaking case law like *Turner v. Driver.*  Unfortunately, the County and its government officials continue to ignore precedent, undermine

---

district attorneys, county attorneys, municipal attorneys and bailiffs (designated by an active judicial officer as defined by Section 411.201), and district or county clerks who have a Texas LTC; among others necessary in the discharge of their duties.

PLAINTIFF'S RESPONSE TO DEFENDANT TARRANT COUNTY'S MOTION TO DISMISS – CJ GRISHAM

fundamental First and Second Amendment protected rights, and selectively enforce laws enacted by the Legislature.  This case is one such example of many.

For the following reasons, Defendant's Motion for Dismiss under Rules 12(b)(1) and (6) should not be dismissed and the parties ordered to proceed to the Joint Discovery and Case Management Plan phase of this litigation.

### c.  Standard for Dismissal under FRCP 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ascroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678).  While a sufficient complaint does not require detailed factual allegations, the facts pled must raise the plaintiff's "right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotes omitted).  A court must draw all reasonable inferences in favor of the plaintiff. *Allen v. Vertafore, Inc.,* 28 F.4th 613, 617 (5th Cir. 2022). However, a plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the

6

elements of a cause of action" to suvive a motion to dismiss. *Twombly*, 550 U.S. at 555.

Defendant Tarrant County is not entitled to dismissal because his actions violated clearly established law and were not objectively or even subjectively reasonable. Mr. Grisham has properly pled that Tarrant County has a policy in place called "Rules of Decorum" that led to Defendant O'Hare unconstitutionally censoring his speech based on its content – to wit, the use of the word "fucking" as an adjective. Additionally, Tex. Pen. Code 46.15(a)(5) and 46.15(b)(6) clearly state that a governmental entity may not prohibit LTC holders from carrying into an open meeting. These laws were in place on the dates covered in Plaintiff's complaint. The Court should deny Defendant County's motion to dismiss for failure to state a claim and deny him qualified immunity for the following reasons.

## II.    BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### i.    *This Court has jurisdiction.*

Shockingly, Defendant Tarrant County attempts to convince this Court that "rules of decorum" or "decorum policy" that violates the First Amendment should be dismissed because the claim "is not ripe." Nothing could be further from the truth. The rules themselves ARE the violation of the First Amendment that establishes Defendant Tarrant County's liability under *Monell*. The two are inseparable.

PLAINTIFF'S RESPONSE TO DEFENDANT TARRANT COUNTY'S MOTION TO DISMISS – CJ GRISHAM

Defendant Tarrant County has moved to dismiss Plaintiff's First Amendment claim on the grounds that this Court lacks subject matter jurisdiction because the "rules of decorum" at issue had not been formally adopted at the time of the January 28, 2025, Commissioners Court meeting. This argument fundamentally misunderstands both the nature of Plaintiff's claim and the requirements for subject matter jurisdiction in First Amendment cases.

Plaintiff's First Amendment claim does not depend on the formal adoption of written rules of decorum, despite the fact that Plaintiff has properly alleged that there were written rules of decorum underpinning this complaint. Rather, it challenges Defendant Tarrant County's actual enforcement of content-based restrictions on speech during the January 28, 2025, Commissioners Court meeting, when Defendant O'Hare ordered Plaintiff removed for using profanity in his public comments. He was enforcing Tarrant County's rules of decorum at the time he violated Mr. Grisham's rights, not the new rules that were instituted which, not surprisingly, further violate the First Amendment. In fact, the new rules actually serve as prior restraint because Mr. Grisham has not been back to speak for fear of being arrested for protected speech even under the current rules.

This Court has jurisdiction over Plaintiff's claims because Plaintiff has alleged an actual, concrete injury that occurred when he was removed from the Commissioners Court meeting for engaging in constitutionally protected speech.

PLAINTIFF'S RESPONSE TO DEFENDANT TARRANT COUNTY'S MOTION TO DISMISS – CJ GRISHAM

The fact that formal written rules had not yet been adopted is irrelevant to the Court's jurisdiction over this actual injury. Plaintiff has properly alleged that even assuming there were no rules in place, Defendants were enforcing a policy, practice or procedure in place at the time of his threatened arrest and constitutional violations.

Defendant's motion to dismiss for lack of subject matter jurisdiction should be denied because Plaintiff has alleged an actual, concrete injury to his First Amendment rights that is ripe for adjudication.

When subject matter jurisdiction is challenged, a plaintiff has the burden to allege facts affirmatively demonstrating that the court has jurisdiction, and the court must construe allegations liberally in favor of jurisdiction unless the petition affirmatively demonstrates a lack of jurisdiction.

Plaintiff's complaint clearly alleges that Defendant O'Hare violated his First Amendment rights by removing him from a public meeting based solely on the content of his speech - specifically, his use of profanity. The violation was a direct result of the rules in place by Tarrant County that every member of the public sees in order to sign up to speak. As shown below, Tarrant County rules prohibit protected speech such as "personal attacks, impertinent, [or] profane remarks" and "[w]earing or displaying signs, flags, banners, props, placards, or similar items

PLAINTIFF'S RESPONSE TO DEFENDANT TARRANT COUNTY'S MOTION TO DISMISS – CJ GRISHAM

larger than 8 ½ by 11 inches."[4]  The *Cohen* case nipped these unconstitutional speech violations in the bud long ago.[5]

**Prohibited Behavior**

- Personal attacks, impertinent, profane, obscene, or slanderous remarks.
- Threatening, disruptive, or unruly behavior.
- Disruptive remarks or actions of approval or disapproval from the audience, such as feet stomping, snapping, whistling, yelling, clapping, verbal affirmation or rejection, or similar distractions, except that orderly clapping during the Proclamations, Resolutions, and Presentations section of the agenda is permissible.
- Approaching the dais on which the members of the Commissioners Court sit beyond the speaker's podium or to the immediate left or right of the podium, unless by the invitation of a member of the Commissioners Court.
- Wearing or displaying signs, flags, banners, props, placards, or similar items larger than 8 ½ by 11 inches. This includes items that can be illuminated or be attached to any pole, stick, or other device. This does not include words or symbols on personal apparel, such as shirts, hats, and other standard items of clothing.
- The County Judge maintains the right to interrupt and/or excuse a speaker when the allocated time has expired, if the speaker otherwise violates these guidelines, or for any other matter at the discretion of the County Judge.

This alleged violation constitutes an actual, concrete injury that is ripe for adjudication because formal written rules of decorum had already been adopted at the time.

Defendant's ripeness argument mischaracterizes Plaintiff's claim. Plaintiff is not challenging hypothetical future enforcement of formal written rules that had not yet been adopted. Rather, Plaintiff is challenging Defendant's actual enforcement of content-based restrictions on speech during the January 28, 2025, meeting that were both present at the time and doubled down on after the meeting through the adoption of even more strict rules and policies.

---

[4] https://www.tarrantcountytx.gov/en/commissioners-court/commissioners-court-agenda-videos.html
[5] *Cohen v. California*, 403 U.S. 15 (1971), finding that "we can not indulge the facile assumption that one can forbid particular words without also running a substantial risk of suppressing ideas in the process.  Indeed, governments might soon seize upon the censorship of particular words as a convenient guise for banning the expression of unpopular views."

PLAINTIFF'S RESPONSE TO DEFENDANT TARRANT COUNTY'S MOTION TO DISMISS – CJ GRISHAM

The fact that Defendant was enforcing unwritten or de facto rules of decorum does not deprive this Court of jurisdiction. To the contrary, it demonstrates that Plaintiff suffered an actual injury when he was removed from the meeting for using profanity.  That said, Defendant O'Hare was enforcing Tarrant County's "rules of decorum" or a "decorum policy" as the policy maker for Tarrant County even if it wasn't the one being voted on at the meeting in question.

Defendant O'Hare's statement that Plaintiff's speech was "not gonna be protected in this courtroom" clearly demonstrates that he was enforcing content-based restrictions on speech, regardless of whether those restrictions had been formally codified – which they were, as demonstrated above.

Texas Government Code § 551.007(e) explicitly prohibits governmental bodies from "prohibit[ing] public criticism of the governmental body, including criticism of any act, omission, policy, procedure, program, or service."

By removing Plaintiff from the meeting for using profanity while criticizing county officials in furtherance of Tarrant County policies, Defendant violated both this statutory prohibition and Plaintiff's First Amendment rights.

The fact that Defendant was enforcing content-based restrictions on speech in violation of both Texas law and the First Amendment further supports this Court's jurisdiction over Plaintiff's claims and Defendant's motion to dismiss for want of jurisdiction should be denied.

### ii.    *Mr. Grisham clearly stated claims for which relief can be granted.*

The standard for a motion to dismiss is governed by Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). Put another way, a plaintiff must plead facts that allow the court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,, 678, 129 S. Ct. 1937 (2009). This means that the complaint must include enough factual content to allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.

The plausibility standard is not akin to a probability requirement but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. (quoting *Twombly*, 550 U.S. at 570). (2007)) (internal quotation marks omitted). The complaint must offer more than mere labels, legal conclusions, or a formulaic recitation of the elements of a cause of action. While the court must accept all well-pleaded facts as true, it is not required to accept legal conclusions as true. Legal conclusions can provide the framework of a complaint, but they must be supported by factual allegations. A motion to dismiss for failure to state a claim is

PLAINTIFF'S RESPONSE TO DEFENDANT TARRANT COUNTY'S MOTION TO DISMISS – CJ GRISHAM

"viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

Mr. Grisham has not only met the minimum standards required by the *Twombly* and *Iqbal* standards, he has more than exceeded them in his pleading before this Court. As such, Defendant Tarrant County's motion to dismiss for failure to state a claim should be denied.

### iii.   *Monell* **Liability**

Defendant Tarrant County "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978).

Plaintiff pleaded facts that show that there is a "policy statement, ordinance, regulations, or decision officially adopted and promulgated" by Tarrant County and the individual Defendants.

Contrary to Defendants' statement otherwise, Plaintiff has clearly alleged the existence of explicit policies which violated Plaintiff's rights. Defendant Tarrant County is not entitled to dismissal under *Monell* based on the following evidence and argument that reinforce Plaintiff's claims below for both the January 14, 2025, claims and the January 28, 2025 claims.

**III.   Grisham has clearly stated Section 1983 claims for 1st and 4th Amendment violations**

**A. Plaintiff Has Properly Alleged a Plausible Fourth Amendment Claim for Unlawful Arrest on January 14, 2025**

### 1. *Defendants lacked probable cause or reasonable suspicion*

The meeting was never posted with proper signage banning firearms by unlicensed individuals, much less license holders.  Because Defendant Tarrant County and individual Defendants failed to provide proper notice to the public that the meeting was an open meeting and that open or concealed by unlicensed carriers was not permitted, Defendants had zero rights or authority to even stop Plaintiff at the outset.

The investigative detention must be temporary and cannot last longer than is necessary to effectuate the stop's purpose which must be lawful. *Florida v. Royer*, 460 U.S. 491, 501 (1983); *Florida v. Bostick*, 501 U.S. 429, 2386-88.  Here, because there was no proper, legally mandated signage, there was no authority to even detain Plaintiff.  *See Terry v. Ohio*, 392 U.S. 1 (1968).

In Texas, a law enforcement officer may detain a person for investigative purposes if the officer *has reasonable suspicion*, supported by specific and articulable facts, that the person is involved in criminal activity. This standard is less than probable cause but requires more than a mere hunch. The totality of the circumstances is considered to determine whether reasonable suspicion exists.

*Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. 2005). For example, in the context of traffic stops, the Fifth Circuit has held that a stop is lawful if it is justified at its inception and reasonably related in scope to the circumstances that justified the stop. Detention must not last longer than necessary unless additional reasonable suspicion arises during the stop. *United States v. Ramos*, 659 F. Supp. 3d 779, 793 (W.D. Tex. 2023).

The U.S. Supreme Court has established that probable cause is the standard for arrest and *extended detention*. *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). Probable cause exists when facts and circumstances would lead a prudent person to believe that the suspect has committed or is committing an offense. For brief investigative detentions, the Court has held that reasonable suspicion, based on articulable facts, is sufficient. *Id.* The Court emphasizes the need to balance individual liberty with the state's interest in crime control, and the reasonableness of a detention is assessed under the totality of the circumstances. *Vactor v. State*, 181 S.W.3d 461, 464-65 (Tex. App.—Texarkana 2005, pet. ref'd).

The legal standard for lawful detention requires reasonable suspicion for brief detentions and probable cause for arrests or extended detentions. Despite providing the necessary documents to satisfy even the most basic inquiries about Plaintiff's exemptions, Defendants held Mr. Grisham for more than 40 minutes. The detention and arrest were unreasonable under any standard.

PLAINTIFF'S RESPONSE TO DEFENDANT TARRANT COUNTY'S MOTION TO DISMISS – CJ GRISHAM

Plaintiff made clear in his complaint that despite proving that he was not only a retired law enforcement officer and exempt from 46.03(a)(14) under Tex. Pen. Code 46.15(a)(5), but also possessed a Texas License to Carry and was exempt under 46.15(b)(6).  After providing his bona fides as being exempt, Defendants unlawfully seized Plaintiff's person for over 40 minutes **while in handcuffs**.  In fact, Defendants made baseless claims that insinuated, without cause or reason, that Mr. Grisham was just "an analyst" and not retired law enforcement as his certified credentials showed.  Nowhere on Mr. Grisham's retired law enforcement credentials is he identified as an analyst and Defendants have not claimed that the credentials were fake or fraudulent.  Mr. Grisham was a 35Y5M, a Senior Counterintelligence Special Agent, not a 35F, Intelligence Analyst.

### 2. *Grisham's actions did not constitute disorderly conduct*

Defendant quotes Mr. Grisham stating during public comment that "Thankfully, Sheriff Waybourne [sic] thought the better of valor and listened to me when I told him to read the fucking law." Defendant admits that "as soon as Plaintiff uttered the vulgar profanity, Judge O'Hare interrupted Plaintiff and instructed the deputies to 'remove him immediately for that comment.'"  ECF #18, at 17-18.  This is an admission by Defendant that the County prohibited Plaintiff from speaking on matters of public concern based solely on the use of a descriptive

16

adjective, in violation of Plaintiff's First Amendment-protected rights. Defendants have failed to allege how Plaintiffs constituted fighting words or some other exception to the First Amendment.

No reasonable official could differ on the lawlessness of Defendants' conduct. This is because the Supreme Court, 5th Circuit, and Texas Supreme Court have all made very clear that speech is protected except in narrowly defined circumstances. "A constitutional right is clearly established for the purposes of section 1983 only if the law is clear enough such that 'a reasonable official would understand that what he is doing violates that right.' *Kovacic v. Villarreal*, 628 F.3d 209, 213 (5th Cir. 2010).

Since "ignorance of the law is not a defense," *United States v. Davis*, 690 F.3d 330,340 (5th Cir. 2012), Defendants knew or should have known that the disorderly conduct statute can only be applied to speech that falls outside of the First Amendment. The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. *Houston v. Hill*, 482 U.S. 451, 465 (1987). "Speech is often provocative and challenging. . . . [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949). In *Lewis v. City of New Orleans*, 415 U.S. 130 (1974), for example, the

17

PLAINTIFF'S RESPONSE TO DEFENDANT TARRANT COUNTY'S MOTION TO DISMISS – CJ GRISHAM

appellant was found to have yelled obscenities and threats at an officer who had asked appellant's husband to produce his driver's license. Appellant was convicted under a municipal ordinance that made it a crime "'for any person wantonly to curse or revile or to use obscene or opprobrious language toward or with reference to any member of the city police while in the actual performance of his duty.'" *Id.*, at 132 (citation omitted). The conviction was vacated as protected speech.

Telling an officer to "read the fucking law" is protected speech as is repeating such a statement to the elected officials tasked with holding deputies accountable. Profanity that does not devolve into obscenity is protected speech. See *Eaton v. Tulsa*, 415 U.S. 697, 94 S. Ct. 1228 (1974)(holding that a defendant who called his accusers "chicken shit" in a courtroom was protected speech); *Noles v. Dial*, No. 3:20-CV-3677-N-BK, 2021 U.S. Dist. LEXIS 178694 (N.D. Tex. 2021)(holding that officers did not have probable cause to arrest for a sign that said "SHIT IS FUCKED UP AND STUFF" in public).

In *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942), a unanimous Court said:

> "Allowing the broadest scope to the language and purpose of the Fourteenth Amendment, it is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words -- those which by their very utterance inflict injury or tend to incite an

immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Id*., at 571-572 (footnotes omitted).

Defendant quotes the very statute that the Texas courts have held only to "fighting words or acts." *Ross v. State*, 802 S.W.2d 308, 314-15 (Tex.App.—Dallas 1990, no pet.); *see generally Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 572, 62 S. Ct. 766, 86 L. Ed. 1031 (1942) (recognizing the State's authority, consistent with the First Amendment, to proscribe "fighting words").  Defendants have not alleged that Plaintiff's words constituted "fighting words."

Defendants cannot logically claim that Mr. Grisham's speech in any way incited violence because when he told Defendant Driskell to "read the fucking law" and repeated the statement during public comments while discussing a matter of public concern.  The only people present were law enforcement officers and friend of Plaintiff, who was holding his phone and recording the incident.[6] Defendant is intentionally misleading this Court by stating that Plaintiff's statements occurred while "surrounded by an agitated crowd" as shown in Figure 1.  Plaintiff's statements occurred in an empty hallway outside of Commissioners Court meeting room.

---

[6] Texas 2A Attorney, *Commissioners Court Assault*, YouTube Video, https://www.youtube.com/watch?v=qN3bnWVS0s8 at 00:00:02, last accessed September 17, 2025.

PLAINTIFF'S RESPONSE TO DEFENDANT TARRANT COUNTY'S MOTION TO DISMISS – CJ GRISHAM



*Figure 1 The exact moment when Plaintiff told Defendant Driskell to "read the fucking law."*

Defendants falsely claim that Mr. Grisham's allegations that he "provided his identification" is "*not* a well-pleaded fact." ECF #18, at 19.  Plaintiff clearly pleaded that Defendants had his LTC in his amended complaint.  See ECF #17, ¶ 56.  Plaintiff clearly alleged facts that he also personally provided his retired law enforcement credentials, yet despite having them right in front of his face, Defendant Driskell relied upon someone four hours away who was misinformed as his basis for violating Plaintiff's rights.  Defendant mislead the Court by stating that "Driskell told Plaintiff he could have falsified a 'badge,' so Driskell impliedly chose to trust TCOLE's statement that Plaintiff currently was not a law enforcement officer," ignoring the fact that Mr. Grisham never claimed to be law

PLAINTIFF'S RESPONSE TO DEFENDANT TARRANT COUNTY'S MOTION TO DISMISS – CJ GRISHAM

enforcement; just that he was *retired* law enforcement as defined in both state and federal law.  In the image below, the Court will notice that Plaintiff is still only surrounded by law enforcement officers and his cameraman and that no crowd has formed contrary to Defendants' false statements.  Therefore, Defendants' statement that "Plaintiff's profanity-laced outbursts in a public place while surrounded by an agitated crowd…and Plaintiff's failure to present an LTC collectively gave rise to reasonable suspicion and probable cause for an investigatory detention and brief seizure" are patently and blatantly false.  Additionally, Defendant is not required to present an LTC since he is exempt as a retired law enforcement officer with appropriate credentials (shown in Plaintiff's original complaint).



*Figure 2 Plaintiff showing Driskell both his retired law enforcement credentials and LTC (which are kept together in Plaintiff's wallet).*

21

### 3. *Texas law does not require Grisham to present his LTC.*

Setting aside that Plaintiff has already shown that he did present his LTC – even though it wasn't demanded, Defendants present a flawed and inaccurate recitation of Texas law.

Tex. Gov't. Code § 411.205 states that "[i]f a license holder is carrying a handgun on or about the license holder's person **when a magistrate or a peace officer demands** that the license holder display identification, the license holder shall display: (1)  both the license holder's driver's license or identification certificate issued by the department and the license holder's handgun license; and (2)  if the license holder's handgun license bears a protective order designation, a copy of the applicable court order under which the license holder is protected."

The statute only requires license holders to present identification if it is demanded.  At no time did Defendant Driskell demand identification from Plaintiff.  As alleged in his complaint, Plaintiff attempted to re-enter the meeting when Driskell informed him that he couldn't go inside with his concealed firearm. At no time did Defendant Driskell demand or even request Plaintiff display a license or any form of identification.  In response to Defendant Driskell's unlawful and obstinate behavior, Plaintiff voluntarily – without being asked – displayed both his retired law enforcement credentials and his LTC.

PLAINTIFF'S RESPONSE TO DEFENDANT TARRANT COUNTY'S MOTION TO DISMISS – CJ GRISHAM

That said, let's operate under the assumption that Defendant Driskell did ask for Plaintiff's LTC for purposes of undermining another faulty argument of Defendant Tarrant County.  The law states that an LTC must be shown "**when a magistrate or a peace officer demands** that the license holder display identification.  Tex. Gov't. Code § 411.205.[7]

In Texas, a law enforcement officer's ability to lawfully demand identification from a citizen depends on the nature of the interaction between the officer and the citizen. There are three types of interactions: consensual encounters, investigatory detentions, and arrests.  *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Ct. Crim. App. 2011).

1.    **Consensual Encounters**: During a consensual encounter, an officer may **request** identification without any objective justification, as long as the citizen feels free to decline the request and terminate the interaction. The Fourth Amendment is not implicated in such encounters, and compliance with the officer's request does not change the consensual nature of the interaction. *Id.*

2.    **Investigatory Detentions**: If the interaction escalates to an investigatory detention, the officer must have reasonable suspicion based on specific, articulable facts that the individual is, has been, or is about to be involved

---

[7] There is no legal or criminal penalty for failure to present an LTC under the law.  The criminal penalties were removed under in 2009 under Tex. HB 2730 during the 81st Regular Legislative Session.

PLAINTIFF'S RESPONSE TO DEFENDANT TARRANT COUNTY'S MOTION TO DISMISS – CJ GRISHAM

in criminal activity. *Id*. During such a detention, the officer may lawfully *request* identification as part of the investigation, but still has no authority to demand identification.  Tex. Pen. Code §38.02 states that a person is only required to identify when "lawfully arrested."  If a person is merely detained, the only duty a person has is to refrain from providing a "false or fictitious name, residence address, or date of birth."  Tex. Pen. Code § 38.02(b).  If a person is detained for investigatory detention, the person has no duty under Texas law to assist in that investigation.  The main exception to this is if a person is operating a motor vehicle and is detained while doing so.

3.    **Arrests**: In the case of an arrest, which requires probable cause, the officer can **demand** identification. *Id.* Under Tex. Penal Code § 38.02, a person commits an offense if they intentionally refuse to provide their name, residence address, or date of birth after being **lawfully arrested** and requested to do so.  Tex. Penal Code § 38.02.  Plaintiff was never under arrest.  Therefore, Defendants had no authority to "demand identification" as mentioned in Tex. Gov't. Code 411.205. Since Defendants and other officers had no authority to demand identification, Plaintiff had no duty to provide his LTC. Again, it cannot be overemphasized that at no time did Defendants demand Mr. Grisham's identification or LTC, so Defendant's point is moot.

### 4.    *Prohibitions on profanity are not constitutionally permissible in a limited public forum.*

Defendants have the ability to set rules of decorum, provided those rules do not violate free, expressive speech. The Supreme Court has already established that unprotected speech falls into very narrow categories like obscenity, defamation, fraud, incitement, and speech integral to criminal conduct. *United States v. Alvarez*, 567 U.S. 709, 717 (2012). Additionally, speech that invades substantial privacy interests of another in an essentially intolerable manner is also unprotected. *Ex parte Bradshaw*, 501 S.W.3d 665 (Tex. App.—Dallas 2016, pet. ref'd).

"[A]s a general matter, the First Amendment means the government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *United States v. Stevens*, 559 U.S. 460, 468 (2010). At no time did Defendant speak outside of his allotted three minutes of public comment. In fact, he didn't use 30 seconds of his time before Defendant O'Hare violated his right to speak in furtherance of established "rules of decorum." Defendant cannot "disrupt" his own public comment period unless he exceeds it. "Citizens have a right under our constitutional system to criticize government officials and agencies." *Konigsberg v. State Bar of Cal.*, 353 U.S. 252, 269 (1957). This includes the "moral character" of those government officials and agencies. *Id*.

The government can restrict or regulate speech in a limited public forum "as long as the regulation '(1) does not discriminate against speech on the basis of viewpoint and (2) is reasonable in light of the purpose served by the forum.'" *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 758 (5th Cir. 2010) (quoting *Chiu v. Plano Indep. Sch. Dist.,* 260 F.3d 330, 346 (5th Cir. 2001). By prohibiting expressive speech that may contain profanity, Defendant's policy violates both prongs of the *Fairchild* test. The policy tells citizens how they may express themselves verbally on a particular matter of public interest. If that matter creates anger or frustration, a person may not express that anger or frustration through the use of profanity, which would communicate the speaker's intent and message expressively.

Defendant Tarrant County claims that "[a] public comment session of the Commissioners Court is a limited public forum, in which it is constitutionally permissible to prohibit profanity to maintain civility and decorum." ECF #18 at p. 9. Let's talk about that authority and expose that it is, in fact, Defendant O'Hare (and the rest of Tarrant County authorities) that seem to have a flawed interpretation of both the First Amendment and their authority.

Defendant Tarrant County uses the *Heaney* case to justify its censorship of Mr. Grisham's speech. That case has nothing to do with profanity. In *Heaney*, the Court found that "[b]ecause Heaney was not silenced for violating a reasonable

PLAINTIFF'S RESPONSE TO DEFENDANT TARRANT COUNTY'S MOTION TO DISMISS – CJ GRISHAM

restriction, the First Amendment claim turns on Roberts's motive or intent in silencing and ejecting Heaney from the meeting." *Heaney v. Roberts*, 846 F.3d 795, 802 (5th Cir. 2017).  The Court dismissed the Defendant's claim to qualified immunity because "whether Roberts acted on an improper motive—is a factual dispute that should be resolved by a jury."  This case presents the same legal dispute that must be resolved by a jury.

"Limited public forums are created by government entities when they open property 'limited to use by certain groups or dedicated solely to the discussion of certain subject.'" *Wenthold*, 2012 WL 467325, at \*6 (quoting *Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. Of the L. v. Martinez*, 561 U.S. 661, 678 (2010)). "In limited public forums, 'a government may impose restriction on speech that are reasonable and viewpoint neutral.'" *Id.* (first quoting *Christian Legal Soc'y*, 561 U.S. at 679 n. 11, and then citing *Chiu v. Plano Indep. Sch. D.*, 260 F.3d 330, 346 (5th Cir. 2001)).  In contrast, "designated public forums are created by government entities when 'government property that has not traditionally been regarded as a public forum is intentionally opened up for that purpose." *Id.* at \*7 (citing *Christian Legal Soc'y*, 561 U.S. at 679 n. 11).  In designated public forums, content-based restrictions on speech are subject to strict scrutiny – they must be narrowly tailored to serve a compelling government interest. *Id.*

The forum determination bears on the outcome of Mr. Grisham's constitutional challenge due (at least) to the "rules of decorum" or "decorum policy" prohibition of the use of profanity.  A limitation on speech is content-based if it "target[s] speech based on its communicative content[.]"  *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015).  To qualify as content-neutral, a restriction on speech must be "justified without reference to the content of the regulated speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)(alterations in original)(citations omitted). "A restriction on…profanity…is naturally content-based." *Iancu v. Brunetti*, 588 U.S. 388, 419 (1019)(Sotomayor, J. concurring)(citing *R.A.V. v. City of St. Paul*, 505 U.S. 377, 383 (1992)).  In a designated public forum, profanity may not be constitutionally prohibited unless it falls into a category of unprotected speech, such as fighting words.  *See Beckerman v. City of Tupelo, Miss.*, 664 F.2d 501, 513-14 (5th Cir. 19812); *cf. Cohen v. California*, 403 U.S. 15, 19-20 (1971)(overturning conviction for wearing "Fuck the Draft" jacket in municipal courthouse because no evidence that speech fell within unprotected category); *See also Chaplinsky v. N.H.,* 315 U.S. 568 (1942); *Houston v. Hill*, 482 U.S. 451 (1987).

Defendant has not identified any exception to the protected speech that the First Amendment protects that would allow it the enjoyment of qualified immunity.

PLAINTIFF'S RESPONSE TO DEFENDANT TARRANT COUNTY'S MOTION TO DISMISS – CJ GRISHAM

### 5. *Plaintiff has properly identified a final policy maker or moving force*

As explained above, the policy is a county policy. The County Commissioner's Court set the policy in question and Plaintiff has properly alleged as much. In fact, Defendant's own motion mentions the County's policy as being a reasonable policy under the First Amendment, undermining its claim.

### 6. *First Amendment claims against Sheriff's deputies are sufficient*

Plaintiff has clearly pleaded claims against Deputies. While Plaintiff has restated Fourth Amendment claims in his First Amendment Claims, the two are inextricably intertwined. Mr. Grisham was removed from the meeting specifically for the content of his speech and Defendants knew that is why Mr. Grisham was being removed because Defendant O'Hare articulated the reason clearly: "[profanity] is not protected here." Defendant deputies heard Defendant O'Hare's statement as to the reason for the silencing Mr. Grisham and threatened to arrest him anyway.

During the January 14, 2025, arrest all officers witnessed Mr. Grisham provide his retired law enforcement credentials and knew that he was exempt, but effected an unlawful arrest anyway. Additionally, the unconstitutionally confiscated his wallet and had access to both his LEOSA credentials and LTC if they wanted to confirm Mr. Grisham's claims with their own eyes during their "investigation."

Officers cannot enjoy the protections of qualified immunity if they knowingly make an arrest they understand to be unlawful, even if they claim to be following orders. Qualified immunity shields officers only when their actions are objectively reasonable under clearly established law and do not knowingly violate constitutional or statutory rights. The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *City of Lancaster v. Chambers*, 883 S.W.2d 650 (Tex. 1994) (quoting *Swint v. City of Wadley*, 5 F.3d 1435, 1441-1442 (11th Cir. 1993) (internal quotation marks omitted)). Government employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority. *Baker v. Story*, 621 S.W.2d 639, 644 (Tex. Civ. App. -- San Antonio 1981, writ ref'd n.r.e.); *Wyse v. Department of Pub. Safety*, 733 S.W.2d 224, 227 (Tex. App. -- Waco 1986, writ ref'd n.r.e.).

Defendant deputies clearly did not act in good faith.  "[G]ood faith depends on how a reasonably prudent officer could have assessed both the need to which an officer responds and the risks of the officer's course of action, based on the officer's perception of the facts at the time of the event." *City of San Antonio v. Riojas*, 640 S.W.3d 534 539 (Tex. 2022).  Because there was no crime being committed during either alleged incident, Defendant deputies had no need to arrest Mr. Grisham because they knew or should have known that he was engaged in

30

protected conduct.  The relevant inquiry is whether it would be clear to a reasonable officer that it was unlawful to arrest to assist with the violation of Mr. Grisham's First Amendment speech under the circumstances. *Padilla v. Mason*, 169 S.W.3d 493, 502-03 (Tex. App.—El Paso 2005, pet. denied).  City of Lancaster v. Chambers, 883 S.W.2d 650.

The claim of "just following orders" does not absolve an officer from liability if the arrest was known to be unlawful.  The many courts, including the 5th Circuit, have rejected officers' "just-following-orders" defenses in cases with unlawful detentions. *See Jones v. Jackson*, 203 F.3d 875 (5th Cir. 2000).  Even in cases where officers were "merely enforcing what otherwise reasonably appeared to be facially valid orders," if they know that those orders are unlawful, they cannot enjoy qualified immunity.  *Jones v. King*, No. PE:22-CV-00030-DC-DF, at *51 (W.D. Tex. 2023).

### 7. *Grisham properly alleged a violation of his First Amendment right to record*

The right to record is recognized in the 5th Circuit.  *See Turner v. Driver*, 848 F.3d 678 (5th Cir. 2017).  Mr. Grisham has alleged that he was recording and that a Deputy stopped his recording without permission.  Mr. Grisham properly alleged that turning off the camera was the violation of First Amendment rights.

### 8. *Grisham adequately pleaded Monell claims under the 2nd Amendment*

PLAINTIFF'S RESPONSE TO DEFENDANT TARRANT COUNTY'S MOTION TO DISMISS – CJ GRISHAM

Mr. Grisham clearly identified the policy that was in place by providing an actual picture of the policy in his original complaint. Defendant Deputies admitted that they were enforcing a County policy. As mentioned above, Mr. Grisham did not have to present his LTC because he was otherwise exempt and because he was not under arrest. That said, Mr. Grisham did present his LTC, contrary to Defendant's claim. This is a fact issue that cannot be decided at the qualified immunity, *Monell*, or summary judgment stage. While there is no dispute that Mr. Grisham told Defendant Driskell to "read the fucking law," there is a dispute of fact as to whether such statement was "yelled" as claimed by Defendant. The fact is that the statement was made during a discussion with Defendant Driskell in an empty hallway surround by several officers and no one else besides Mr. Grisham's cameraman. Mr. Grisham was also not "yelling" when he repeated what he told officers during his public comments on January 24, 2025.

Therefore, the Defendants' actions on both occasions were not reasonable. Mr. Grisham has properly pleaded 2nd Amendment claims.

### 9. *Plaintiff Adequately Pleaded Failure to Train or Supervise*

Plaintiff properly and adequately pleaded failure to train or supervise. See ECF #17, ¶178-180.

### 10. *Section 1985(3) conspiracy claims are barred by the intracorporate conspiracy doctrine.*

Mr. Grisham has properly alleged violations of 42 U.S.C. § 1983 and that an agreement among the Defendants to violate his rights as required under Cinel v. Connick, 15 F.3d 1338, 1343 (5th Cir. 1994). Mr. Grisham as properly alleged that the conspiracy involves two or more persons. Nelson Radio & Supply Co. v. Motorola, Inc., 200 F.2d 911, 914 (5th Cir. 1953). Mr. Grisham has alleged that the Defendants, in their personal capacities, conspired to violate Mr. Grisham's rights, so the intercorporate conspiracy doctrine does not apply here. Defendants are sued in their individual capacities. To the extent that Defendants are sued in their official capacities, the doctrine would apply. However, Mr. Grisham has properly alleged that the conspiracy exists between and among the individual Defendants.

## 11. Mr. Grisham may include Texas Constitutional claims in his federal 1983 claim

A plaintiff can argue state constitutional violations in addition to federal constitutional violations in a federal § 1983 case in the 5th Circuit or U.S. Supreme Court if those claims share the same facts and circumstances as the federal claims. Under 28 USCS § 1367, federal courts have supplemental jurisdiction over state law claims that are so related to the federal claims within the court's original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution. "[I]f a complaint includes the requisite federal question, a federal court often has power to decide state-law questions too." *Royal Canin*

33

*U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 27 (2025).  A federal court may exercise supplemental jurisdiction over the state claim so long as it "derive[s] from" the same "nucleus of operative fact" as the federal one.  *Mine Workers v. Gibbs*, 383 U. S. 715, 725 (1966).

However, the exercise of supplemental jurisdiction is discretionary. A federal court may decline to exercise jurisdiction over state law claims if certain conditions under 28 USCS § 1367 are met, such as when the state law claims raise novel or complex issues, substantially predominate over the federal claims, or when all federal claims are dismissed before trial.  Bittakis v. City of El Paso, 480 F. Supp. 2d 895. The general rule in the 5th Circuit is to decline jurisdiction over state law claims when all federal claims are dismissed, but this rule is not mandatory and depends on factors like judicial economy, convenience, fairness, and comity. *Bittakis v. City of El Paso*, 480 F. Supp. 2d 895, 921 (W.D. Tex. 2007), *Leal v. Azar*, 489 F. Supp. 3d 593, 602 (N.D. Tex. 2020).

In conclusion, while a plaintiff can include state constitutional claims in a federal § 1983 case if they arise from the same facts, the federal court has discretion to decide whether to retain jurisdiction over those claims, particularly if the federal claims are dismissed or other factors weigh against exercising supplemental jurisdiction.

Mr. Grisham has stated a viable claim for relief under the Texas Constitution, and the Court should not dismiss it and should exercise supplemental jurisdiction over his state law claims.

## **PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff CJ Grisham prays that this Court deny Defendant Tarrant County's motion and order that the case proceed to discovery.

Respectfully Submitted,

**CJ GRISHAM**

LAW OFFICES OF CJ GRISHAM PLLC
Texas State Bar No. 24124533
cj@cjgrisham.com
3809 S. General Bruce Dr.
Ste 103-101
Temple, Texas 76502
Telephone: 254-405-1726

*PRO SE COUNSEL FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

On November 22, 2025, I served a copy of the above document on all counsel of record via ECF.

_____

CJ Grisham
Pro Se Plaintiff/Counsel of Record

PLAINTIFF'S RESPONSE TO DEFENDANT TARRANT COUNTY'S MOTION TO DISMISS – CJ GRISHAM