# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| **CJ GRISHAM,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **vs.** | § | |
| | § | |
| | § | |
| | § | |
| **TIM O'HARE** | § | |
| *In his personal and official* | § | |
| *Capacities,* | § | |
| **CHIEF DEPUTY CRAIG** | § | **CIVIL ACTION NO. 4:25-cv-716-Y** |
| **DRISKELL,** | § | |
| *In his supervisory, official, and* | § | |
| *personal capacities,* | § | |
| **SERGEANT ORVILLE GEORGE** | § | |
| *In his personal and official* | § | |
| *Capacities,* | § | |
| **SERGEANT MICHAEL JAUSS** | § | |
| *In his personal and official* | § | |
| *Capacities,* | § | |
| **CHIEF DEPUTY GABBERT** | § | |
| *In her personal and official* | § | |
| *Capacities,* **and** | § | |
| **TARRANT COUNTY,** | § | |
| | § | |
| *Defendants* | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT DEPUTIES' MOTION TO DISMISS AMENDED COMPLAINT

PLAINTIFF'S RESPONSE TO DEFENDANT DEPUTIES' MOTION TO DISMISS AMENDED COMPLAINT – CJ GRISHAM

NOW COMES CJ Grisham and files this Response to Defendant Deputies (Driskell, George, Jauss, and Gabbert) Motion to Dismiss and Motion to Stay Discovery under FRCP 12(b)(6) and would show why Defendants are not entitled to Qualified Immunity for violating Plaintiff's rights and why the Court should order immediate discovery in this case.  In support of his opposition to Defendants' motions, Plaintiff provides the Court with the following:

### INTRODUCTION

"*The Nuremberg Trial of the German war criminals was tacitly based on the recognition of the principle: criminal actions cannot be excused if committed on government orders; conscience supersedes the authority of the law of the state.*"   Albert Einstein

The Court should deny Defendant's motion to dismiss all claims against Defendant Sheriff's Deputies because Plaintiff has met the *Iqbal/Twombly* standards required for pleading and has adequately stated claims for relief.  It is never "objectively reasonable" for a law enforcement officer to ignore black letter law or to make it up to cover his own incompetence or inadequate training.

The Defendant Deputies are alleging that Mr. Grisham has failed to plausibly allege any of his First Amendment, Second Amendment, and Fourth Amendment claims, that Driskell failed to supervise the Defendant Deputies, that Conspiracy claims are barred, and that Punitive damages are not warranted. This response will address each of these allegations and show that they are properly

2

PLAINTIFF'S RESPONSE TO DEFENDANT DEPUTIES' MOTION TO DISMISS AMENDED COMPLAINT – CJ GRISHAM

plead for the purposes of surviving a motion to dismiss for failure to state a claim, and that punitive damages are warranted.

## I.    DEFENDANTS ARE NOT ENTITLED TO DISMISSAL

### a. Factual and Procedural Background

Plaintiff reinstates and incorporates the facts contained in his complaint. However, contrary to Defendant Deputies' statement that "[Defendant] Driskell, relying on guidance from the Texas Commission on Law Enforcement (TCOLE) that Grisham was *not* a qualified law enforcement officer, denied him entry with a weapon," Mr. Grisham has clearly pleaded that there are two claims against Defendants that are the basis of this complaint: that Mr. Grisham was denied entry despite his 46.15(a)(5) exemption and that Mr. Grisham was denied entry despite his 46.15(b)(6) exemption as an LTC holder. Defendants want this Court to only focus on the retired law enforcement angle. They also ask this Court to rely on some anonymous guidance from TCOLE when Defendant Driskell held the evidence of Mr. Grisham's retired law enforcement status in his bare hands that should have discredited whomever was "guiding" Defendant Driskell from hundreds of miles away in Austin. TCOLE doesn't get to decide the definition of a retired, federal law enforcement officer; the DOD does, and the DOD issued Mr. Grisham retired credentials in accordance with Federal and State law.

PLAINTIFF'S RESPONSE TO DEFENDANT DEPUTIES' MOTION TO DISMISS AMENDED COMPLAINT – CJ GRISHAM

Additionally, Defendants attempt to mislead the Court by stating that "Plaintiff does not allege that he showed his credentials to the Defendants at [the time he was placed in handcuffs] or that they actually saw his credentials." It strains all credulity that when officers arrest a person and seize his wallet for identification purposes that those officers don't ascertain facts from the seizure such as identity. It is common knowledge and practice that officers gain possession of a suspect's wallet to obtain identity, but Defendants want this Court to believe that in this particular instance, with this particular Plaintiff, on this particular day, Defendants just took Mr. Grisham's wallet because it was pretty, despite all Defendants being present during Plaintiff's constant and repetitive claims that he was a licensed LTC holder and retired peace officer.

### b. Standard for Dismissal under FRCP 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ascroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). While a sufficient complaint does not require detailed factual

allegations, the facts pled must raise the plaintiff's "right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotes omitted). A court must draw all reasonable inferences in favor of the plaintiff. *Allen v. Vertafore, Inc.,* 28 F.4th 613, 617 (5th Cir. 2022). However, a plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

Defendants are not entitled to qualified immunity because their actions violated clearly established statutory law and were neither objectively reasonable or subjectively. The Court should deny Defendants' motion to dismiss for failure to state a claim and deny them qualified immunity for the following reasons.

### c. Failure to Supervise by Defendant Driskell

Plaintiff has adequately pleaded a claim for supervisory liability against Chief Deputy Craig Driskell. Supervisory officials may be held liable under Section 1983 if they, "by act or omission, cause a subordinate to violate another's constitutional rights." *See Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 (5th Cir. 1994) (en banc). To state a claim for failure to supervise, a plaintiff must allege: (1) the supervisor failed to supervise or train the subordinate official; (2) a causal link exists between the failure to supervise and the violation of the

plaintiff's rights; and (3) the failure to supervise amounts to deliberate indifference to the plaintiff's constitutional rights.

Here, Plaintiff alleges that Driskell, as a supervisory official, was responsible for the training, supervision, and discipline of the Defendant Deputies. Despite this responsibility, Driskell failed to ensure that the deputies were adequately trained and supervised regarding the constitutional rights of citizens, including the rights to free speech, to be free from unreasonable seizure, and to bear arms as protected by the First, Fourth, and Second Amendments. Plaintiff further alleges that Driskell was aware, or should have been aware, of a pattern of similar constitutional violations by subordinates, or at a minimum, that the risk of such violations was obvious given the nature of the deputies' duties and the circumstances of the Commissioners Court meeting.

## II.    BRIEF IN OPPOSITION TO DEFENDANT DEPUTIES' MOTION TO DISMISS

### a. Standards of Review

#### i.    *This Court has jurisdiction.*

Shockingly, Defendants try to convince this Court that "rules of decorum" or "decorum policy" that violates the First Amendment should be dismissed because the claim "is not ripe."  Nothing could be further from the truth.  The rules themselves ARE the violation of the First Amendment that establishes Defendant

PLAINTIFF'S RESPONSE TO DEFENDANT DEPUTIES' MOTION TO DISMISS AMENDED COMPLAINT – CJ GRISHAM

O'Hare's liability through his discriminatory enforcement of them.  The two are inseparable.

The Defendant Deputies have moved to dismiss Plaintiff's First Amendment claim on the grounds that this Court lacks subject matter jurisdiction because the "rules of decorum" at issue had not been formally adopted at the time of the January 28, 2025 Commissioners Court meeting. This argument fundamentally misunderstands both the nature of Plaintiff's claim and the requirements for subject matter jurisdiction in First Amendment cases.

Plaintiff's First Amendment claim does not depend on the formal adoption of the rules of decorum being debated at the hearing Mr. Grisham attended. Rather, it challenges the Defendant Deputies actual enforcement of content-based restrictions on speech during the January 28, 2025, Commissioners Court meeting, when Defendant O'Hare ordered Plaintiff removed for using profanity in his public comments.  The Defendant Deputies were enforcing rules of decorum at the time they violated Mr. Grisham's rights, not the new rules that were instituted which further violate the First Amendment.  In fact, the new rules serve as prior restraint because Mr. Grisham has not been back to speak for fear of being arrested for protected speech even under the current rules.

This Court has jurisdiction over Plaintiff's claims because Plaintiff has alleged an actual, concrete injury that occurred when he was removed from the

Commissioners Court meeting for engaging in constitutionally protected speech. The fact that formal written rules had not yet been adopted is irrelevant to the Court's jurisdiction over this actual injury.

Defendant's motion to dismiss for lack of subject matter jurisdiction should be denied because Plaintiff has alleged an actual, concrete injury to his First Amendment rights that is ripe for adjudication.

When subject matter jurisdiction is challenged, a plaintiff has the burden to allege facts affirmatively demonstrating that the court has jurisdiction, and the court must construe allegations liberally in favor of jurisdiction unless the petition affirmatively demonstrates a lack of jurisdiction.

Plaintiff's complaint clearly alleges that the Defendant Deputies violated his First Amendment rights by removing him from a public meeting based solely on the content of his speech - specifically, his use of profanity.

This alleged violation constitutes an actual, concrete injury that is ripe for adjudication, regardless of whether formal written rules of decorum had been adopted at the time.

Defendant's ripeness argument mischaracterizes Plaintiff's claim. Plaintiff is not challenging hypothetical future enforcement of formal written rules that had not yet been adopted. Rather, Plaintiff is challenging Defendant's actual

PLAINTIFF'S RESPONSE TO DEFENDANT DEPUTIES' MOTION TO DISMISS AMENDED COMPLAINT – CJ GRISHAM

enforcement of content-based restrictions on speech during the January 28, 2025, meeting.

The fact that the Defendant Deputies were enforcing unwritten or de facto rules of decorum does not deprive this Court of jurisdiction. To the contrary, it demonstrates that Plaintiff suffered an actual injury when he was removed from the meeting for using profanity. That said, the Defendant Deputies were enforcing "rules of decorum" or a "decorum policy" even if it wasn't the one being voted on at the meeting in question.

Defendant O'Hare's statement that Plaintiff's speech was "not gonna be protected in this courtroom" clearly demonstrates that he was enforcing content-based restrictions on speech, regardless of whether those restrictions had been formally codified.

Texas Government Code § 551.007(e) explicitly prohibits governmental bodies from "prohibit[ing] public criticism of the governmental body, including criticism of any act, omission, policy, procedure, program, or service."

By removing Plaintiff from the meeting for using profanity while criticizing county officials, the Defendant Deputies violated both this statutory prohibition and Plaintiff's First Amendment rights.

The fact that the Defendant Deputies were enforcing content-based restrictions on speech in violation of both Texas law and the First Amendment further supports this Court's jurisdiction over Plaintiff's claims.

Finally, Mr. Grisham alleges that the rules of decorum were enforced inconsistently and discriminatorily, targeting his speech based on its content. For example, Defendant OHare himself violated the rules of decorum by making a personal attack on a fellow commissioner but faced no consequences. This selective enforcement further demonstrates that the rules of decorum were applied in a manner that infringed upon Mr. Grisham's constitutional rights.

### ii.      Mr. Grisham clearly stated claims for which relief can be granted.

The standard for a motion to dismiss is governed by Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). Put another way, a plaintiff must plead facts that allow the court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,, 678, 129 S. Ct. 1937 (2009). This means that the complaint must include enough factual content to allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.

The plausibility standard is not akin to a probability requirement but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. (quoting *Twombly*, 550 U.S. at 570). (2007)) (internal quotation marks omitted). The complaint must offer more than mere labels, legal conclusions, or a formulaic recitation of the elements of a cause of action. While the court must accept all well-pleaded facts as true, it is not required to accept legal conclusions as true. Legal conclusions can provide the framework of a complaint, but they must be supported by factual allegations. A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc*., 677 F.2d 1045, 1050 (5th Cir. 1982).

Mr. Grisham has not only met the minimum standards required by the *Twombly* and *Iqbal* standards, he has more than exceeded them in his pleading before this Court. As such, the Defendant Deputies' motion to dismiss for failure to state a claim should be dismissed.

### b. Grisham has clearly stated Section 1983 claims for 1st and 4th Amendment violations

#### i.    Qualified immunity legal standard

No reasonable official could differ on the lawlessness of the Defendant Deputies' conduct.  This is because the Supreme Court, 5th Circuit, and Texas Supreme Court have all made very clear that speech is protected except in

PLAINTIFF'S RESPONSE TO DEFENDANT DEPUTIES' MOTION TO DISMISS AMENDED COMPLAINT – CJ GRISHAM

narrowly defined circumstances. "A constitutional right is clearly established for the purposes of section 1983 only if the law is clear enough such that 'a reasonable official would understand that what he is doing violates that right.' *Kovacic v. Villarreal*, 628 F.3d 209, 213 (5th Cir. 2010).

Since "ignorance of the law is not a defense," *United States v. Davis*, 690 F.3d 330,340 (5th Cir. 2012), the Defendant Deputies knew or should have known that he is restricted from prohibiting "public criticism of the governmental body, including criticism of any act, omission, policy, procedure, program, or service." See Tex. Gov't. Code § 551.007. Citizen comments are "a broad designation for an open session of unsolicited citizen comments and questions." *Hays County Water Planning Pshp. v. Hays County*, 41 S.W.3d 174, 180 (Tex. App.-Austin 2001)(quoting Tex. Att'y Gen. Op. No. JC-0169 (2000)).

Mr. Grisham agrees with the Defendant Deputies that Tarrant County Commissioner Court Meetings are considered limited public forums. In limited public forums, speech is protected to the same extent as in traditional public forums, as long as the forums remain open, but access may be restricted to entities similar to those which have previously been allowed access. *Cornelius v. NAACP Legal Defense & Education Fund*, 473 U.S. 788, 105 S. Ct. 3439, 87 L. Ed. 2d 567 (1985); *See also Perry Education Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 103 S. Ct. 948, 74 L. Ed. 2d 794 (1983).

12

PLAINTIFF'S RESPONSE TO DEFENDANT DEPUTIES' MOTION TO DISMISS AMENDED COMPLAINT – CJ GRISHAM

The Defendants have the ability to set rules of decorum, provided those rules do not violate free, expressive speech. The Supreme Court has already established that unprotected speech falls into very narrow categories like obscenity, defamation, fraud, incitement, and speech integral to criminal conduct. *United States v. Alvarez*, 567 U.S. 709, 717 (2012). Additionally, speech that invades substantial privacy interests of another in an essentially intolerable manner is also unprotected. *Ex parte Bradshaw*, 501 S.W.3d 665 (Tex. App.—Dallas 2016, pet. ref'd).

"[A]s a general matter, the First Amendment means the government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *United States v. Stevens*, 559 U.S. 460, 468 (2010). At no time did the plaintiff speak outside of his allotted three minutes of public comment. In fact, he didn't use 30 seconds of his time before Defendant O'Hare violated his right to speak.  The plaintiff cannot "disrupt" his own public comment period unless he exceeds it. Profanity that does not devolve into obscenity is protected speech. *See Eaton v. Tulsa*, 415 U.S. 697, 94 S. Ct. 1228 (1974)(holding that a defendant who called his accusers "chicken shit" in a courtroom was protected speech); *Noles v. Dial*, No. 3:20-CV-3677-N-BK, 2021 U.S. Dist. LEXIS 178694 (N.D. Tex. 2021)(holding that officers did not have probable cause to arrest for a sign that said "SHIT IS FUCKED UP AND STUFF" in public).  "Citizens have a right under our

13

PLAINTIFF'S RESPONSE TO DEFENDANT DEPUTIES' MOTION TO DISMISS AMENDED COMPLAINT – CJ GRISHAM

constitutional system to criticize government officials and agencies." *Konigsberg v. State Bar of Cal.*, 353 U.S. 252, 269 (1957). This includes the "moral character" of those government officials and agencies. *Id*.

The meeting was never posted with proper signage banning firearms by unlicensed individuals, much less license holders.  Because Defendant Tarrant County and individual Defendants failed to provide proper notice to the public that the meeting was an open meeting and that open or concealed by unlicensed carriers was not permitted, Defendants had zero rights or authority to even stop Plaintiff at the outset.

The investigative detention must be temporary and cannot last longer than is necessary to effectuate the stop's purpose which must be lawful. *Florida v. Royer*, 460 U.S. 491, 501 (1983); *Florida v. Bostick*, 501 U.S. 429, 2386-88.  Here, because there was no proper, legally mandated signage, there was no authority to even detain Plaintiff.  *See Terry v. Ohio*, 392 U.S. 1 (1968).  However, even if Defendant County had posted signage, such signage would not apply to LTC holders like Plaintiff anyway.

In Texas, a law enforcement officer may detain a person for investigative purposes if the officer *has reasonable suspicion*, supported by specific and articulable facts, that the person is involved in criminal activity. This standard is less than probable cause but requires more than a mere hunch. The totality of the

14

circumstances is considered to determine whether reasonable suspicion exists. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. 2005). For example, in the context of traffic stops, the Fifth Circuit has held that a stop is lawful if it is justified at its inception and reasonably related in scope to the circumstances that justified the stop. Detention must not last longer than necessary unless additional reasonable suspicion arises during the stop. *United States v. Ramos*, 659 F. Supp. 3d 779, 793 (W.D. Tex. 2023).

The U.S. Supreme Court has established that probable cause is the standard for arrest and *extended detention*. *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). Probable cause exists when facts and circumstances would lead a prudent person to believe that the suspect has committed or is committing an offense. For brief investigative detentions, the Court has held that reasonable suspicion, based on articulable facts, is sufficient. *Id.* The Court emphasizes the need to balance individual liberty with the state's interest in crime control, and the reasonableness of a detention is assessed under the totality of the circumstances. *Vactor v. State*, 181 S.W.3d 461, 464-65 (Tex. App.—Texarkana 2005, pet. ref'd).

The legal standard for lawful detention requires reasonable suspicion for brief detentions and probable cause for arrests or extended detentions. Despite providing the necessary documents to satisfy even the most basic inquiries about

PLAINTIFF'S RESPONSE TO DEFENDANT DEPUTIES' MOTION TO DISMISS AMENDED COMPLAINT – CJ GRISHAM

Plaintiff's exemptions, Defendants held Mr. Grisham for more than 40 minutes. The detention and arrest were unreasonable under any standard.

Plaintiff made clear in his complaint that despite proving that he was not only a retired law enforcement officer and exempt from 46.03(a)(14) under Tex. Pen. Code 46.15(a)(5), but also possessed a Texas License to Carry and was exempt under 46.15(b)(6). After providing his bona fides as being exempt, Defendants unlawfully seized Plaintiff's person for over 40 minutes **while in handcuffs**. In fact, Defendants made baseless claims that insinuated, without cause or reason, that Mr. Grisham was just "an analyst" and not retired law enforcement as his certified credentials showed. Nowhere on Mr. Grisham's retired law enforcement credentials is he identified as an analyst and Defendants have not claimed that the credentials were fake or fraudulent. Mr. Grisham was a 35Y5M, a Senior Counterintelligence Special Agent, not a 35F, Intelligence Analyst.

    ii.    *Grisham has properly pleaded against Defendant Deputies and has shown the personal involvement and responsibility of Defendant Deputies for each alleged Constitutional violation.*

Mr. Grisham clearly identified the exact actions that the Defendant Deputies took in violation of clearly established law. Therefore, Defendant Deputies are not entitled to qualified immunity because they were on notice that their actions were indefensible in a public forum.

PLAINTIFF'S RESPONSE TO DEFENDANT DEPUTIES' MOTION TO DISMISS AMENDED COMPLAINT – CJ GRISHAM

Mr. Grisham believes that he has clearly articulated his claims and Defendant Deputies are clearly aware of the allegations that related to him. Mr. Grisham clearly stated that Defendant O'Hare "enforced unconstitutional 'rules of decorum' that prohibit criticism of public officials and the use of expressive speech like profanity," "clearly violated state law as he criticized the actions of Defendants on January 28, 2025," "without warning, silenced Mr. Grisham within 30 seconds of his speech, and prohibited him from exercising his right to free speech, record public officials in the conduct of their official business, and seek redress from government." See ECF #17, ¶¶ 152-157.

Mr. Grisham has met his burden required under the pleading standards and has adequately alleged plausible claims of First and Second Amendment violations against the Defendant Deputies.

### iii.     *Second Amendment Violation Claims*

Plaintiff has adequately pleaded a claim for violation of the Second Amendment. The Second Amendment to the United States Constitution protects "the right of the people to keep and bear Arms." Under Texas law, Plaintiff Mr. Grisham was entitled to carry a firearm by virtue of two statutory exemptions: Texas Penal Code § 46.15(a)(5), which exempts certain retired law enforcement officers, and § 46.15(b)(6), which exempts licensed handgun carriers (LTC holders).

Plaintiff alleges that, despite presenting evidence of his retired law enforcement status and LTC credentials, Defendant Deputies denied him entry to the Commissioners Court meeting while armed. The denial was based on "guidance" from the Texas Commission on Law Enforcement (TCOLE), which was contradicted by the documentation in Defendant Driskell's possession at the time. Plaintiff further alleges that he repeatedly informed the Defendant Deputies of his legal status and rights, yet they proceeded to detain and remove him.

The actions of the Defendant Deputies constitute a direct infringement on Plaintiff's Second Amendment rights. The Supreme Court has held that the right to bear arms is an individual right, subject only to certain reasonable restrictions. *See District of Columbia v. Heller*, 554 U.S. 570 (2008). Plaintiff was not subject to any lawful restriction at the time, and the Defendant Deputies' refusal to recognize his statutory exemptions was not objectively reasonable.

Moreover, the Defendant Deputies' conduct was not based on any legitimate safety concern or evidence that Plaintiff posed a threat. Instead, their actions were arbitrary and contrary to both state and federal law because the only person they checked on the days in question was Plaintiff.  No other person entering the meeting was subjected to questioning about being armed. By denying Plaintiff entry and detaining him solely because he exercised his right to bear arms under lawful exemptions, the Defendant Deputies violated the Second Amendment.

PLAINTIFF'S RESPONSE TO DEFENDANT DEPUTIES' MOTION TO DISMISS AMENDED COMPLAINT – CJ GRISHAM

Accordingly, Plaintiff has stated a plausible claim for relief under the Second Amendment, and the motion to dismiss this claim should be denied.

### iv.    First Amendment Violation Claims

It should be noted as an initial matter, that Defendants have not pointed to competent evidence to establish why Plaintiff was removed from the meetings other than his actual speech.  In fact, Defendants admit that "[a]s soon as Plaintiff uttered the vulgar profanity, Judge O'Hare interrupted Plaintiff and requested that deputies "remove him immediately for that comment."  ECF #20 at 17.  However, Defendants do not cite to any record evidence to support this factual assertion regarding the reason(s) for Mr. Grisham's removal, and fail to specify which Rule of Decorum (or provision thereof) he violated.  And, the precise Rule or provision which Mr. Grisham was found to have violated (and the attending reason for removal) is material to the resolution of his as-applied First Amendment challenge. *See, e.g., Wenthold v. City of Farmers Branch, Tex.,* No. 3:11-CV-0748-B WL 467325, at *6 (N.D. Tex. Feb. 14, 2012)(Boyle, J.), *aff'd sub nom. Wenthold v. City of Farmers Branch, Tex.*, 532 Fed. Appx. 474 (5th Cir. 2013)(noting doctrinal implication of whether restriction is content-based or content-neutral).  Defendants have not pointed the Court to competent evidence that resolves this question.

Mr. Grisham clearly alleged a First Amendment claim regarding the January 14 meeting.  See ECF #17, ¶¶ 28-53.

19

"Limited public forums are created by government entities when they open property 'limited to use by certain groups or dedicated solely to the discussion of certain subject.'" *Wenthold*, 2012 WL 467325, at *6 (quoting *Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. Of the L. v. Martinez*, 561 U.S. 661, 678 (2010)). "In limited public forums, 'a government may impose restriction on speech that are reasonable and viewpoint neutral.'" *Id.* (first quoting *Christian Legal Soc'y*, 561 U.S. at 679 n. 11, and then citing *Chiu v. Plano Indep. Sch. D.*, 260 F.3d 330, 346 (5th Cir. 2001)).  In contrast, "designated public forums are created by government entities when 'government property that has not traditionally been regarded as a public forum is intentionally opened up for that purpose." *Id.* at *7 (citing *Christian Legal Soc'y*, 561 U.S. at 679 n. 11).  In designated public forums, content-based restrictions on speech are subject to strict scrutiny – they must be narrowly tailored to serve a compelling government interest. *Id.*

The forum determination bears on the outcome of Mr. Grisham's constitutional challenge due (at least) to the "rules of decorum" or "decorum policy" prohibition on the use of profanity.  A limitation on speech is content-based if it "target[s] speech based on its communicative content[.]" *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015).  To qualify as content-neutral, a restriction on speech must be "justified without reference to the content of the

20

regulated speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)(alterations in original)(citations omitted). "A restriction on…profanity…is naturally content-based." *Iancu v. Brunetti*, 588 U.S. 388, 419 (1019)(Sotomayor, J. concurring)(citing *R.A.V. v. City of St. Paul*, 505 U.S. 377, 383 (1992)). In a designated public forum, profanity may not be constitutionally prohibited unless if falls into a category of unprotected speech, such as fighting words. *See Beckerman v. City of Tupelo, Miss.*, 664 F.2d 501, 513-14 (5th Cir. 19812); *cf. Cohen v. California*, 403 U.S. 15, 19-20 (1971)(overturning conviction for wearing "Fuck the Draft" jacket in municipal courthouse because no evidence that speech fell within unprotected category); *See also Chaplinsky v. N.H.,* 315 U.S. 568 (1942); *Houston v. Hill*, 482 U.S. 451 (1987).

Defendant O'Hare has not identified any exception to the protected speech that the First Amendment protects that would allow him the enjoyment of qualified immunity. He instead makes a conclusory statement that simply using protected speech is "disruptive" without providing any evidence to this Court about how speech used during a person's own allotted time disrupted the meeting at all.

It is interesting that Defendant O'Hare would invoke *Wenthold* (as does Mr. Grisham here), another case in which he was the defendant as the Mayor of the City of Farmer's Branch – and an unpublished case. In *Wenthold*, the issue is nothing like this case and Defendant O'Hare should have recognized that. Perhaps

21

his win in that case – which was a justifiable win in Mr. Grisham's "expert" First Amendment opinion – is why he thinks he thinks he can double down on his current violations of the First Amendment against Mr. Grisham and others in his capacity as County Judge of the Commissioner's Court.

However, in that case, Mr. Wenthold spoke at a city council meeting regarding the privatization of the Manske Library.  At the meeting, "[c]ommenters were allowed two minutes to speak." *Id.* at *3.  Mr. Wenthold properly filled out a card and was called to speak on the agenda item. "Wenthold proceeded to state his view that O'Hare and the City Council misled the residents of Farmers Branch by stating that insurance would cover the legal fees for the immigration ordinance litigation." *Id*. at *6.  Defendant O'Hare interrupted Mr. Wenthold and explained that he was "tired of [Mr. Wenthold] saying the same thing over and over that I have specifically taken you to lunch and said — and set you straight." *Id*. at *6-7. "Wenthold spoke for approximately 1 minute and 50 seconds before the recess and another 30 seconds after the recess, longer than the two minutes allotted to other speakers." *Id*. at *8.  However, the record indicates that Mr. Wenthold wanted to respond to Defendant O'Hare's comments, which were not a part of the agenda Apparently only Defendant O'Hare gets to talk off agenda about items, and the public has no ability to respond to those comments, even when they are cut off. That said, this case was about the fact that Mr. Wenthold spoke over his two

PLAINTIFF'S RESPONSE TO DEFENDANT DEPUTIES' MOTION TO DISMISS AMENDED COMPLAINT – CJ GRISHAM

minutes allotted and the Court rightly found that a "governing body may restrict speakers to the subject at hand, impose time limits on speakers, and prevent disruptions of the meeting." *Id*. at \*27.

The instant case is not about time limits or being limited "to the subject at hand." This case is also not about disruptions because Mr. Grisham can't disrupt his own allotted time with his own speech. This case is literally about the content of Mr. Grisham's speech that was clearly on topic since it had to do with an agenda item. Unlike in *Wenthold*, Defendant O'Hare didn't give Mr. Grisham a chance to even modify his comments. This is the First Amendment violation plauisbly plead by Mr. Grisham.

Similarly, the Defendant Deputies invoke *Gjemre*, in which the issue was being "off-topic." Defendant O'Hare admits in his motion that "during Grisham's public comment on a TCCC agenda item" thus neither of these cases control or even apply other than to identify the type of forum that comprised the Tarrant County Commissioners Court meeting. ECF #19, at 13.

It should be noted that both *Wenthold* and *Gjemre* were decided prior to 2019, when the legislature changed the law to include Tex. Gov't. Code 551.007. Acts 2019, 86th Leg., R.S., Ch. 861 (H.B. 2840), Sec. 1, eff. September 1, 2019. There is no case law that deals with whether "off-topic" speech can be censored under the new law…yet. Tex. Gov't Code 551.042 was not argued in either

23

PLAINTIFF'S RESPONSE TO DEFENDANT DEPUTIES' MOTION TO DISMISS AMENDED COMPLAINT – CJ GRISHAM

*Wenthold* and *Gjemre,* which protects citizens' right to speak on "off-topic" agenda items and limits what government actors can do when such topics are raised to either making "a statement of specific factual information given in response to the inquiry" or "a recitation of existing policy in response to the inquiry." The law also limits any discussion on an off-topic item not included in the agenda to "a proposal to place the subject on the agenda for a subsequent meeting." If citizens can't request that an item not on the agenda be placed on a subsequent meeting (ie: off-agenda comments), the law would be pointless. If lawmakers intended to ban "off-agenda" topics at open meetings, it clearly would have stated as much rather than creating a mechanism for how people in Defendant O'Hare's position can respond to such occurrences.

Every word that Mr. Grisham uttered was in furtherance of his opposition to an agenda item regarding "rules of decorum." Defendant O'Hare doesn't have to like how Mr. Grisham predicates his opinions and discusses back story support for them, but he is required to refrain from suppressing and censoring them based on content. Mr. Grisham could have predicated his comments with the fact that it was a cool, clear day on the date in question and the birds were out chirping and all was well with the world as the reasoning for his support or opposition to an agenda item even though the weather was not on the agenda. However, because Defendant O'Hare and the Defendant Deputies censored his speech, he was never able to tie

PLAINTIFF'S RESPONSE TO DEFENDANT DEPUTIES' MOTION TO DISMISS AMENDED COMPLAINT – CJ GRISHAM

his predicated speech in with how he formed his opinions on the agenda item at issue.

As noted above, the Defendant Deputies are not entitled to the warm embrace of qualified immunity on Mr. Grisham's First Amendment claims because "existing precedent squarely governs the conduct at issue" in this case and the Defendant Deputies were on notice that censoring the content of protected speech during public comments on an agenda item. *Cope v.* Cogdill, 3 F.4th 198, 204 (5th Cir. 2021)(quoting *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004)(*per curiam*)(internal quotation marks omitted). However, Mr. Grisham maintains that, under current law, even if he were "off agenda," Tex. Gov't Code 551.042 gives him to right to raise issues extraneous to the agenda and prohibits Defendant Deputies' response to such inquiries or statements. Mr. Grisham has identified several "controlling precedent[s] that squarely govern[] the specific facts at issue" here. *Kisela v. Hughes*, 584 U.S. 100, 104-105 (2018).

Mr. Grisham has clearly demonstrated that his rights under these particular circumstances were clearly established such that all officials in the position of the Defendant Deputies would know immediately that silencing and ejecting him from the meeting would have violated Mr. Grisham's constitutional rights. *See Morrow v. Meacham*, 917 F.3d at 874 (5th Cir. 2019) (quotations and citations omitted) ("The dispositive questions is whether the violative nature of the particular conduct

PLAINTIFF'S RESPONSE TO DEFENDANT DEPUTIES' MOTION TO DISMISS AMENDED COMPLAINT – CJ GRISHAM

is clearly established.").  Mr. Grisham could fill volumes and waste the Court's time filling these pages with cases holding that profanity is protected speech unless it falls within specific, limited exceptions – none of which the Defendant Deputies have alleged in their motion.

> ### v.      *Plaintiff sufficiently alleged a constitutional challenge to the rules of decorum*

Plaintiff clearly and sufficiently articulated a constitutional challenge to the rules of decorum.  See ECF #17, ¶¶ 101-111.

### c.  Redundant claims should not be dismissed

To the degree that the Defendant Deputies were enforcing an official policy, practice, or custom, suing him in his official capacity is warranted.  However, to the degree that the Defendant Deputies simply have a complete and total disregard for the First Amendment rights of citizens they serve, including Mr. Grisham, they are sued in their personal capacity as well.  If the court decided to dismiss the Defendant Deputies in their official capacity, Mr. Grisham's causes of action against the Defendant Deputies should be maintained in their personal capacity as to the First Amendment and Conspiracy allegations.

### d.  Mr. Grisham may include Texas Constitutional claims in his federal 1983 claim

A plaintiff can argue state constitutional violations in addition to federal constitutional violations in a federal § 1983 case in the 5th Circuit or U.S. Supreme

Court if those claims share the same facts and circumstances as the federal claims. Under 28 USCS § 1367, federal courts have supplemental jurisdiction over state law claims that are so related to the federal claims within the court's original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution. "[I]f a complaint includes the requisite federal question, a federal court often has power to decide state-law questions too." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 27 (2025).  A federal court may exercise supplemental jurisdiction over the state claim so long as it "derive[s] from" the same "nucleus of operative fact" as the federal one.  *Mine Workers v. Gibbs*, 383 U. S. 715, 725 (1966).

However, the exercise of supplemental jurisdiction is discretionary. A federal court may decline to exercise jurisdiction over state law claims if certain conditions under 28 USCS § 1367 are met, such as when the state law claims raise novel or complex issues, substantially predominate over the federal claims, or when all federal claims are dismissed before trial.  Bittakis v. City of El Paso, 480 F. Supp. 2d 895. The general rule in the 5th Circuit is to decline jurisdiction over state law claims when all federal claims are dismissed, but this rule is not mandatory and depends on factors like judicial economy, convenience, fairness, and comity. *Bittakis v. City of El Paso*, 480 F. Supp. 2d 895, 921 (W.D. Tex. 2007), *Leal v. Azar*, 489 F. Supp. 3d 593, 602 (N.D. Tex. 2020).

PLAINTIFF'S RESPONSE TO DEFENDANT DEPUTIES' MOTION TO DISMISS AMENDED COMPLAINT – CJ GRISHAM

In conclusion, while a plaintiff can include state constitutional claims in a federal § 1983 case if they arise from the same facts, the federal court has discretion to decide whether to retain jurisdiction over those claims, particularly if the federal claims are dismissed or other factors weigh against exercising supplemental jurisdiction.

Mr. Grisham has stated a viable claim for relief under the Texas Constitution, and the Court should not dismiss it and should exercise supplemental jurisdiction over his state law claims.

### e.  Section 1985(3) conspiracy claims are not barred by the intracorporate conspiracy doctrine.

Mr. Grisham has properly alleged violations of 42 U.S.C. § 1983 and that an agreement among the Defendants to violate his rights as required under *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994).  Mr. Grisham as properly alleged that the conspiracy involves two or more persons.  *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1953).  Mr. Grisham has alleged that the Defendant Deputies, in their personal capacities, conspired to violate Mr. Grisham's rights, so the intercorporate conspiracy doctrine does not apply here. The Defendant Deputies are sued in their individual capacities.  To the extent that Defendants are sued in their official capacities, the doctrine would apply.

However, Mr. Grisham has properly alleged that the conspiracy exists between and among the individual Defendant Deputies.

### f.  Grisham did state a claim for punitive damages.

For the reasons stated above and in Mr. Grisham's Complaint, he has properly pleaded a claim for punitive damages.  The Court should not dismiss his claims for punitive damages against the Defendant Deputies. The Defendant Deputies motion improperly asks the Court to also dismiss such claims against all of the Defendant Deputies that punitive damages are not warranted because the violations of Mr. Grisham's constitutional rights were not made with "evil intent" or "reckless or callous indifference" to a person's constitutional rights. However, the facts in the complaint as alleged show clearly that there was at minimum a reckless or callous indifference to Mr. Grisham's rights, as he plead in real time with the Defendant Deputies to honor and respect his rights to speech, and they continued their removal, ignoring widely known and understood constitutional rights to use his speech, including the mere use of profanity. His removal on the basis of simply using mere profanity without any further speech violations is a blatant infringement, conducted knowingly and callously in line with the rules of decorum that are not properly restricted to protect what is constitutionally protected speech. As such, those claims should also survive or the request for

PLAINTIFF'S RESPONSE TO DEFENDANT DEPUTIES' MOTION TO DISMISS AMENDED COMPLAINT – CJ GRISHAM

claims against the other Defendants to be dropped should be ignored by the Court for improper pleading.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff CJ Grisham prays that this Court deny the Defendant Deputies' motion and order that the case proceed to discovery.  Mr. Grisham further prays that he be granted such other and further relief to which he may show himself to be justly entitled.

Respectfully Submitted,

LAW OFFICES OF CJ GRISHAM
PLLC

**CJ GRISHAM**
Texas State Bar No. 24124533
cj@cjgrisham.com
3809 S. General Bruce Dr.
Ste 103-101
Temple, Texas 76502
Telephone: 254-405-1726

*PRO SE COUNSEL FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

On November 22, 2025, I served a copy of the above document on all counsel of record via ECF.

30

PLAINTIFF'S RESPONSE TO DEFENDANT DEPUTIES' MOTION TO DISMISS AMENDED COMPLAINT – CJ GRISHAM

CJ Grisham
Pro Se Plaintiff/Counsel of Record

PLAINTIFF'S RESPONSE TO DEFENDANT DEPUTIES' MOTION TO DISMISS AMENDED COMPLAINT – CJ GRISHAM