IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CJ GRISHAM                          §
                                    §
VS.                                 §      ACTION NO. 4:25-CV-716-Y
                                    §
TIM O'HARE, ET AL                   §

## ORDER GRANTING DEFENDANT TIM O'HARE'S MOTION TO DISMISS

Before the Court is defendant Tim O'Hare's motion to dismiss (doc. 19). In the motion, O'Hare contends that the allegations in plaintiff CJ Grisham's amended complaint fail to overcome his individual qualified-immunity defense. For the following reasons, the Court determines O'Hare's motion should be granted.

## Background[1]

Grisham originally filed this action in July 2025. His claims involve two separate meetings of the Tarrant County Commissioner's Court ("TCCC"). On January 14, 2025, TCCC held an open meeting. One of the agenda items at this meeting related to jail deaths within Tarrant County. Grisham wished to speak at this meeting about his friend, Mason Yancy, who died while in custody of Tarrant County.

---

[1] Unless otherwise noted, the Court's recitation of the facts is taken from Plaintiff's First Amended Complaint (doc. 17). At the Rule 12(b)(6) stage, these facts are taken as true and viewed in the light most favorable to the plaintiff. *See Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

ORDER GRANTING MOTION TO DISMISS – PAGE 1

After leaving the meeting, and upon an attempt to reenter, Grisham was asked by Chief Deputy Craig Driskell if he was carrying a firearm. Grisham confirmed that he was armed. The two argued about whether Grisham was allowed to carry a firearm into the meeting. The argument escalated between the two, Grisham began to use expletives, and Driskell threatened to arrest Grisham for disorderly conduct. The events continued to escalate from there. Grisham believed that his Second Amendment rights were violated by the law enforcement officers during the January 14, 2025, events.

Later, on January 28, 2025, TCCC held another open meeting. Grisham registered to speak at this meeting about the death of Yancy. Upon arrival at TCCC, Grisham again had an altercation with other named defendants in this lawsuit.

Once Grisham was inside the meeting, O'Hare and other TCCC members began to discuss the potential implementation of a new decorum policy at TCCC. Once the period for public comment began, Grisham approached the podium to discuss the death of Yancy. Rather than speak about Yancy's jail death, Grisham began to recite the events of the January 14, 2025, meeting that ultimately prevented him from speaking about Yancy's death at that time. Grisham once again used expletives during his comments. As a result, O'Hare asked the deputies to remove Grisham from the meeting.

Grisham filed this lawsuit on July 7, 2025, against the individuals who were involved in the January 14, 2025 dispute,

ORDER GRANTING MOTION TO DISMISS – PAGE 2

O'Hare, and Tarrant County. All defendants moved to dismiss on September 8, 2025. This Court ordered Grisham to submit an amended complaint, in which he addressed the individual defendants' qualified-immunity defenses. O'Hare filed his motion to dismiss Grisham's amended complaint on November 6, 2025. Grisham responded and O'Hare has replied. The motion is now ripe for the Court's review.

## <u>Legal Standard</u>

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff to determine whether they plausibly give rise to an entitlement to relief. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).

At the motion-to-dismiss stage, a defendant's assertion of qualified immunity does not affect the pleading standard that a plaintiff must meet. *Arnold v. Williams*, 979 F.3d 262, at 266–67(5th Cir. 2020). A plaintiff need only plead, with specificity, facts that, if proven, would allow the court to deny qualified immunity and hold the defendant liable for the harm the plaintiff has alleged. *See id.*

Government officials performing discretionary functions——functions requiring independent judgment——generally are shielded from suit if their conduct does not violate clearly established statutory or constitutional rights. *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

To defeat a qualified-immunity defense at the motion-to-dismiss stage, a plaintiff must allege: (1) the violation of a constitutional or statutory right; and (2) that the right in question was clearly established at the time of the alleged violation. *Id.*; *Pearson*, 555 U.S. at 236. The district court may address either prong first. *Id.* To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). For purposes of qualified immunity, the reasonableness of the official's conduct and the clarity of the right in question are merged into one question. *Ramirez*, 3 F.4th at 133–34.

## **Analysis**

First, it is important for the Court to define the precise

claims that Grisham brings against O'Hare. Throughout his amended complaint, Grisham refers to the defendants collectively. However, after reviewing the amended complaint in its entirety, it is evident that Grisham brings this suit against O'Hare based on his conduct as the presiding officer over the January 28, 2025 TCCC meeting. O'Hare was not involved in the January 14, 2025 events based on the amended complaint as alleged.

The amended complaint pleads no factual allegations that implicate O'Hare in any of Grisham's First Amendment claims that may arise from the January 14, 2025 TCCC meeting. Likewise, the amended complaint pleads no factual allegations that implicate O'Hare in any of Grisham's Second or Fourth Amendment claims that may arise from either the January 14 or January 28, 2025 meetings.

Rather, Grisham alleges a claim for punitive damages against O'Hare, alleges that O'Hare violated Grisham's constitutional rights under the Texas Constitution, and asserts a claim for attorney's fees. Grisham, in his response, concedes that the law does not allow a *pro se* attorney-plaintiff to recover attorney's fees. (Doc. 22 at 23.) This claim is **dismissed with prejudice**. Grisham also concedes that a federal court's exercise of supplemental jurisdiction is discretionary. (Doc. 22 at 21.) Because the Court will ultimately dismiss each of Grisham's federal claims against O'Hare, it declines to exercise supplemental jurisdiction over any state-law claim that may arise under the

ORDER GRANTING MOTION TO DISMISS – PAGE 5

Texas Constitution. This claim is **dismissed without prejudice**. Finally, there are no factual allegations within Grisham's amended complaint that plausibly allege O'Hare acted with malicious intent towards Grisham's constitutional rights. *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir. 1994). This claim is **dismissed with prejudice**.

Therefore, the only remaining claims before the Court that pertain to O'Hare are a First Amendment claim based on Grisham's removal from the January 28, 2025, TCCC meeting, a conspiracy claim under Title 42 United States Code Section 1985 based on Grisham's removal from the January 28, 2025, TCCC meeting, and a *Monell* liability claim against O'Hare in his individual and official capacity.

A. *Monell* Liability

To begin, a *Monell* liability claim pertains to municipal liability, not individual liability. The law does not provide a cause of action imputing municipal liability against Tim O'Hare as an individual——either in his individual capacity or his official capacity. This claim fails as a matter of law.

B. 42 U.S.C. § 1985

To adequately allege a conspiracy claim under § 1985, an individual must allege (1) an actual deprivation of constitutional rights and (2) an agreement among the defendants to commit the illegal act. *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994).

ORDER GRANTING MOTION TO DISMISS – PAGE 6

As discussed in more detail below, Grisham fails to adequately plead a deprivation of his First Amendment rights, therefore, this conspiracy claim also fails.

C. First Amendment Claim

> "There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the **profane**, the libelous, and the insulting or 'fighting' words——those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality."

*Chaplinksky v. New Hampshire*, 315 U.S. 568 (1942). Therefore, Grisham faces an uphill battle in establishing that O'Hare violated his First Amendment rights. The reason for this is based primarily on the environment——a public commissioner's court hearing——in which Grisham uttered profanity.[2]

---

[2] See *Illinois v. Allen*, 397 U.S. 337, 343-44 (1970) ("It is essential to the proper administration of . . . justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated."); *Federal Communications Commission v. Pacifica Foundation*, 438 U.S. 726 (1978) (upholding FCC sanctions against a New York radio company for broadcasting George Carlin's "Filthy Words" monologue on an afternoon broadcast, an action that violated 18 U.S.C. §1464); *Cf. Cohen v. California*, 403 U.S. 15 (1971) (enjoining the use of a California statute prohibiting the display of offensive messages in **public places** as violative of the First Amendment).

First, it is necessary to establish what kind of forum the TCCC meeting is. "For First Amendment purposes, the existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 344 (5th Cir. 2001). Therefore, the determination "of the character of the forum in which expression was regulated shapes" the determination "whether a clearly established right existed and" the "ultimate conclusion whether a constitutional violation occurred." *Id.*

The Supreme Court has defined three types of fora when analyzing First Amendment issues involving government-owned property: the traditional public forum, the public forum created by governmental designation, and the nonpublic forum. *Id.* (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985). The traditional public forum——for example, a park or sidewalk——enjoys the most First Amendment protection. *See id.* The nonpublic forum——for example, a jailhouse——enjoys almost no First Amendment protections.

It is the public forum created by government designation that comprises the lion's share of First Amendment jurisprudence. The Supreme Court and the Fifth Circuit have defined this middle category using two terms: "designated public forum" and "limited public forum." *Id.* at 345. The process to distinguish between these

two utilizes two factors: "(1) the government's intent with respect to the forum, and (2) the nature of the forum and its compatibility with the speech at issue." *Id.* However, "Mr. Grisham agrees with Defendant O'Hare that Tarrant County Commissioner Court Hearings are considered limited public forums." (Doc. 22 at 9.) Therefore, it is undisputed that the TCCC meeting was a limited public forum.

It is important to note that in all three types of fora, the government is able to reasonably regulate time, place, and manner restrictions on speech so long as such regulation is "content-neutral, narrowly tailored to serve a significant government interest and leave[s] open ample alternative channels of communication." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).

Returning to the fora created by governmental designation, in this type of public forum, the government is held to the same standards of regulation as in a traditional public forum: if the regulation is content-based it must be "necessary to serve a compelling state interest and [be] narrowly drawn to achieve that end." *Id.* In a limited public forum, the government "may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Id.* at 46. In other words, a limited public forum may have content-based restrictions as long as they are viewpoint-

ORDER GRANTING MOTION TO DISMISS – PAGE 9

neutral. *See id*. Grisham's arguments otherwise are unavailing. (Doc. 22 at 10.)

In fact, this case is factually distinct from most of the First Amendment jurisprudence cited by Grisham. By his own admission, he was not in a traditional public forum when he uttered the expletive. Further, he was not arrested for using foul language. *Cf. Rosenfeld v. New Jersey*, 408 U.S. 901 (1972); *Lewis v. City of New Orleans* 415 U.S. 130 (1972); *Brown v. Oklahoma*, 408 U.S. 914 (1972). He was not a defendant on the witness stand subject to cross-examination when he uttered the expletive. *Cf. Eaton v. Tulsa*, 415 U.S. 697 (1974). His pleadings admit that he was asked to leave a limited public forum after using foul language. Contrary to his assertions, these factual distinctions are case dispositive.

Rules of decorum are axiomatic in juridical forums. See Local Civil Rule 83.16 ("All persons present in a courtroom where a trial, hearing, or other proceeding is in progress must dress **and conduct** themselves in a manner demonstrating respect for the court. The presiding judge shall have the discretion to establish appropriate standards of dress **and conduct**."). The enforcement of decorum rules, including a prohibition on profanity, within a limited public forum is not a First Amendment violation.

Finally, the Court finds it dubious that Grisham's behavior at the January 28th meeting, when taken as a whole, adheres to

standards of decency. Prior to his removal from the TCCC meeting, Grisham engaged in an escalated dispute with law enforcement officers about whether he was able to carry a loaded firearm into the meeting. The law enforcement officers asked to see Grisham's license authorizing him to carry. Grisham refused to deescalate the encounter by providing his license. The events in the hallway did not occur in isolation from the events within the TCCC meeting room. From O'Hare's perspective, an armed individual arrived on the premises, picked a fight with law enforcement officers, and then entered the meeting. At the first opportunity, this armed individual began to visibly escalate while inside the meeting. Removing an individual from a limited public forum based on the above description of behavior does not implicate the First Amendment. *See Chaplinksky*, 315 U.S. at 568.

Grisham has failed to produce a modicum of case law showing that, based on what Grisham has plausibly alleged, O'Hare violated a clearly established constitutional right. *See Pearson v. Callahan*, 555 U.S. 223, 244 (2009). It is not objectively unreasonable for the presiding officer of a limited public forum to remove an individual who refuses to adhere to the rules of decorum. *See id.* Grisham's First Amendment claim fails for this reason.

ORDER GRANTING MOTION TO DISMISS – PAGE 11

## Conclusion

For the foregoing reasons, the Court concludes that Grisham has failed to overcome O'Hare's qualified-immunity defense. O'Hare's motion to dismiss (doc. 19) is GRANTED. Grisham's federal claims against O'Hare are **DISMISSED with prejudice,** and his state-law claims are **DISMISSED without prejudice.**

SIGNED April 6, 2026.


_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE