IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CJ GRISHAM | § | |
| | § | |
| VS. | § | ACTION NO. 4:25-CV-716-Y |
| | § | |
| TIM O'HARE, ET AL | § | |

## ORDER GRANTING DEFENDANT DEPUTIES' MOTION TO DISMISS

Before the Court is a motion to dismiss (doc. 20) filed by defendants Craig Driskell, Jennifer Gabbert, Orville George, and Michael Jauss ("the Deputies"). In the motion, the Deputies contend that the allegations in plaintiff CJ Grisham's amended complaint fail to overcome their individual qualified-immunity defenses. For the following reasons, the Court determines the motion should be granted.

## Background[1]

Grisham originally filed this action in July 2025. His claims involve two separate meetings of the Tarrant County Commissioner's Court ("TCCC"). On January 14, 2025, TCCC held an open meeting. One of the agenda items at this meeting related to jail deaths within Tarrant County. Grisham wished to speak at this meeting

---

[1] Unless otherwise noted, the Court's recitation of the facts is taken from Plaintiff's First Amended Complaint (doc. 17). At the Rule 12(b)(6) stage, these facts are taken as true and viewed in the light most favorable to the plaintiff. *See Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

ORDER GRANTING MOTION TO DISMISS – PAGE 1

about Mason Yancy, who died in custody of Tarrant County.

After leaving the meeting to use the restroom, and upon an attempt to reenter, Grisham was asked by Chief Deputy Craig Driskell if he was carrying a firearm. Grisham confirmed that he was armed. The two argued about whether Grisham was allowed to carry a firearm into the meeting based on Grisham's alleged status as a retired law enforcement officer. Driskell asserted that the Texas Commission on Law Enforcement ("TCOLE") does not recognize Grisham as retired law enforcement. Grisham argued that his retired law enforcement credentials, issued to him by the Department of Defense, exempted him from any prohibition on carrying into the TCCC meeting. Grisham displayed his federal credentials, allegedly issued under the Law Enforcement Officer Safety Act ("LEOSA"). Driskell maintained that Grisham's particular status as a retired United States Army Senior Counterintelligence Special Agent did not qualify as "law enforcement" by TCOLE. Grisham alleges that Driskell stated that Grisham could have self-generated a LEOSA badge. According to Grisham, "Driskell refused to look at" the proffered LEOSA credential.

At this point, Grisham also mentioned that because he had a license to carry ("LTC") in Texas, he was also exempt from the prohibition on carrying into a government meeting. The argument escalated between the two, Grisham began to use expletives, and Driskell threatened to arrest Grisham for disorderly conduct.

The events continued to escalate. Defendant Orville George then grabbed Grisham's left arm. Grisham moved his arm away and directed expletives at George. In the hallway, the dispute between Grisham and Driskell was being observed and filmed by numerous people. (Doc. 17 at 13.) A separate individual was arrested after engaging in a physical altercation with law enforcement and directing expletives at the officers. At this time, Grisham asserts that he was "placed in handcuffs" for the unlawful carry of a weapon.

Defendant Jennifer Gabbert then ordered the other deputies to remove Grisham from the main hallway into a separate back hallway. Gabbert asserted that no one was able to carry a firearm into the meeting due to changes in the law. Grisham disagreed, stating that certain signage was required to prevent the carrying of a firearm into an open meeting. Gabbert pointed out signage posted stating that possession of a firearm within the TCCC meeting room is prohibited. After a time, Grisham was released from the hallway and left the building without speaking at the TCCC meeting.

However, Grisham believed that his First, Second, and Fourth Amendment rights were violated by the law enforcement officers during the January 14, 2025 events. Later, on January 28, 2025, TCCC held another open meeting. Grisham registered to speak at this meeting about the death of Yancy.

Upon arrival at this second TCCC meeting, George tried to get

Grisham's attention. Grisham ignored him and tried to enter the meeting. George stood in front of the door. Driskell asked to see Grisham's LTC. Grisham refused to produce his LTC at Driskell's request. George then moved Grisham away from the door and toward a separate area in the hallway. Defendant Michael Jauss grabbed Grisham's arm "with such force . . . that it left bruises on [Grisham's] arm." (Doc. 17 at 18.) Jauss then restrained Grisham by placing his arm behind his back. Driskell told Grisham that he needed to see Grisham's LTC. Grisham produced his LTC and was allowed to enter the TCCC meeting.[2]

Once inside the meeting, O'Hare and other TCCC members began to discuss the potential implementation of a new decorum policy at TCCC. Once the period for public comment began, Grisham approached the podium to discuss the death of Yancy. Rather than speak about Yancy's jail death, Grisham began to recite the events of the January 14, 2025 meeting that ultimately prevented him from speaking about Yancy's death at that time. Grisham once again used expletives during his comments. O'Hare asked the deputies to remove Grisham from the meeting once he uttered expletives.

Grisham filed this lawsuit on July 7, 2025, against the Deputies, O'Hare, and Tarrant County. All defendants moved to

---

[2] As will be discussed in further detail below, the Court finds it curious that Grisham quotes Texas Government Code 411.205 in defense of his actions on January 28, 2025. It appears to be undisputed that Grisham was carrying a firearm, that Driskell is a peace officer, and that Driskell demanded that Grisham produce his LTC.

dismiss on September 8, 2025. This Court ordered Grisham to submit an amended complaint, in which he addressed defendants' qualified-immunity defenses. The Deputies filed their motion to dismiss Grisham's amended complaint on November 6, 2025. Grisham responded and the Deputies have replied. The motion is now ripe for the Court's review.

## Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff to determine whether they plausibly give rise to an entitlement to relief. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).

At the motion-to-dismiss stage, a defendant's assertion of qualified immunity does not affect the pleading standard that a plaintiff must meet. *Arnold v. Williams*, 979 F.3d 262, at 266–67(5th Cir. 2020). A plaintiff need only plead, with specificity, facts that, if proven, would allow the court to deny qualified immunity and hold the defendant liable for the harm the plaintiff has alleged. *See id.*

Government officials performing discretionary functions——functions requiring independent judgment——generally are shielded from suit if their conduct does not violate clearly established statutory or constitutional rights. *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

To defeat a qualified-immunity defense at the motion-to-dismiss stage, a plaintiff must allege: (1) the violation of a constitutional or statutory right; and (2) that the right in question was clearly established at the time of the alleged violation. *Id.*; *Pearson*, 555 U.S. at 236. The district court may address either prong first. *Id.* To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). For purposes of qualified immunity, the reasonableness of the official's conduct and the clarity of the right in question are merged into one question. *Ramirez*, 3 F.4th at 133–34.

## Analysis

The Court must define the precise claims that Grisham brings against the Deputies.[3] Throughout his amended complaint, Grisham refers to the defendants collectively. After reviewing the amended complaint, it is evident that Grisham brings individual claims against the Deputies based on their specific conduct at either the January 14 or January 28 TCCC meetings. All First Amendment claims against the Deputies based on Grisham's removal from the January 28, 2025 TCCC meeting are **DISMISSED with prejudice** for the reasons stated in this Court's order granting defendant O'Hare's motion to dismiss.

The Court will first address the facts underpinning the claims as alleged against each individual deputy, before aggregating any remaining claims based on alleged substantive violations. First, defendant Jennifer Gabbert is only mentioned in the amended complaint in relation to the January 14, 2025 events. Any claim that may arise from conduct at the January 28 meeting that Grisham asserts against Gabbert is thus **DISMISSED with prejudice.**

Second, defendant Michael Jauss is only mentioned in the amended complaint in relation to the January 28, 2025 events. Any

---

[3] All claims pertaining to Defendant O'Hare are addressed in a separate order regarding O'Hare's motion to dismiss (doc. 19). For the reasons stated in the Court's Order granting O'Hare's motion, the rules of decorum within TCCC meetings——and the enforcement of such rules——do not violate Grisham's First Amendment rights. Because Grisham relies on identical argumentation here, it also fails against each of the Deputies.

claim that may arise from conduct at the January 14 meeting that Grisham asserts against Jauss is thus **DISMISSED with prejudice.**

Third, defendant Orville George was present at both the January 14 and 28 meetings. Therefore, Grisham asserts claims based on the alleged suppression of his speech on January 14, based on the alleged unlawful restraint on January 14 and 28 conduct[4], and based on regulations against guns at the January 14 and 28 meeting. These claims are also asserted against the fourth defendant, Craig Driskell, who was present at both the January 14 and 28 meetings.

Additionally, Grisham brings a claim for punitive damages against the Deputies, alleges that the Deputies violated Grisham's constitutional rights under the Texas Constitution, and asserts a claim for attorney's fees. Grisham, in his response, concedes that the law does not allow a *pro se* attorney-plaintiff to recover attorney's fees. (Doc. 22 at 23.) This claim is **DISMISSED with prejudice.** Grisham also concedes that a federal court's exercise of supplemental jurisdiction is discretionary. (Doc. 22 at 21.) Because the Court will ultimately dismiss each of Grisham's federal claims against the Deputies, it declines to exercise supplemental jurisdiction over any state-law claim that may arise under the

---

[4] While Grisham uses the words "excessive force" throughout his amended complaint, he does not articulate a specific Fourth Amendment claim against any defendant based on the alleged use of excessive force. The words "excessive force" carry legal meaning. The Court determines that any mentions of "excessive force" within the amended complaint are mere conclusory statements and fall short of the motion-to-dismiss pleading standard.

ORDER GRANTING MOTION TO DISMISS – PAGE 8

Texas Constitution. These claims are **DISMISSED without prejudice.**

Finally, there is no factual allegation within Grisham's amended complaint that plausibly alleges the Deputies acted with malicious intent towards Grisham's constitutional rights. *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir. 1994). Because a claim for punitive damages requires a plaintiff to plausibly allege such malice, and Grisham has failed to do so, this claim is **DISMISSED with prejudice.**

Therefore, the only remaining claims before the Court that pertain to the Deputies are a First Amendment claim based on Grisham's alleged unlawful arrest at the January 14, 2025 TCCC meeting against defendants Driskell, Gabbert, and George; a Second Amendment claim based on the Deputies' conduct at the January 14 meeting against Driskell, Gabbert, and George; a Fourth Amendment claim against Driskell, Gabbert, and George based on their conduct at the January 14 meeting; a Second Amendment claim against Driskell, Jauss, and George based on their conduct at the January 28, 2025 meeting; a Fourth Amendment claim against Driskell, Jauss, and George based on their conduct at the January 28 meeting; and a conspiracy claim under Title 42 United States Code Section 1985 against Driskell, Gabbert, George, and Jauss.

**A. Conspiracy Claim Under 42 U.S.C. § 1985**

To adequately allege a conspiracy claim under § 1985, an individual must allege (1) an actual deprivation of constitutional

rights and (2) an agreement among the defendants to commit the illegal act. *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994). As discussed in more detail below, Grisham fails to adequately plead a deprivation of his constitutional rights against any defendant. Therefore, this conspiracy claim also fails.

## B. Alleged Constitutional Violations

The Court determines it is necessary to walk through each of Grisham's claims against the Deputies chronologically. The claims arise from an intertwined factual nexus that begins with Grisham's assertion that the Second Amendment allows him to carry a loaded firearm into an open government meeting without informing any law enforcement officers of pertinent exemptions under the law allowing him to do so. Grisham also asserts that if he claims an exemption based on his status as an LTC holder, he need not produce such licensure to law enforcement. Grisham also asserts that he is able to interface with law enforcement officers——while armed——in a belligerent, combative manner and not reap any negative consequences for his obstreperous conduct.

a. January 14, 2025 - Second Amendment Claim

Grisham avers in his amended complaint that he is a founding member of a group of gun rights activists called Open Carry Texas. (Doc. 17 at 5-6.) It is evident that Grisham is passionate about preserving and exercising the rights afforded to him under the Second Amendment. Under *New York State Rifle & Pistol Ass'n, Inc.*

*v. Bruen*, 597 U.S. 1 (2022), the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home. The government may only regulate this right upon successfully showing that "the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 17. The Supreme Court noted that there is an "historical understanding of the Amendment to demark the limits on the exercise of that right." *Id.* at 21. "Like most rights, the right secured by the Second Amendment is not unlimited." *Id.* "[T]he right [is] not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.*

For example, there are "longstanding" laws that forbid "the carrying of firearms in sensitive places such as schools and government buildings." *Id.* at 30. "Although the historical record yields relatively few 18th- and 19th-century 'sensitive places' where weapons were altogether prohibited——e.g., **legislative assemblies, polling places, and courthouses**——[the Supreme Court is] also aware of no disputes regarding the lawfulness of such prohibitions." *Id.* (emphasis added). "[C]ourts can use analogies to those historical regulations of 'sensitive places' to determine that modern regulations prohibiting the carrying of firearms in *new* and analogous sensitive places are constitutionally permissible." *Id.* (emphasis in original).

It is through this lens that the Court must evaluate the

ORDER GRANTING MOTION TO DISMISS – PAGE 11

regulation Grisham vehemently opposes. Grisham asserts that various sections of Texas statutory law and United States statutory law award him the right "to be present at public meetings in Texas while carrying a firearm." (Doc. 17 at 31-32.) However, this goes against the so-called "sensitive places" doctrine articulated by the Supreme Court in *Bruen*.

Generally, Texas law prohibits firearms within open governmental meetings in Texas. "A person commits an offense if the person intentionally, knowingly, or recklessly possesses or goes with a firearm . . . in the room or rooms where a meeting of a governmental entity is held, if the meeting is an open meeting subject to Chapter 551, Government Code, and if the entity provided notice as required by that chapter." Tex. Penal Code § 46.03(a)(14). In Chapter 551 of the Texas Government Code, "notice" appears 119 times, with the following usage: "Notice of Meeting Required. A governmental body shall give written notice of the date, hour, place, and subject of each meeting held by the governmental body." Tex. Gov't. Code § 551.041. Read together, Texas law prohibits an individual from carrying a firearm into an open meeting. This prohibition is effective so long as the governmental body provided sufficient notice to make the meeting statutorily open.

Therefore, for Grisham to prevail, he must show that he is entitled to an exemption under the law. He cites Texas Penal Code

§46.03(b)(6) (see Doc. 17 at 14 n. 2). This section does not exist within the code. Rather, it appears Grisham intended to cite Section 46.15(b)(6). "Section . . . 46.03(a)(14) do[es] not apply to a person who is carrying a license issued under Subchapter H, Chapter 411, Government Code, to carry a handgun; and a handgun in a concealed manner; or in a holster." Tex. Pen. Code § 46.15(b)(6).

Before the Court addresses this exemption, it notes there is another exemption to the general prohibition on firearms in open governmental meetings.

> Section 46.03 do[es] not apply to . . . an honorably retired peace officer or other qualified retired law enforcement officer, as defined by 18 U.S.C. § 926C, who holds a certificate of proficiency issued under § 1701.357, Occupations Code, and is carrying a photo identification that is issued by a federal, state, or local law enforcement agency, as applicable, and that verifies that the officer is an honorably retired peace officer or other qualified retired law enforcement officer.

Tex. Pen. Code § 46.15(a)(5). 18 U.S.C. § 926C, titled "[c]arrying of concealed firearms by qualified retired law enforcement officers", provides:

> "qualified law enforcement officer" means an individual who (1) separated from service in good standing from service with a public agency as a law enforcement officer and (2) . . . was authorized by law to engage in or supervise the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, any violation of law, and had statutory powers of arrest or apprehension under section 807(b) of title 10, United States Code (article 7(b) of the Uniform Code of Military Justice).

While Grisham avers that he meets the statutory definition of

qualified law enforcement officer, the Court directs him to 18 U.S.C. § 926C(b)(2) which states, in relevant part, "**This section shall not be construed to supersede or limit the laws of any State that prohibit or restrict the possession of firearms on any State or local government property, installation, building, base, or park.**"

Under the statutory framework, an individual who is a "qualified law enforcement officer" as defined by 18 U.S.C. § 926C may, if the laws of Texas allow them, carry a concealed weapon without violating either Texas Penal Code § 46.02 (the unlawful carry of weapons) or § 46.03 (places weapons prohibited). Whether Grisham is a "qualified law enforcement officer" under 18 U.S.C. § 926C is a legal question.[5] Grisham's argument that Army Senior Counterintelligence Special Agents are "one of three Army military occupational specialties that qualify as law enforcement officers" is a legal conclusion that must be disregarded at this stage. The Court declines to evaluate this issue because Grisham alleges that he was also able to carry into the meeting based on his status as an LTC holder.

While laws in Texas allow individuals over the age of 21 to carry in most circumstances, there is a clear prohibition on

---

[5] It is undisputed that Grisham is a retired United States Army Senior Counterintelligence Special Agent. This is a well-pleaded fact that the Court must take as true at this stage.

ORDER GRANTING MOTION TO DISMISS – PAGE 14

firearms within open government meetings. While LTC carriers may either carry a concealed weapon or openly carry, they are forbidden from doing so if there is conspicuous signage, written in both English and Spanish, in contrasting colors with lettering at least one inch tall, stating that firearms are prohibited. Tex. Pen. Code §§ 30.06, 30.07. Grisham argues that the signage outside the TCCC meeting room is insufficient.

The Court finds this argument unavailing. When read together, Texas law prohibits firearms in an open government meeting. This means that constitutional carry——the lawful carry of a firearm by a citizen without an LTC——is forbidden in open government meetings. Therefore, an individual may carry into the meeting only if they possess an LTC. However, posted signage (*see* doc. 17 at 6 and 15) would address this exception, forbidding even an LTC holder from carrying into the meeting. Whether this signage is sufficient to meet the requirements of Tex. Pen. Code §§ 30.06 or 30.07 is a legal question. Grisham's arguments regarding the sufficiency of the signage are conclusory allegations that this Court must disregard.

Therefore, the Court finds that Grisham has failed to plausibly allege facts that assist the Court in determining that Driskell, Gabbert, and George are not entitled to qualified immunity. Texas statutory law does not provide Grisham with the unfettered ability to carry a handgun into an open government

meeting. To the extent that an exception to the law is available to him as an LTC holder, Grisham is required to produce his driver's license and his LTC upon the request of a peace officer. Texas Gov't Code § 411.205 ("Requirement to Display License"). There is no requirement that Grisham be lawfully arrested before having to produce evidence that he is licensed to carry. Grisham has failed to allege facts showing that the Deputies who were present at the January 14 meeting unlawfully interfered with Grisham's Second Amendment rights.

b. January 14, 2025 - First and Fourth Amendment Claim

Likewise, under the facts Grisham has alleged, it does not appear that the Deputies interfered with Grisham's First Amendment rights at the January 14 meeting. Grisham, upon approaching Driskell, began to have a dispute about whether he was able to carry a firearm into the TCCC meeting space. The two were in obvious and apparent disagreement. Driskell informed Grisham that under then-current guidance from TCOLE, Grisham was not recognized as qualified retired law enforcement. Rather than acquiesce to the guidance of law enforcement, however erroneous he believed them to be, Grisham admits that he became noticeably angry and confrontational.

From the facts in the complaint, it is not evident what credentials, if any, Grisham was carrying at the moment he began to disagree with Driskell's understanding of 18 U.S.C. § 926C.

Therefore, at the moment the two began to disagree, the facts as alleged demonstrate that Driskell was not objectively unreasonable in believing that Grisham was violating the laws prohibiting the carrying of firearms into the meeting. He requested that Grisham produce his LTC, and Grisham refused to comply with Driskell's directives. Rather than complying, Grisham stated that Driskell needed to "read the [expletive] law, Chief." (Doc. 17.)

The Texas Penal Code prohibits a wide range of conduct because it is "disorderly." Tex. Pen. Code § 42.01. This includes using profane language in a public place. If the language, "by its very utterance tends to incite an immediate breach of the peace", law enforcement officers may arrest an individual for breaching this statute. As the conversation between Driskell and Grisham escalated, a crowd began to gather in the hallway. The crowd became raucous such that another individual was arrested for engaging in disorderly conduct with police officers. (Doc. 17 at 13.) The entirety of Grisham's pleaded conduct in the hallway with Driskell was sufficient to create probable cause that Grisham was inciting an immediate breach of the peace. The Court does not understand how directing expletives at law enforcement officers, while armed, after refusing to produce any competent evidence that one can lawfully carry, could be anything other than unlawful disorderly conduct.

"The relevant facts and circumstances here were sufficient

for a reasonable officer to believe" that Grisham was acting "with the requisite specific intent" to engage in disorderly conduct. *Grisham v. Valenciano*, 93 F.4th 903, 911 (5th Cir. 2024).[6] Accordingly, the Deputies are protected by qualified immunity since [Grisham] can point to no clearly established law that a reasonable officer would not have probable cause to arrest an armed, noncompliant" cursing individual "under Texas Penal Code §42.01." *Id.*

c. January 28, 2025 – Second and Fourth Amendment Claim

For the reasons given above, Grisham fails to establish that any of the Deputies violated his rights on January 28. Rather than complying with the requirements of the Texas statute and showing his license to law enforcement officers upon request, Grisham tried to forcibly trespass, while armed, into the TCCC meeting. (Doc. 17 at 18.) Once Grisham decided to comply with the requirements of the law, he was released from police custody and allowed to carry his firearm into the meeting. Accordingly, his § 1983 challenge against the Deputies' based on their January 28 conduct fails.

## Conclusion

For the foregoing reasons, the Court concludes that Grisham has failed to overcome the Deputies' qualified-immunity defenses.

---

[6] The Court finds it curious that Grisham did not cite this binding Fifth Circuit case within either his Complaint or his Amended Complaint when it seems to preclude the very legal challenges he makes against all defendants here. Grisham is referred to Local Civil Rule 83.8(e) and Texas Disciplinary Rules of Professional Conduct 3.03(a)(4).

ORDER GRANTING MOTION TO DISMISS – PAGE 18

Their motion to dismiss (doc. 20) is GRANTED. Grisham's federal claims against the Deputies are **DISMISSED with prejudice** and his state-law claims are **DISMISSED without prejudice.**

SIGNED April 8, 2026.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE